

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 06-21265-CIV-JORDAN

LEAGUE OF WOMEN VOTERS OF FLORIDA, PEOPLE
ACTING FOR COMMUNITY TOGETHER (PACT), *et al.*

      Plaintiffs,

      v.

SUE M. COBB, individually and in her official capacity as
Secretary of State for the State of Florida, and DAWN
ROBERTS, individually and in her official capacity as
Director of the Division of Elections,

      Defendants.
_____/

### DEFENDANTS' MOTION TO DISMISS
### AND MEMORANDUM OF LAW IN SUPPORT THEREOF

      Defendants Sue M. Cobb, Secretary of State for the State of Florida, and Dawn Roberts, Director of the Division of Elections, pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), move to dismiss the Plaintiffs' Complaint. In support of this Motion, the Defendants submit this Memorandum of Law.

### INTRODUCTION AND BACKGROUND

      Each year, voter registration organizations seek to register thousands of new voters in Florida. These organizations play a generally positive role in the registration of Florida voters. But the value of any effort to collect voter registration applications naturally depends on what happens to the applications *after* they are collected from a prospective voter. When an applicant surrenders his application to a third-party organization, he is in no position to control what happens to his application. But the Florida Legislature is.

The Legislature recently enacted a law to promote the timely submission of these applications to the proper officials. The legislation requires voter registration organizations to submit all applications they collect, and to do so in a timely manner. The legislation also introduces reporting requirements and civil fines to encourage accountability among these organizations—accountability that is crucial to protect the rights of potential voters. Objecting to these new and reasonable accountability standards, the Plaintiffs challenge the constitutionality of the new legislation, alleging that it violates their rights under the First and Fourteenth Amendments of the United States Constitution.

### The Plaintiffs' Motion for Preliminary Injunction

On June 6, the Plaintiffs moved for a preliminary injunction, asking this Court to enjoin enforcement of the challenged legislation. The Defendants filed a Response to the Plaintiffs' Motion concurrent with the filing of this Motion to Dismiss. In their Response, the Defendants argue that the Plaintiffs are not entitled to a preliminary injunction because they have failed to state a claim upon which relief can be granted. (Response at 6-35.) Rather than repeat all of the arguments presented in the Response, the Defendants hereby incorporate those arguments into this Motion. In this Memorandum, Defendants will present arguments not included in their Response, and they will summarize and highlight the arguments that were presented in the Response.

### The Challenged Legislation

Under the new law, a third-party voter registration organization must deliver registration applications within ten days of their collection and before the book closing date for any given election. § 97.0575(3)(a), (b), Fla. Stat. A "third-party registration organization" is defined as "any person, entity, or organization soliciting or collecting voter registration applications."

# 33650 v5

§ 97.012(36), Fla. Stat.  A voter registration organization is liable for fines if applications are collected but submitted late—or never submitted at all.  *Id.*  These fines are subject to a seventy-five percent reduction if the organization has complied with Section 97.0575(1), which establishes certain reporting requirements.  § 97.0575(3), Fla. Stat.  Although the reports are required by the statute, the seventy-five percent reduction in potential fines provides the sole incentive for compliance with the reporting requirements, because failure to submit this information "does not subject the third-party voter registration organization to any civil or criminal penalties."  § 97.0575(2), Fla. Stat.

The legislation does not regulate the distribution of voter registration materials, nor does it limit anyone's ability to encourage or assist others in registering to vote.  Its sole purpose is to ensure that voter registration applications that are submitted to the formerly unaccountable registration organizations are timely submitted to the appropriate elections officials.

### The Plaintiffs and Their Claims

The Plaintiffs include two non-profit community organizations (Compl. ¶¶ 12, 15), three labor union organizations (Compl. ¶¶ 17, 19, 22), and one named individual, Marilynn Wills, who is a member of an organization affiliated with plaintiff League of Women Voters (Compl. ¶ 24.)  These organizational plaintiffs and Wills allege that they regularly participate in voter registration drives and that they will no longer be able to because of the challenged legislation. (Compl. ¶¶ 5, 13-14, 15-16, etc.)  They allege that they have First and Fourteenth Amendment rights to continue their registration efforts and that those rights are substantially burdened by the legislation.  (Compl. ¶¶ 132, 141, 148, 157.)  They do not allege that the legislation affects their or their members' rights to vote themselves.

In addition to Wills and the organizational plaintiffs (the "Actual Plaintiffs"), the Complaint alleges that there are additional unidentified plaintiffs who would like to register to vote, but who will have trouble doing so without the assistance of Wills and the organizational plaintiffs.  (Compl. ¶ 25.)  The Complaint does not identify these individuals—or even allege that they could be identified.  It calls these plaintiffs John and Jane Doe (Compl. ¶ 25), and the Complaint is styled to include the Actual Plaintiffs as well as "John and Jane Does 1-100."

The Complaint presents claims against Florida Secretary of State Sue Cobb and Director of the Division of Elections Dawn Roberts in both their individual and official capacities (Compl. ¶¶ 26-27, & at 1), and the Plaintiffs seek injunctive relief, declaratory relief, and damages, (Compl. at 41.).  Plaintiffs include four separate counts: The first three allege constitutional violations and harm to the Actual Plaintiffs; the fourth alleges constitutional violations and harm to the Doe Plaintiffs.  Although there is some overlap, the individual counts can fairly be broken down as follows:  Count I alleges speech discrimination, claiming that the legislation unjustifiably discriminates in favor of political parties.  (Compl. ¶¶ 130-131.)  Count II alleges that the exclusion of political parties from the legislation's reach constitutes a violation of Fourteenth Amendment Equal Protection.  (Compl. ¶¶ 140-141.)  Count III alleges that the challenged legislation chills and burdens the Actual Plaintiffs' exercise of speech and free association protected by the First Amendment.  (Compl. ¶¶ 145-148.)

The fourth and final count relates to the John and Jane Doe plaintiffs and alleges that the legislation violates the Does' fundamental right to vote.  (Compl. ¶¶ 153.)  It alleges that the Does could not register to vote without the assistance of the Actual Plaintiffs and others like them and that the Does will therefore suffer an abridgement of their fundamental right to vote.

(Compl. ¶¶ 154-155.)  None of the counts states a claim upon which relief can be granted, and there is no plaintiff with standing to pursue Count IV.

## ARGUMENT

The challenged legislation serves a valuable purpose, and it does so without implicating or threatening any protected interest.  It includes no provisions that regulate speech, expressive conduct, or associational choices.  Because the unprotected conduct that it *does* regulate is not inextricably connected to any First Amendment interest, the legislation does not violate the Constitution by limiting or chilling protected speech.  And because the legislation's different treatment of political parties and others is consistent with legitimate and recognizable differences among them, there is no improper discrimination or Equal Protection violation.  In making its policy decision, the Florida Legislature did not exceed the limits imposed on it by the United States Constitution, so all of the Plaintiffs' claims must be dismissed.

### I.      THE LEGISLATION ADVANCES A LEGITIMATE PUBLIC PURPOSE.

The right to vote is a fundamental right of critical importance to all Florida citizens.  When a voter registration organization convinces an applicant to register to vote, that organization has provided a valuable service.  But when the organization accepts the application—and thereby prevents the applicant from submitting it—Florida has an undeniable interest in ensuring that the application is properly and timely submitted.  That is precisely what the challenged legislation is designed to do.  The Florida Legislature made a reasonable and responsible policy decision to hold otherwise unregulated organizations accountable for the applications they collect.  Other states have recently made similar policy decisions—all for the purpose of ensuring timely submission of collected applications.  *See, e.g.,* Colo. Rev. Stat. § 1-2-701, et seq.; N.M. Stat. Ann. § 1-4-49; Va. Code Ann. § 24.2-1002.01; Wash. Rev. Code

# 33650 v5                                             5

29A.08.115., etc.  As explained in more detail in the Response, the challenged legislation advances a legitimate public purpose sufficient to justify the regulation.  (Resp. at 8-11.)

## II. CLAIMS AGAINST DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES MUST BE DISMISSED.

The Plaintiffs have sued the Defendants in both their individual and official capacities.  (Compl. at 1.)  But the Plaintiffs have included no allegations that they are harmed by the *conduct* of the Defendants.  Because of their failure to do so, this Court must dismiss all claims against the Defendants in their individual capacities.  "Personal-capacity suits seek to impose personal liability upon a government official for actions *he takes under color of state law*."  *Ky. v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105 (1985) (emphasis added).  As the Supreme Court stated in *Ex Parte Young*, a state officer who violates the Constitution "comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences *of his individual conduct*."  209 U.S. 123, 159-60, 28 S. Ct. 441, 454 (1908) (emphasis added); *accord Scheuer v. Rhodes*, 416 U.S. 232, 237, 94 S. Ct. 1683, 1687 (1974).

The Complaint, though, includes no allegations relating to actual, specific conduct of the Defendants.  The Plaintiffs do include general allegations that, for example, "defendants, acting under color of state law, have deprived and will deprive plaintiffs of [constitutional rights]."  (Compl. ¶¶ 136, 141, 150, 157), but such conclusory allegations are insufficient to survive a motion to dismiss, *see Jackson v. BellSouth Telcomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004).  Throughout the Complaint, the Plaintiffs allege that the challenged legislation violates their constitutional rights—not that any particular conduct of the Defendants does.[1]  These claims are

---

[1] The only allegation that could even charitably be considered to include specific conduct harming the Plaintiffs appears in Paragraph 65 of the Complaint.  There, the Plaintiffs allege that

properly brought against officials in their official capacity, which makes the action essentially one against the state—not the individuals, except in name. *See Ky. v. Graham*, 473 U.S. at 165, 105 S. Ct. at 3105.

Furthermore, even if the Plaintiffs had alleged specific misconduct on the part of the Defendants, the Defendants have a qualified immunity. Public officials sued in their individual capacity are entitled to qualified immunity unless their conduct violates clearly established constitutional rights. *Storck v. City of Coral Springs*, 354 F.3d 1307, 1309 (11th Cir. 2003) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001)). The challenged legislation is not clearly unconstitutional. By virtue of its passage, the Florida Legislature determined that the challenged legislation was constitutional, and state officers are entitled to presume that legislative actions do not violate the Constitution. *Cooper v. Dillon*, 403 F.3d 1208, 1220 (11th Cir. 2005). Accordingly, the Defendants would be entitled to qualified immunity if there were allegations of actual wrongdoing—which there are not. In either instance, the claims against the Defendants in their individual capacity must be dismissed.

---

"the Department of State has publicly stated that even 'if some situation arises beyond the control of [an] organization' that results in applications not being submitted within the manner prescribed by the law, the third-party voter registration organization will be fined under the challenged law." This allegation presumably is intended to support the Plaintiffs' claims relating to the alleged chilling of First Amendment rights. But even so, it does not allege conduct of the Defendants in their individual capacity—only conduct of the Department. It is well established that there is no *respondent superior* or vicarious liability under Section 1983 claims. *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir. 2003).

# 33650 v5                                                            7

### III. PLAINTIFFS ARE NOT ENTITLED TO DAMAGES BECAUSE THE DEFENDANTS ARE PROTECTED BY ELEVENTH AMENDMENT IMMUNITY.

In addition to injunctive and declaratory relief, the Plaintiffs ask for damages against the Defendants.[2] As explained above, the claims against the Defendants in their individual capacities must be dismissed, so no damages are available against the Defendants in their individual capacities. And damages are not available based on the claims against the Defendants in their official capacities because of Eleventh Amendment immunity. The Eleventh Amendment "protects a State from being sued in federal court without the State's consent." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003), *cert. denied*, 540 U.S. 1107 (2004). This immunity applies not only to states themselves, but also to their officers. *Id.* The defendants are unquestionably state officers, and the Plaintiffs have included no allegations that the State of Florida has waived its Eleventh Amendment immunity. Therefore, even if the Plaintiffs could prevail on their claims for injunctive and declaratory relief, they are not entitled to damages.

### IV. PLAINTIFFS LACK STANDING TO PURSUE CLAIMS RELATING TO THE RIGHT TO VOTE.

Count IV of the Complaint alleges that the "registrant" plaintiffs (John and Jane Does) would not be able to vote absent the voter registration efforts of third-party voter registration organizations. But the Actual Plaintiffs do not allege that the Does are—or ever will be—actually identifiable. The Actual Plaintiffs lack standing to pursue claims based on the fundamental right to vote because they have not alleged that they or any of their members are not already registered to vote or are not able to register to vote. And the Does lack standing because they are merely hypothetical, lacking any indication of actual existence.

---

[2] The Complaint is styled "Complaint for Declaratory and Injunctive Relief," (Compl. at 1), but its Prayer for Relief asks for an award of nominal damages, (Compl. at 41.)

# 33650 v5                                       8

By characterizing the John and Jane Doe plaintiffs as parties, the Plaintiffs attempt to escape the constitutional limitations on this Court's jurisdiction. The doctrine of standing "asks whether a litigant is entitled to have a federal court resolve his grievance." *Kowalski v. Tesmer*, 543 U.S. 125, 128, 125 S. Ct. 564, 567 (2004). In general, each party must assert its own interests and not rely on the rights or interests of third parties. *Id.* at 129, 128 S. Ct. at 567. This rule "promotes the fundamental purpose of the standing requirement by ensuring that the courts hear only concrete disputes between interested litigants who will frame the issues properly." *Harris v. Evans*, 20 F.3d 1118, 1121 (11th Cir. 1994). If this requirement could be avoided simply by including hypothetical plaintiffs as parties, the constitutional standing doctrine would be of little import. Any party could sue to resolve any purported grievance by alleging that some John Doe would suffer a concrete injury. As explained in more detail in the Defendants' Response, the Plaintiffs lack standing to pursue these claims. (Resp. at 12-17.)

## V.   THE CHALLENGED LEGISLATION DOES NOT VIOLATE THE UNITED STATES CONSTITUTION.

All of the Plaintiffs' claims are based on the First and Fourteenth Amendments to the United States Constitution. But the Plaintiffs fail to state a claim upon which this Court can grant relief. The challenged legislation regulates only the collection and submission of voter registration applications—it does nothing to regulate the speech or expressive conduct associated with encouraging or assisting others in voter registration efforts. And there is no protected First Amendment right to collect and process the voter registration applications of others—much less a protected right to fail to timely submit them to election officials. Because the challenged legislation does not implicate any First Amendment rights, its threatened enforcement cannot chill anyone's protected speech or conduct. Finally, because there are recognizable differences between political parties and voter registration organizations, there is no Equal Protection

# 33650 v5                                      9

violation stemming from the challenged legislation's exclusion of political parties, nor is there any violation of Plaintiffs' associational rights.

### A. Florida's Regulation of the Handling of Voter Registration Applications Does Not Implicate the First Amendment.

#### 1. *The collection of voter registration applications is not core speech protected by the First Amendment.*

The Plaintiffs allege that the challenged legislation will force them and others to "communicate fewer political messages" and will lead to a reduction of constitutionally protected political speech. (Compl. ¶ 5.) The communications Plaintiffs allege to currently engage in include:

> persuad[ing] thousands of Florida citizens to vote . . .by talking to potential voters in face-to-face interactions in diverse communities across the state. These conversations occur at community events, religious services, workplaces, schools, malls, bus stops, and other places where citizens congregate. They also occur on citizens' front porches and in their living rooms when plaintiffs and others like them send members, volunteers, and employees door-to-door to register voters in residential communities.

(Compl. ¶ 35.) The Plaintiffs allege that these types of communications are restricted or chilled by the challenged legislation. They also allege other types of communications that have ceased. "For example, in the past volunteer leaders encouraged [union] members to participate in the political system by registering to vote and contacting their legislators . . . ." (Compl. ¶ 126.) None of these activities is regulated by Florida law, and none has been affected by the challenged legislation. The legislation does not regulate advocacy, distribution, assistance, or even a volunteer's completing the form on behalf of an applicant. It regulates only the submission of collected applications once a potential voter entrusts the third-party organization with his application.

The Plaintiffs then allege that they cannot achieve their objectives if they stop these activities and communications. (Compl. ¶ 36.) Indeed, they allege that the legislation will

# 33650 v5                                10

reduce "the amount of First Amendment-protected speech and related activity that they can engage in." (Compl. ¶ 94.) But that certain speech or conduct may be protected by the First Amendment does not automatically mean that "related activities" enjoy the same protection. That is precisely the case here. Although the Plaintiffs' efforts to persuade others to vote, express political preferences, or even assist others in registration may be protected by the First Amendment, that is not to say that the collection and submission of others' applications is.

The *collection* of voter registration applications is not speech. It is true that the freedom of speech guaranteed by the First Amendment extends beyond literal speech and protects expressive conduct. *See Tex. v. Johnson*, 491 U.S. 397, 404, 109 S. Ct. 2533, 2540 (1989). But not all conduct with any expressive component is protected. "It is possible to find some kernel of expression in almost every activity a person undertakes—for example, walking down the street or meeting one's friends at a shopping mall—but such a kernel is not sufficient to bring the activity within the protection of the First Amendment." *Dallas v. Stanglin*, 490 U.S. 19, 25, 109 S. Ct. 1591, 1595 (1989).

Plaintiffs have alleged no communicative value in *collecting* registration applications. Indeed, there is none. The Supreme Court has said that "[i]n deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, we have asked whether an intent to convey a particularized message was present, and whether the likelihood was great that the message would be understood by those who viewed it." *Johnson*, 491 U.S. at 404, 109 S. Ct. at 2539 (marks omitted). The Plaintiffs have not alleged that they intend to convey a specific message in *collecting* applications. Indeed, the act of registration is apolitical and point-of-view neutral. Nor have they alleged that any individual would likely

understand any communicative value in the collection of applications.[3]  Instead, they merely allege that their success in registering new voters—which relies in part on their protected communications—"also depends on their ability to . . . collect the applications." (Compl. ¶ 36.) Non-expressive conduct is not protected by the First Amendment freedom of speech, however, regardless of whether the conduct is related to an effort that also involves protected speech.  If the opposite were true, there would be precious little conduct not protected by the First Amendment.  *See United States v. O'Brien*, 391 U.S. 367, 376, 88 S. Ct. 1673, 1678 (1968) ("We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea.").

### 2. *The collection of voter registration applications is not a necessary component of the Plaintiffs' political expression.*

There is no doubt that some of the Plaintiffs might engage in political expression through their voter registration efforts.  The collection of registration applications, though, is neither a part nor a condition of that political expression.  The collection of voter registration applications is different from the circulation of voter initiative petitions, which has been held to implicate the First Amendment.  With voter registration, the state is a primary actor.  The state makes registration forms available, assists applicants in the process, and facilitates the ultimate registration of any voter.  The state has provided the avenue for registration.  With initiative petitions, on the other hand, "[t]he state does not initiate the petition, does not draft the language of the petition, does not address the merits of the proposal and does not participate in any way in the circulation of the petition or in the collection of signatures." *Delgado*, 861 F.2d 1489, 1497

---

[3] This is not like those cases in which the conduct includes a communicative component. *See, e.g., Tx. v. Johnson*, 491 U.S. 397, 406, 109 S. Ct. 2533, 2540 (1989) (communication in burning flag); *Tinker v. Des Moines Ind. Comm. Sch. Dist.*, 393 U.S. 503, 504, 89 S. Ct. 733, 735 (1969) (communication in wearing black armbands to protest war in Vietnam); *Food Employees v. Logan Valley Plaza, Inc.*, 391 U.S. 308, 313-14, 88 S. Ct. 1601, 1605 (1968) (picketing).

(11th Cir. 1988). In other words, without individual citizens circulating petitions, no voter initiative could ever reach the ballot. Without voter registration organizations *collecting* voter registration applications, on the other hand, applicants would nevertheless be free to register. The differences between petition initiatives and voter registration applications are explained in more detail in the Defendants' Response. (Resp. at 24-26.)

### 3. *There is no Independent First Amendment Right to Collect Voter Registration Applications.*

As explained above, the First Amendment's guarantees of free speech do not reach the conduct of collecting voter registration applications. Furthermore, there is no independent constitutional right to collect these applications. As discussed in the Response, until relatively recently, voter registration had to take place in person before an agent of the state. (Resp. at 7-8.) There was—and is—no constitutional right to register others. In *Coalition for Sensible & Humane Solutions v. Wamser*, 771 F.2d 395 (8th Cir. 1985), the plaintiffs were dissatisfied with the performance of the Board of Election Commissioners of the City of St. Louis. Believing that the Board's voting drive efforts were not adequately reaching certain areas that included poor and minority citizens, and wishing to conduct their own registration drives, the Plaintiff's members sought appointment by the Board "deputy registration officials." *Id.* at 398. The Board denied the request, and the Plaintiffs alleged a constitutional violation and sued. *Id.*

In affirming the district court's dismissal, the Eighth Circuit agreed that the Plaintiffs had not stated a claim based on a constitutional violation. *Id.* at 400. The court agreed that the state had a regulatory interest in the prevention of fraud and the promotion of administrative efficiency. *Id.* While there is, of course, a fundamental right to vote, there is no constitutional right to be put in the position the plaintiffs sought. *Id.* at 399. Similarly, in this case, there is no

# 33650 v5                                     13

constitutional right to collect voter registration applications—much less to collect them and subsequently fail to submit them.

### 4. *The challenged legislation does not chill the exercise of any protected constitutional rights.*

Chief among the Plaintiffs' claims is the idea that the potential fines and "strict liability" imposed by the challenged legislation chill their protected speech—and their purported protected activity of collecting registration applications. (Compl. ¶¶ 83-92.) The Supreme Court has recognized that "constitutional violations may arise from the deterrent, or 'chilling,' effect of governmental regulations that fall short of a direct prohibition against the exercise of First Amendment rights." *Laird v. Tatum*, 408 U.S. 1, 11, 92 S. Ct. 2318, 2324 (1972). As explained above, though, the First Amendment is not implicated by regulations on the collection, submission, and administration of voter registration applications. Despite their allegations that they are ceasing all registration efforts—not just the collection of applications—the Plaintiffs have not alleged that the legislation regulates those other registration efforts. It does not. The Legislation does nothing to deter or chill protected First Amendment liberties; it only deters or chills the mishandling and late submission of voter registration applications—a laudatory public policy goal.

### 5. *The challenged legislation does not violate Plaintiffs' right of free association.*

Plaintiffs also allege that the challenged law violates some associational interest by penalizing their non-association with any political party. In other words, Plaintiffs assert that, because the challenged law, without affecting political parties, discourages non-political parties from collecting and submitting voter registration applications, it imposes an unconstitutional burden on their right to choose to not associate with a political party.

# 33650 v5                                   14

In *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 117 S. Ct. 1364 (1997), the U.S. Supreme Court considered whether a state law prohibiting candidates for office from appearing on the ballot as the nominee of more than one party violated the associational rights of parties that wished to nominate a candidate already nominated by another party.  The Court, noting that "the State's asserted regulatory interests need only be sufficiently weighty to justify the limitation," upheld the state law despite its tendency to encourage affiliation with the major political parties.  *Id.* at 364, 117 S. Ct. at 1372.  The Court recognized the state's interests in the integrity of the ballot and the stability of its political system and upheld the prohibition as a "reasonable regulation."  *Id.*

Similarly, in *Clingman v. Beaver*, 544 U.S. 581, 125 S. Ct. 2029 (2005), the Court upheld Oklahoma's system of primary elections, which prohibited political parties from allowing voters registered with other political parties from voting in their elections.  While the Court recognized that Oklahoma's primary law compelled voters to choose a single affiliation, it noted that, as in *Timmons*, the law neither regulated any party's "internal processes," nor did it impair any party's ability "to communicate with the public as [it] wished."  *Id*. at 589, 125 S. Ct. at 2037.  As a result, the law imposed only a slight burden which was justified by the state's interest in a viable party system.[4]  In this case, the Plaintiffs' allegations—even if taken as true—do not demonstrate that the challenged law impairs their ability to "communicate with the public as [they] wish."

---

[4] Both *Timmons* and *Clingman* apply a higher standard of review because they involve restrictions on voting and ballot access, thereby implicating First Amendment freedoms. *Clingman*, 544 U.S. at 593, 125 S. Ct. at 2039 (light burden on limitations on primary voting subject to *Anderson* balancing test and are usually satisfied by "a State's important regulatory interests"); *Timmons*, 520 U.S. at 363, 117 S. Ct. at 1372 (upholding regulation against fusion candidacies as a minor burden).  In this case, there is *no* burden on the Plaintiffs' First Amendment rights, so even this intermediate level of scrutiny is unwarranted.  *See infra*.

Therefore, the Plaintiffs have failed to sufficiently state a claim based upon the First Amendment freedom of association.

### 6. *The John and Jane Doe Plaintiffs' right to vote is not substantially burdened.*

The John and Jane Doe Plaintiffs bring substantially different claims than do the Actual Plaintiffs. Their claims are based on their fundamental right to vote—which they allege is burdened by the fact that the Actual Plaintiffs will no longer be able to reach out to them and help facilitate their registration. (Compl. ¶¶ 97-101.) As explained above—and in more detail in the Response—the John and Jane Doe Plaintiffs lack standing. Nonetheless, even if this Court had jurisdiction to consider these claims, they must be dismissed because they fail to state a claim upon which relief may be granted.

Notwithstanding the fundamental nature of the right to vote, states may require certain reasonable and even-handed qualifications related to voting. *Lassiter v. Northampton County Bd. of Elections*, 360 U.S. 45, 50, 79 S. Ct. 985, 989 (1959). These regulations play an integral and essential role in our democracy. The John and Jane Doe Plaintiffs do not allege that they will be legally precluded from voting—only that they might find it too difficult to register absent the help of the Actual Plaintiffs and others like them. (Compl. ¶¶ 99-100.) As articulated in the Response, these allegations, even if true, fall far short of establishing a constitutional violation. (Resp. at 17-19.)

There is no constitutional right to have voting registration available in the most convenient (to a complaining Plaintiff) fashion possible. *See Coalition for Sensible & Humane Solutions v. Wamser*, 771 F.2d 395, 400 (8th Cir. 1985) ("[W]e cannot agree that there is a constitutional right to greater access to voter registration facilities per se."). According to the Complaint, thousands of citizens register to vote annually through the State's mechanisms—

# 33650 v5                                    16

without the assistance of a voter registration organization.[5]  (Compl. ¶ 40.)  By alleging only that they will have a difficult time utilizing the voter registration processes provided by the State, the John and Jane Doe Plaintiffs have failed to state a claim upon which relief can be granted.

     **B.**    **The Legislation does not Improperly Discriminate Against Non-Political Parties.**

In addition to their First Amendment claims, the Plaintiffs pursue an Equal Protection claim based on the fact that the challenged legislation applies to them and not to political parties.  The different treatment between political parties and others results from the Legislature's recognition of substantial differences between them.  And the Legislature's different treatment of these different organizations does not violate Fourteenth Amendment Equal Protection.

The United States Supreme Court recently considered an Equal Protection challenge to Federal campaign finance regulations.  *McConnell v. FEC*, 540 U.S. 93, 124 S. Ct. 619 (2003).  The Plaintiffs alleged that a portion of the legislation discriminated against political parties in favor of certain special interest groups, such as the NRA and the ACLU, by placing contribution limitations on the funds that parties may use for voter registration activities.  *Id.* at 188, 124 S. Ct. 686.  The Court rejected the challenge:  "Congress is fully entitled to consider the real-world differences between political parties and interest groups when crafting a system of campaign finance regulation."  *Id.*; *accord FEC v. National Right to Work Commn.,* 459 U.S. 197, 210, 103 S. Ct. 552, 561 (1982).  The same is true for the Florida Legislature.

---

     [5] Under Florida law, voter registration forms "must be accepted in the office of any supervisor, the division [of elections], a driver license office, a voter registration agency, or an armed forces recruitment office."  § 97.053(1), Fla. Stat.  A "voter registration agency" includes "any office that provides public assistance, any office that serves persons with disabilities, any center for independent living, or any public library."  § 97.021(40).  In fact, an application must be accepted by a Supervisor even if the applicant is not resident in the Supervisor's county; the application would be forwarded to the correct Supervisor.  § 97.503(7), Fla. Stat.

Not surprisingly, the Florida Legislature has concluded that the differences between parties and non-parties merit different types of regulations. Florida law extensively regulates the organization, powers, and duties of political parties. In their Response, the Defendants detail the substantial control the state has over political parties. (Resp. at 32-34.) There is no parallel regulation of voter registration organizations. In short, Florida's political parties register with the state, are accountable to the state, and are identifiable to the state. This is not so with other third-party voter registration organizations.

In addition to substantial differences in the regulation of political parties and other organizations, there are obvious differences in the nature of the organizations. Political parties depend on broad public support for their very existence. In this sense, they are significantly more accountable to the public than their non-party counterparts. In contrast to political parties, voter registration organizations do not select and present slates of candidates for elections and are not subject to the same public or media scrutiny under which political parties operate. They do not necessarily depend on the votes and political decisions of others to achieve their objectives. Furthermore, the public at large has no opportunity to "vote against" third-party registration organizations. The Florida Legislature is entitled to rely on the substantial differences between political parties and others in crafting legislation that regulates the two types of organizations differently. The challenged legislation does not violate Equal Protection.

## **CONCLUSION**

The challenged legislation regulates one thing: the collection and submission of voter registration applications, and no other. The regulated conduct is not speech, is not expressive conduct, and does not implicate any First Amendment protected rights. The challenged legislation seeks to protect voter registration applicants by making those entrusted with voter

# 33650 v5         18

registration applications accountable for the timely submission of those applications.  This accountability protects the electoral process by ensuring that those who register to vote through third-party voter registration organizations are ultimately registered.  The Defendants and the Florida Legislature have the solemn duty to protect that process and defend the right of all eligible Floridians to vote.

Because the challenged legislation does not implicate any First Amendment protected speech or conduct, all of the Plaintiffs' First Amendment claims must fail.  And because the legislation includes no impermissible discrimination, the Equal Protection claims likewise must fail.  Accordingly, for the reasons set forth above and set forth in the Defendants' Response, the Defendants respectfully request that this Court dismiss the Plaintiffs' Complaint.

Respectfully submitted, this 21st day of June, 2006.

    /s/ *Peter Antonacci*
Peter Antonacci*
Florida Bar No.:  280690
Allen Winsor*
Florida Bar No.:  016295
Andy Bardos**
Florida Bar No.:  822671
George N. Meros, Jr.
Florida Bar No.:  263321
GRAYROBINSON, PA
Post Office Box 11189
Tallahassee, Florida  32302-3189
  Phone:  850-577-9090
  Fax:  850-577-3311
email:  pva@gray-robinson.com
*Attorneys for Defendants*

\*   Admitted Pro Hac Vice
\*\* PHV Application forthcoming

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing has been served by electronic mail and United States mail this 21st day of June, 2006, to the following:

| | |
|---|---|
| Gary C. Rosen<br>Becker & Poliakoff, P.A.<br>3111 Stirling Road<br>Fort Lauderdale, FL 33312<br>  Phone:  (954) 985–4133<br>  Email:  grosen@becker-poliakoff.com | Wendy R. Weiser<br>Renee Paradis<br>Brennan Center for Justice<br>at NYU School of Law<br>161 Avenue of the Americas, 12th Floor<br>New York, NY 10013<br>  Phone:  (212) 998–6730<br>  Email:  wendy.weiser@nyu.edu |
| Elizabeth S. Westfall<br>Jennifer Maranzano<br>Estelle H. Rogers<br>Advancement Project<br>1730 M. Street, NW, Suite 910<br>Washington, DC  20036<br>  Phone:  (202) 728-9557<br>  Fax:  (202) 728-9558<br>  Email:  ewestfall@advancementproject.org | Eric A. Tirschwell<br>Craig L. Siegel<br>Kramer Levin Naftalis & Frankel LLP<br>1177 Avenue of the Americas<br>New York, NY 10036<br>  Phone:  (212) 715–9100<br>  Email:  csiegel@KRAMERLEVIN.com |

  /s/ *Peter Antonacci*
PETER ANTONACCI
Florida Bar No. 280690
ALLEN C. WINSOR
Florida Bar No. 016295
GRAYROBINSON, P.A.
Post Office Box 11189
Tallahassee, Florida  32302-3189
  Phone:  (850) 577-9090
  Fax:  (850) 577-3311
email:  pva@gray-robinson.com
            awinsor@gray–robinson.com

*Attorneys for Secretary of State and Dawn Roberts*