


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-21265-CIV-SEITZ/MCALILEY

LEAGUE OF WOMEN VOTERS OF FLORIDA, PEOPLE ACTING FOR COMMUNITY TOGETHER (PACT), FLORIDA AFL-CIO, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, COUNCIL 79 (AFSCME), SEIU FLORIDA HEALTHCARE UNION, as organizations and as representatives of their members; MARILYNN WILLS; and JOHN and JANE DOES 1-100,

Plaintiffs,

v.

SUE M. COBB, individually and in her official capacity as Secretary of State for the State of Florida, and DAWN ROBERTS, individually and in her official capacity as Director of the Division of Elections within the Department of State for the State of Florida,

Defendants.

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**



LAW OFFICES
BECKER & POLIAKOFF, P.A. • 3111 STIRLING ROAD • FORT LAUDERDALE, FL 33312-6525
TELEPHONE (954) 987-7550

## INTRODUCTION

Plaintiffs respectfully submit this Response to Defendants' Motion to Dismiss the Complaint. As explained in further detail below, and as already explained in our motion papers in support of a preliminary injunction, which address many of the same issues Defendants raise here, each of Defendants' arguments is without merit.

As the Court is of course aware, a motion to dismiss "may be granted only when the defendant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Chepstow Ltd. v. Hunt*, 381 F.3d 1077, 1080 (11th Cir. 2004) (citation omitted). The Court must "accept as true the factual allegations in the plaintiff's complaint and construe the facts in the light most favorable to the plaintiff as the non-moving party." *Id.*. Further, "[c]onsideration of matters beyond the complaint is improper in the context of a motion to dismiss . . . ." *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984). In short, "the threshold of sufficiency to which a complaint is held at the motion-to-dismiss stage is 'exceedingly low.'" *United States v. Baxter Int'l*, 345 F.3d 866, 881 (11th Cir. 2003).

### I. DEFENDANTS' PUPORTED RATIONALES FOR THE CHALLENGED LAW ARE NEITHER A PROPER BASIS FOR A MOTION TO DISMISS NOR SUFFICIENT TO JUSTIFY THE LAW

Defendants argue that each and every claim should be dismissed because the challenged law serves a legitimate public purpose sufficient to justify the law. (Defendants' Motion To Dismiss and Memorandum in Support Thereof ("Mot. To Dismiss") at 5-6.) Because Defendants rely upon purported facts outside the Complaint, which may not be considered in a motion to dismiss, Defendants' discussion of the purported purpose of the law should be disregarded in its entirety. *See Milburn*, 734 F.2d at 765 ("Consideration of matters beyond the complaint is improper in the context of a motion to dismiss . . .").

Even if the Court could consider Defendants' factual allegations, their argument fails because there is no legitimate, let alone compelling, justification for the burdens that the challenged statute imposes. Defendants assert that the purpose of the law is both to prevent third-party voter registration groups from failing to timely submit applications and fraudulently withholding applications, and to promote administrative efficiency. (Defendants' Response to Plaintiffs' Motion for a Preliminary Injunction ("Op.") at 8-11.) But, as explained in Plaintiffs' Reply Memorandum of Law in Support of Plaintiffs' Motion for a Preliminary Injunction ("Reply"), Defendants offer no explaination how strict liability promotes greater accountability, nor do they explain the law's exemption of political parties, which are equally, or more, likely to submit tardy voter registration applications.[1] Moreover, Defendants offer no facts or evidence demonstrating any serious problem with Florida's third-party voter registration groups not timely submitting or withholding applications, especially considering the hundreds of thousands of applications they submitted in 2004 alone. Defendants further assert that the challenged law serves an anti-fraud purpose (Op. at 10); yet they do not explain why the criminal penalties that the Florida code imposes on persons who "knowingly... obstruct or delay the delivery of a voter registration form," Fla. Stat. § 104.0615(4), are insufficient to prevent the only type of "fraud" that the challenged law conceivably could reach. Finally, Defendants' assertion that the legislation promotes efficient administration of voter registration applications is not, as a matter of law, a sufficient justification for burdening Plaintiffs' constitutional rights. (*See* Reply at 4.) Even if efficient administration were a proper justification in this case, Defendants offer no evidence that Florida's voter registration deadline, which is twenty-nine days before the election,

[1] As stated in the Complaint, "18 days after the voter registration deadline, the Republican Party of Florida delivered to the Supervisor of Elections' office in Tallahassee a box containing about twelve to fifteen voter registration applications completed before the deadline." (Compl. ¶ 55.)

Fla. Stat. §97.055(1), does not provide the state with adequate time to process all submitted voter registration applications.

## II. THE ORGANIZATIONAL PLAINTIFFS HAVE BOTH MEMERSHIP AND THIRD-PARTY STANDING TO ASSERT IN COUNT IV THAT DEFENDANTS ARE DENYING PROSPECTIVE REGISTRANTS THE RIGHT TO VOTE

Defendants argue that Plaintiffs do not have standing to bring Count IV, which asserts that the challenged law impermissibly interferes with the right to vote of prospective registrants, including Plaintiffs' own members. (Mot. To Dismiss at 12; Op. at 12-17.) Defendants disregard allegations in the Complaint, fail to consider Plaintiffs' standing to bring claims on behalf of their members, and misinterpret case law on third-party standing.

### A. Plaintiffs Have Standing to Bring Count IV On Behalf of Their Members Who Will be Denied the Right To Vote as a Result of the Challenged Law

Defendants contend that Plaintiffs may not assert standing on behalf of their members in Count IV because they have not alleged that any of their members are unable to register to vote without the assistance of a third-party voter registration organization. (Op. at 16-17.) Defendants misread the Complaint, which repeatedly alleges that the challenged law has, and continues to, impede Plaintiffs' efforts to assist their own members to register to vote. (Compl. ¶¶ 15, 17-18, 19-20, 22-23,113, 115-17, 119, 124 (several Plaintiffs target their own members for voter registration efforts); ¶¶ 12, 15, 17-20, 22-23 (Plaintiffs' missions include encouraging their members to register and vote and to participate in political life); ¶¶ 102, 112, 113, 119, 122, 127 (challenged law has forced Plaintiffs to stop or reduce voter registration activities, including efforts to register their own members).)

An association has standing to bring suit on behalf of its members when: "(i) its members would otherwise have standing to sue in their own right; (ii) the interests it seeks to protect are germane to the organization's purpose; and (iii) neither the claim asserted nor the relief requested



LAW OFFICES
BECKER & POLIAKOFF, P.A. • 3111 STIRLING ROAD • FORT LAUDERDALE, FL 33312-6525
TELEPHONE (954) 987-7550

requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977); *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1244 (11th Cir. 2003) (citing *Hunt* standard).

The allegations in the Complaint easily satisfy the requirements for membership standing. First, Plaintiffs' members would otherwise have standing to sue in their own right for impairment of their right to vote. The Complaint alleges that several Plaintiffs have historically targeted their own members for voter registration efforts (Compl. ¶¶ 15 (PACT); 17-18, 113 (AFL-CIO); 19-20, 115-117, 119 (AFSCME); 22-23, 124 (SEIU)), and that the challenged law has forced them to reduce substantially, or stop altogether, their voter registration activities (*id.* ¶¶ 102, 112, 113, 119, 122, 127), including efforts to register their own members (*id.* ¶¶ 119, 127). Further, the Complaint alleges that the registrant plaintiffs, including the organizations' members, would be unable to register to vote but for the voter registration efforts of third-party voter registration organizations like Plaintiffs, and that the challenged law will therefore prevent the registrants from exercising their right to vote. (*See id.* ¶¶ 153-156.) Thus, Plaintiffs' members would have standing in their own right to bring a claim for loss of their voting rights. *See, e.g.*, *Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565, 573-74 (6th Cir. 2004) (organizational plaintiffs have standing to assert claims on behalf of members who are in jeopardy of losing their voting rights).

Defendants argue that Plaintiffs' members would not be able to bring a suit in their own right because the availability of alternative means of registration renders Plaintiffs' asserted injury—inability to register to vote—speculative. (Op. at 14.) This argument is unavailing

because the Complaint makes clear that the registrants' injury is real and imminent.[2] Plaintiffs allege that nonpartisan voter registration organizations, including the organizational Plaintiffs, have registered a substantial percentage of new Florida registrants in past elections, that the challenged law has forced them to suspend or significantly curtail their voter registration activities, and that absent such activities, many eligible voters will not register to vote or will find it extremely difficult to do so. (Compl. ¶¶ 4, 25, 102, 112, 113, 119, 122, 127, 153-156.) These allegations establish that the registrant Plaintiffs will suffer concrete and imminent injury. It is inevitable that without the voter registration activities of the organizational Plaintiffs, some prospective registrants, including Plaintiffs' members, will be unable to register to vote. Thus, the members' injury is not speculative or remote. *See Sandusky County*, 387 F.3d at 573-74 (organizational plaintiffs had standing to assert rights of their members who will vote in a future election, notwithstanding that they had not identified specific voters who would be harmed by defendants' conduct, because injury was "inevitable").

Second, the interests that Plaintiffs seek to protect are germane, and indeed central, to the organizations' purposes. As the Complaint makes clear, and as Defendants do not dispute, the Plaintiffs' missions include encouraging their members to register and vote and to participate in political life. (*See* Compl. ¶¶ 12, 15, 17-20, 22-23.)

Third, neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. Plaintiffs have not sought compensatory or punitive damages requiring individual accounting, but only injunctive and declaratory relief and nominal damages.

---

[2] Moreover, as set forth in the Reply, Defendants are mistaken as to the nature of the right at stake. The right to vote is impaired not only when it is absolutely denied but also when it is unjustifiably burdened.

(*See id.* Prayer for Relief.) Therefore, as Defendants appear not to dispute, the participation of the organizations' individual members is unnecessary. *See Hunt*, 432 U.S. at 343.

**B. <u>Plaintiffs Have Third-Party Standing to Bring Count IV on Behalf of Registrants Who Will be Denied The Right to Vote</u>**

Defendants argue with respect to Count IV that Plaintiffs have not satisfied any of the requirements necessary to establish third-party standing. Because Defendants misapprehend the legal standard for third-party standing and misread the Complaint, their arguments should be dismissed.

It is well established that litigants may bring actions on behalf of third parties if they satisfy three criteria: (1) "[t]he litigant must have suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute"; (2) "the litigant must have a close relation to the third party"; and (3) "there must exist some hindrance to the third-party's ability to protect his or her own interests." *Powers v. Ohio*, 499 U.S. 400, 410-11 (1991). Plaintiffs' allegations easily meet these requirements.

**1. <u>Plaintiffs Have Suffered an Injury-in-Fact</u>**

Defendants contend that Plaintiffs have not alleged injury-in-fact sufficient to satisfy the first requirement for third-party standing because they have not alleged any injury-in-fact resulting from the non-registration of the John and Jane Does. In particular, Defendants argue that any harm resulting from the non-registration of John and Jane Does will fall on the Does themselves, not on the organizational Plaintiffs. (Op. at 13-14.)

Defendants misread the Complaint. Plaintiffs specifically allege that the challenged law will interfere with the organizations' voter registration activities and that the resultant non-registration of voters will frustrate the organizations' mission of registering persons to vote and diminish the organizations' political power. In particular, the Complaint alleges that the

challenged law has caused Plaintiffs to suspend or severely curtail their voter registration activities (*see, e.g.,* Compl. ¶¶ 102, 112, 113, 119, 122, 127); that absent such activities, the Doe plaintiffs will not become registered to vote (*id.* ¶ 25); and that the inability to engage in voter registration activities, and the consequent non-registration of voters, frustrates the organizations' mission of voter registration and diminishes the organizations' political power. (*See id.* ¶¶ 12, 15, 17-18, 20, 22-23 (Plaintiffs' missions include registration of voters); ¶ 19 (AFSCME's political power and clout hinge upon registration of its members and members' voting in local elections); ¶ 22 (SEIU FHU's political influence depends upon registration of its members and members' participation in the political process); ¶ 33 (one purpose of third-party voter registration drives is to increase those organizations' political power)).

Plaintiffs' allegations that the inability of the Does to become registered to vote and to vote will frustrate Plaintiffs' mission of registering voters and diminish their political power meet the requirement of injury-in-fact on a motion to dismiss. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (fair housing organization satisfied injury-in-fact requirement on motion to dismiss by alleging that defendants' racial steering practices frustrated its mission of providing homebuyers with equal access to housing through counseling and referral services); *Bay County Democratic Party v. Land*, 347 F. Supp. 2d 404, 421-23 (E.D. Mich. 2004) (organizational plaintiffs have third-party standing in part because they will suffer injury if their members who are eligible electors do not have their votes counted, since that will diminish the organizations' political power).

Defendants also argue that Plaintiffs cannot assert third-party standing because the Doe Plaintiffs' inability to register to vote is speculative, in light of alternative means of registering. (Op. at 14-15.) This argument is irrelevant to establishing injury-in-fact for purposes of third-



LAW OFFICES
BECKER & POLIAKOFF, P.A. • 3111 STIRLING ROAD • FORT LAUDERDALE, FL 33312-6525
TELEPHONE (954) 987-7550

party standing because the legal inquiry pertains to injury to the litigant, not to the third-party. *Powers*, 499 U.S. at 411. Further, as discussed above, it is not speculative that the Does will be unable to register to vote and vote without the assistance of the organizational Plaintiffs or other third-party voter registration organizations.

**2. <u>Plaintiffs Have a Close Relationship with Prospective Registrants</u>**

Defendants contend that Plaintiffs may not assert claims on behalf of prospective registrants because they have not alleged a sufficiently close relationship between themselves and the Doe Plaintiffs, who are currently unknown and unidentified. (Op. at 15.) To the contrary, Plaintiffs and the prospective registrants that they target have a congruence of interests in ensuring that registrants may exercise their right to vote and participate in the political process. That the registrants are currently unknown poses no barrier to third-party standing.

The Eleventh Circuit has recognized that "in certain circumstances 'the relationship between the litigant and the third party may be such that the former is fully, or very nearly, as effective a proponent of the right as the latter.'" *Harris v. Evans*, 20 F.3d 1118, 1123 (11th Cir. 1994) (quoting *Singleton v. Wulff*, 428 U.S. 106, 115 (1976)); *see also Sec'y of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956 (1984) (purpose of "close relationship" element is to establish that "the third party can reasonably be expected properly to frame the issues and present them with the necessary adversarial zeal"). "Where a 'congruence of interests' exists, it may be 'necessary and appropriate' for the litigant to raise the rights of the third party." *Harris*, 20 F.3d at 1123 (quoting *Powers*, 499 U.S. at 414). The Supreme Court has recognized a variety of relationships that may give rise to third-party standing, including doctor-patient, attorney-client, and vendor-vendee. *See id.* (citing cases).



LAW OFFICES
BECKER & POLIAKOFF, P.A. • 3111 STIRLING ROAD • FORT LAUDERDALE, FL 33312-6525
TELEPHONE (954) 987-7550

The Complaint alleges that low-income, minority, disabled, and other disenfranchised Floridians rely on Plaintiffs to help them overcome barriers to voter registration, such as the travel required to register at a government office or lack of access to the Internet to obtain a registration application on line. (Compl. ¶¶ 4-6.) Plaintiffs explain the importance of registering to vote to potential voters, assist such voters in completing an application, collect the applications, deliver them to the appropriate state official, and verify that officials have added qualified registrants who submitted complete registration applications to the rolls. (*Id.* ¶ 36.) Florida's recent amendment of its election code to establish that third-party voter registration organizations have a fiduciary duty to citizens they assist underscores the close relationship between third-party organizations and voter applicants. Fla. Stat. § 97.0575. In light of the shared interests of Plaintiffs and voter registration applicants in ensuring that Plaintiffs can assist eligible voters to complete applications, deliver those applications to election officials, and verify that applicants are added to the voter rolls, Plaintiffs are well-suited to represent the interests of applicants who will be unable to register, and consequently to vote, without their assistance.

Defendants' argument that a close relationship cannot exist for purposes of third-party standing where the prospective voter applicants are unknown lacks legal support. Courts have found litigants to have third-party standing, notwithstanding that the identities of the third parties are unknown, in a wide variety of cases. *See, e.g., Carey v. Population Servs. Int'l*, 431 U.S. 678, 683 (1977) (permitting third-party standing for corporate distributor of contraceptives on behalf of its potential customers); *Griswold v. Conn.*, 381 U.S. 479, 481 (1965) (observing that in *Pierce v. Soc'y of Sisters*, 268 U.S. 510 (1925), "the owners of private schools were entitled to assert the rights of potential pupils and their parents," and in *Barrows v. Jackson*, 346 U.S. 249, (1953), "a white defendant . . . was allowed to raise the . . . rights of prospective Negro

purchasers"); *Bay County*, 347 F. Supp. 2d at 423-24 (plaintiffs could assert third-party standing in voting rights case, even where identities of third-parties were unknown).

Defendants' attempt to analogize the third-party claims in this case to those set forth in *Kowalski v. Tesmer*, 543 U.S. 125 (2004), is misplaced. In *Kowalski*, the Court held that the attorney plaintiff and hypothetical indigent clients affected by Michigan's new system for appointing appellate counsel for indigent defendants did not have a close relationship for purposes of third-party standing. The Court expressly distinguished the relationship before it from cases in which the Court permitted third-party standing "when enforcement of the challenged restriction *against the litigant* would result indirectly in the violation of third parties' rights." *Kowalski*, 543 U.S. at 130 (emphasis in original).

In *Kowalski*, the statute at issue prohibited the appointment of appellate counsel to indigent defendants in certain circumstances. Thus, the enforcement of the challenged law against the third-party would only indirectly harm the litigants—attorneys who sought to represent such third parties—and it could not be enforced directly against the attorneys. By contrast, here, the challenged law can be enforced directly against the litigants (the organizational Plaintiffs), and that enforcement would result indirectly in the interference of third parties' (prospective registrants) voting rights. Because the statute at issue in this case has, and will continue to, *directly* abridge the rights of the organizational Plaintiffs, thereby depriving the voter registrant Plaintiffs of the ability to register to vote and vote, *Kowalski* is inapplicable.

**3. <u>The Doe Plaintiffs Are Unable To Protect Their Own Interests</u>**

Defendants contend that Plaintiffs have not alleged that the Doe Plaintiffs are unable to protect their own interests and that lack of resources or access to legal services do not suffice to show hindrance necessary to support third-party standing. (Op. at 16.) Defendants' argument is

baseless because prospective registrants would face substantial hurdles in vindicating their voting rights if the organizational Plaintiffs were not permitted to assert claims on their behalf.

The third criterion for establishing third-party standing is "whether the rights of the third party will be diluted or infringed if the litigant is not allowed to assert those rights on behalf of the third party." *Harris*, 20 F.3d at 1124. This requirement does not require "an absolute impossibility of suit." *Pennsylvania Psych. Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 290 n.14 (3d Cir. 2002) (quoting 15 James Wm. Moore et al., *Moore's Federal Practice* ¶ 101.51[3][c]).

The facts alleged in the Complaint show that registrants who are denied access to assistance from the organizational Plaintiffs will face significant hurdles in bringing litigation to protect their own voting rights. Plaintiffs have alleged that the Doe Plaintiffs face numerous barriers in registering to vote, such as difficulty traveling to government offices and lack of resources and educational background to ensure proper completion of a voter registration application and verification that state officials have added them to the voter rolls. (*See* Compl. ¶¶ 6, 11, 25, 36.) These impediments to voter registration also impair the ability of those individuals to vindicate their voting rights in court.

Additionally, mootness may present a significant obstacle to voter registrants' ability to litigate the abridgement of their right to register and to vote.[3] Unless Plaintiffs are permitted to assert the Doe Plaintiffs' claims that the challenged law will interfere with their right to become registered to vote and to vote, these claims are unlikely to be litigated. If particular prospective registrants were identified by name as Plaintiffs, their participation in this lawsuit would provide

[3] *Singleton v. Wulff*, 428 U.S. 106, 114-15 (1976), as Defendants note (Op. at 16), holds that mootness may serve a proper basis for establishing hindrance for purposes of third-party standing.



LAW OFFICES
BECKER & POLIAKOFF, P.A. • 3111 STIRLING ROAD • FORT LAUDERDALE, FL 33312-6525
TELEPHONE (954) 987-7550

them with the information and wherewithal to register to vote. Such registrant plaintiffs would be unlikely to allow the registration deadline to lapse without submitting a voter registration application. Thus, unless the organizational Plaintiffs are permitted to assert third-party standing on behalf of unnamed registrants, the statute cannot be challenged with respect to its effect on voter applicants. Given the hurdles that individuals face in asserting the claim that the challenged law has interfered with and deprived them of their voting rights, the organizational Plaintiffs should have third-party standing to litigate this claim.

## III. THE COMPLAINT ADEQUATELY PLEADS EACH OF PLAINTIFFS' CLAIMS FOR RELIEF UNDER THE FIRST AND FOURTEENTH AMENDMENTS

### A. Counts I Through III of the Complaint Adequately Allege that the Challenged Law Violates Plaintiffs' First Amendment Rights

The Complaint asserts sufficient factual allegations to show that the challenged law violates the First and Fourteenth Amendments under a variety of legal theories.

Defendants' arguments to the contrary are unavailing. First, Defendants argue that the challenged law's "differential treatment" of political parties arises from a "recognition of substantial differences" between Plaintiffs and Florida's major and minor political parties. (Mot. To Dismiss at 17.) This argument should be completely disregarded on a motion to dismiss because it relies on matters outside of the Complaint. Defendants' argument also fails because none of the regulations Defendants cite have any bearing on whether political parties are more reliable in their voter registration activities than Plaintiffs; Plaintiffs' are subject to similar regulations as those cited; and Defendants rely on inapposite case law. (*See* Reply at 6-8.)

Second, Defendants argue that "none" of Plaintiffs' constitutionally-protected activities "has been affected by the challenged legislation." (Mot. To Dismiss at 10.) Defendants ignore the repeated allegations in the Complaint that Plaintiffs' speech and association have been dramatically and negatively affected by the challenged law. (*See, e.g.*, Compl. ¶ 1) ("The law

has forced the League of Women Voters and other plaintiffs to shut down their nonpartisan voter registration activities in Florida.") The Court must accept Plaintiffs' allegations as true for the purpose of the motion to dismiss and disregard Defendants' contrary assertions. Nevertheless, even if the challenged law does not discriminate against Plaintiffs' in the exercise of their constitutional rights to speak, associate, vote, and participate in the political process—which it clearly does—the Complaint alleges sufficient facts (*see, e.g.,* Compl. ¶¶ 73-80), to show that the law violates the Equal Protection Clause because it intentionally and arbitrarily treats political parties differently from non-political parties. *See, e.g., Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) ("Our cases have recognized successful equal protection claims . . . where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.").

Third, Defendants argue that the symbolic speech analysis of *United States v. O'Brien*, 391 U.S. 367 (1968), applies to this case and, since the Complaint does not allege that Plaintiffs "intend to convey a specific message in collecting applications," Plaintiffs fail to state a First Amendment claim. (Mot. to Dismiss at 11) (emphasis omitted). *O'Brien* does not apply to this case for the reasons stated in Plaintiffs' reply brief. (Reply at 15-16.) Even if it did, the Complaint adequately alleges that collection and submission of applications are a form of association that is vitally important to achieving the very purpose of plaintiffs' speech. (*See* Compl. ¶ 36 ("Plaintiffs' success in registering new voters . . . also depends on their ability to assist others to properly fill in applications, to collect the applications, to deliver them to the appropriate state offices, and, in some cases, to follow up and ensure that the state properly adds the new voters to the rolls. Merely distributing voter registration applications is insufficient to ensure the success of a voter registration drive.") In addition, the Complaint alleges that the law,

by shutting down or severely curtailing Plaintiffs' voter registration drives has "forced [Plaintiffs] to communicate fewer political messages and to refrain from engaging in associational activity important to advancing their missions and beliefs." (*Id.* ¶ 5.) This is more than sufficient to satisfy the liberal notice pleading standards of Rule 8.

Fourth, Defendants argue that collecting applications "is neither a part nor a condition of [Plaintiffs'] political expression." (Mot. to Dismiss at 12.) This is refuted by ¶ 36 of the Complaint quoted above. Furthermore, Defendants' argument that collecting voter registration applications differs from circulating initiative petitions (which they admit is protected by the First Amendment), should be disregarded because it contradicts the allegations in the Complaint. (*Id.* at 12.) Defendants' argument relies on their assertion that "the state is a primary actor" when it comes to voter registration. (*Id.*) The Complaint actually alleges the opposite when it comes to third-party voter registration (as differentiated from registration by a state agency). In particular, the Complaint alleges that, as to third-party voter registration, Plaintiffs persuade citizens to register to vote, provide citizens with applications, assist citizens to properly fill in applications, and deliver applications to supervisors of elections on behalf of other citizens, including their own members. (Compl. ¶¶ 35-36.) There is no allegation that the state plays any role in this activity; rather, the state's role is confined to creating the form of the applications (which can be printed from the Division of Elections' website and copied by Plaintiffs) and, once the third-party's voter registration activities are complete, processing the application.[4]

Fifth, Defendant's argue that dictum in *Coalition for Sensible & Humane Solutions v. Wamser*, 771 F.2d 395 (8th Cir. 1985), demonstrates that the First Amendment does not apply to

[4] Defendants incorrectly state that since citizens are free to register to vote through means other than third-party voter registration drives, the challenged law does not implicate First Amendment rights, including the right to vote. Defendants' argument is meritless for the reasons stated in the Reply.

this case because "there is no constitutional right to collect voter registration applications." (Mot. to Dismiss at 12-13.) For the reasons articulated in Plaintiffs' reply brief (Reply at 16-17), *Wamser* provides no support for the argument that the First Amendment does not apply. Instead, the Eighth Circuit's decision, by applying the *Anderson* balancing test, supports the argument that the First Amendment applies in the present case.

Sixth, Defendants' argument that Plaintiffs fail to state a claim that the challenged law chills their speech borders on the frivolous. (Mot. to Dismiss at 14.) At the heart of the Complaint is the allegation that the challenged law has affected Plaintiffs' voter registration drives—which Defendants concede include constitutionally protected speech (*Id.* at 9)— by entirely shutting them down, or at least forcing them to be dramatically curtailed. (*See, e.g.,* Compl. ¶ 1.)

Seventh, Defendants attempt to argue that the challenged law does not penalize plaintiffs for their non-association with a political party because Plaintiffs' allegations "do not demonstrate that the challenged law impairs their ability to 'communicate with the public as [they] wish.'" (Mot. to Dismiss at 15) (quoting *Clingman v. Beaver*, 544 U.S. 581, 589 (2005)). The argument is nonsensical. The basis of Plaintiffs' non-association claim is not that their speech is impaired, but that the law forces them to associate against their will with a political party if they wish to receive the benefit of registering voters without running the risk of paying crippling fines.

**B. <u>Count IV of the Complaint Adequately Alleges that the Challenged Law Impermissibly Burdens Plaintiffs' Fundamental Right to Vote</u>**

The Complaint adequately alleges that since each of the Registrant Plaintiffs would not be able to register to vote but for plaintiffs' voter registration drives, and since the challenged law has shut down or seriously curtailed those efforts, the Registrant Plaintiffs' fundamental rights to vote and to participate in the political process is violated. (Compl. ¶¶ 4, 6, 25, 151-

157.) Defendants argue, however, that the Complaint "fall[s] far short of establishing a constitutional violation" because it "do[es] not allege that [Plaintiffs] will be legally precluded from voting." (Mot. to Dismiss at 16.) As explained in Plaintiffs' reply brief (Reply at 18-19), Defendants misapprehend the legal standard that governs Plaintiffs' claim.

The governing standard is not whether the statute at issue "deprive[s] [plaintiffs] of all opportunities" to exercise their rights; rather, it is whether the law "constitute[s] a 'substantial restraint' and a 'significant interference' with the exercise of the constitutionally protected right[s]." *Kusper v. Pontikes*, 414 U.S. 51, 58 (1973). Prior cases make it clear that the right to vote may be unduly and unconstitutionally burdened without being absolutely denied and regardless of whether alternative avenues to voting are available. *See, e.g., Tashjian v. Rep. Party of Conn.*, 479 U.S. 208, 216 n.7 (1986); *Beare v. Briscoe*, 498 F.2d 244, 247-48 (5th Cir. 1974); *Common Cause/Georgia v. Billups*, 406 F. Supp. 2d 1326, 1361 (N.D. Ga. 2005).

## IV. THE COMPLAINT STATES CLAIMS AGAINST DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES AND QUALIFIED IMMUNITY DOES NOT SHIELD THEM FROM LIABILITY

### A. Plaintiffs Have Alleged Specific Conduct on the Part of Defendants Sufficient To Establish Personal Liability and To Support a Claim for Nominal Damages

State actors are "persons" subject to liability in individual capacity in suits alleging conduct causing the abridgement of federal rights. *Hafer v. Melo*, 502 U.S. 21, 24-26 (1991). Damages may be recovered against state actors even where the official performs acts that are "both within the official's authority and necessary to the performance of governmental functions." *Id.* at 28. "'[A]cting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the injury." *Id.* at 26.



LAW OFFICES
BECKER & POLIAKOFF, P.A. • 3111 STIRLING ROAD • FORT LAUDERDALE, FL 33312-6525
TELEPHONE (954) 987-7550

The Complaint alleges several specific actions that Defendants have taken, and will take, that have contributed to Plaintiffs' suspending or significantly curtailing their voter registration activities. In particular, Plaintiffs assert that the Department of State and Division of Elections issued a proposed rule implementing the law (Compl. ¶ 68); the Department of State publicly stated that it will impose strict liability for violations of the law so that "even if some situation arises beyond the control of an organization" that results in applications not being submitted within the manner prescribed by law, it will fine the third-party voter organizations (*id.* ¶ 65); and that Defendants are authorized and required to interpret and enforce the challenged law (*id.* ¶ 28).

Construing the allegations in the light most favorable to Plaintiffs, it is reasonable to infer that Defendants Cobb and Roberts, as the top officials of the Department of State and Division of Elections, respectively, caused and/or approved the issuance of the proposed rules implementing the challenged law and the statement concerning its enforcement. These actions signaled clearly and publicly that the Department of State and Division of Elections intended to enforce the challenged law and enforce it strictly. In turn, these pronouncements contributed to forcing and causing Plaintiffs to cease or significantly curtail their voter registration activities. Because the Complaint alleges these specific actions, Defendants have more than adequate notice of the factual grounds on which the claims against them in their individual capacity rest and the basis for individual liability. At the very least, discovery should be permitted on these fact questions. Thus, Plaintiffs' claims against Defendants in their individual capacity, including claims for nominal damages, should not be dismissed at this juncture.[5]

**B. <u>Defendants Are Not Shielded from Individual Liability by Qualified Immunity</u>**

While the standard may be high for suing a state actor in her personal capacity for enforcing a state statute, Defendants' qualified immunity argument is unfounded because Plaintiffs

---

[5] Plaintiffs do not dispute that the Eleventh Amendment precludes suits in federal court against officers in their official capacity for nominal damages.

have First Amendment and Equal Protection rights that were clearly established when the facts underlying the Complaint arose, and that are flagrantly violated by the challenged law. This reasonably should have been known to Defendants.

Although state officials are usually "charged to enforce laws until and unless they are declared unconstitutional," an official may not avail herself of qualified immunity in enforcing a law that is "so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979). Here, the Department of State and Division of Elections' issuance of a proposed rule and the imminent implementation of the law plainly violate Plaintiffs' rights to equal protection and free speech and association. Sections 2 and 7 of 2005 Fla. Laws 277 facially discriminate against Plaintiffs by subjecting them, and other third-party voter registration organizations, to severe and burdensome financial penalties while exempting political parties. (Compl. ¶¶ 57-59.) This right to be free from arbitrary and discriminatory classification, especially where the classification may burden fundamental rights of speech and association, is well established. (*See, e.g.,* Reply at 6-10 (citing cases).) In fact, in almost every instance in which the Supreme Court reviewed a law that discriminated in favor of political parties, it has invalidated that law. (*See id.* at 9; Plaintiffs' Motion for a Preliminary Injunction and Incorporated Memorandum of Law at 22-24.)

Secretary of State Cobb and Director of the Division of Elections Roberts have direct responsibility for interpreting the law at issue before implementing it (*see* Compl. ¶¶ 26-28) and thus should have known that discriminatorily distinguishing between political parties and non-partisan organizations (among other constitutional flaws of the challenged law) runs afoul of the equal protection clause and the First Amendment. Moreover, in their rule-making and enforcement capacities, they made no efforts to more narrowly tailor the law or temper the law's patently



LAW OFFICES
BECKER & POLIAKOFF, P.A. • 3111 STIRLING ROAD • FORT LAUDERDALE, FL 33312-6525
TELEPHONE (954) 987-7550

unconstitutional reach, which weighs against a finding of qualified immunity, particularly at the pleading stage. *Compare Lederman v. United States*, 291 F.3d 36, 47 (D.C. Cir. 2002) (affirming *summary judgment* on defense of qualified immunity for state officials who enforced a duly enacted but unconstitutional speech ban, based in part on finding that while statute's "sheer breadth [was] astonishing," the state officials "made some attempt at tailoring" by issuing certain exemptions and other limiting language). Thus, qualified immunity should not result in the dismissal of Plaintiffs' claims against Cobb and Roberts in their individual capacity, particularly at this early stage on a motion to dismiss. *See Michigan v. DeFillippo*, 443 U.S. at 38; *Johnson v. Breeden*, 280 F.3d 1308, 1317 (11th Cir. 2001) ("Where it is not evident from the allegations of the complaint alone that the defendants are entitled to qualified immunity, the case will proceed to the summary judgment stage, the most typical juncture at which defendants entitled to qualified immunity are released from the threat of liability and the burden of further litigation.").

Dated: July 10, 2006

Gary C. Rosen, Florida Bar No. 310107
BECKER & POLIAKOFF, P.A.
3111 Stirling Road
Ft. Lauderdale, Florida 33312
Tel: (954) 985-4133

Wendy R. Weiser
Renée Paradis (*not yet admitted*)
BRENNAN CENTER FOR JUSTICE AT NYU SCHOOL OF LAW
161 Avenue of the Americas, 12th Floor
New York, N.Y. 10013
Tel: (212) 998-6730

Elizabeth S. Westfall
ADVANCEMENT PROJECT
1730 M. Street, N.W., Suite 910
Washington, D.C. 20036
Tel: (202) 728-9557

Eric A. Tirschwell
Craig L. Siegel
Erin Walter
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, N.Y. 10036
Tel: (212) 715-9100

by /s/ Eric A. Tirschwell

*Attorneys for Plaintiffs*