FILED
ELECTRONIC
Jul 30 2006
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. · MIAMI

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Case No.: 1:06cv21265–SEITZ-MCALILEY

LEAGUE OF WOMEN VOTERS OF FLORIDA, PEOPLE
ACTING FOR COMMUNITY TOGETHER, *et al.,*

      Plaintiffs,

v.

SUE M. COBB, individually and in her official capacity as
Secretary of State for the State of Florida, and DAWN
ROBERTS, individually and in her official capacity as
Director of the Division of Elections,

      Defendants.

_____/

### DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants Sue M. Cobb, Secretary of State for the State of Florida, and Dawn Roberts, Director of the Division of Elections, submit this supplemental memorandum of law in opposition to Plaintiffs' Motion for Preliminary Injunction and in support of Defendants' Motion to Dismiss. This memorandum addresses questions presented to the parties in the Court's July 21, 2006 order. Specifically, the Court asked for additional argument relating to the challenged legislation's fines and its imposition of "strict liability."

At the outset, liability under the challenged legislation is not strict in the sense that sanctions may develop without any regard to the circumstances. Although the Plaintiffs present exaggerated examples of when statutory compliance would be impossible—such as during a major hurricane or flood, or when the collector passed away—fears of consequence in these instances are not reasonably founded. The decision to investigate and assess a fine rests in the discretion of the Secretary, and for purposes of this facial challenge, this Court must assume that

# 34678 v2

the Secretary will exercise her discretion in a reasonable manner.  See *Florida League of Professional Lobbyists v. Meggs*, 87 F.3d 457, 459 (11th Cir.) (on facial challenge—even one based on First Amendment—plaintiffs must demonstrate that, at a minimum, that "statute would operate unconstitutionally in *most* cases."), *cert. denied*, 519 U.S. 1010 (1996).

> I.  **THE POWER TO INVESTIGATE VIOLATIONS OF THE LAW RESTS IN THE DISCRETION OF THE SECRETARY OF STATE.**

The Secretary has no affirmative duty to investigate potential violations of the statute.  Under the challenged legislation, "[t]he division *may* investigate any violation of this section." § 97.0575(4)(b), Fla. Stat. (emphasis added).  And because the assessment of a fine presupposes an investigation, *see id.*, the challenged law makes imposition of any fine itself discretionary.  And long before concluding there may be a violation, the Secretary could abandon an investigation in which she had no interest—for example, an investigation suggesting a violation was caused by a hurricane, flood, or other disaster.  Likewise, the Secretary could discontinue any investigation that was based on facts she felt did not warrant her attention for any other reason.

Furthermore, the proposed rule narrowly limits the power to initiate an investigation.  The proposed rule grants the Secretary power to investigate in two cases:  (1) in the case of a complaint filed by a victim "claiming to have been registered by a third-party voter registration organization but whose name does not appear as an active voter on the voter registration rolls"; and (2) in the case of a violation reported by the victim's Supervisor of Elections.  *See* Proposed Rule 1S-2.042(4).  Under the proposed rule, the Secretary may bring an investigation only in these limited circumstances; she may not self-initiate any investigation.

## II.     THE POWER TO ASSESS FINES RESTS IN THE DISCRETION OF THE SECRETARY OF STATE.

In addition to discretion to investigate, the Secretary enjoys discretion in the imposition of any fines. Despite the law's language saying fines "shall" be imposed, there is no question that the Secretary may exercise her discretion in the imposition of the fines. It is well settled that an executive charged with enforcement of a law possesses discretion to do so. This principle, which is essential to both the independence and the proper administration of the executive department, has been consistently applied by courts.

In *Heckler v. Chaney*, 470 U.S. 821 (1985), the United States Supreme Court considered whether the enforcement provision of the Federal Food, Drug, and Cosmetic Act (FDCA) requires prosecution of all violators. The FDCA's enforcement provision provided succinctly that violators "shall be imprisoned . . . or fined." *Id*. at 835. The Court noted that mandatory language is "commonly found in the criminal provisions" of the United States Code and refused to "attribute such a sweeping meaning" to the FDCA. *Id.* In *Dubois v. Thomas*, 820 F.2d 943 (8th Cir. 1987), the Eighth Circuit Court of Appeals applied the principle enunciated in *Heckler* to another administrative agency. Section 309(a)(3) of the Federal Water Pollution Control Act states that:

> Whenever the . . . Administrator [of the EPA] finds that any person is in violation of section 1311 . . . he *shall* issue an order requiring such person to comply with such section . . ., or he shall bring a civil action in accordance with subsection (b) of this section.

*Dubois*, 820 at 946 (emphasis added). Concluding that the word "shall" expressed a mandatory command, the district court had concluded that the Administrator was required to issue an order or institute a civil action upon every violation of the relevant provision. The Eighth Circuit reversed. Citing *Heckler*, the Eighth Circuit relied on the "well established principle that agency

decisions which refuse enforcement generally are unsuitable for judicial review." *Id*. at 948; *see also Blancett v. U.S. Bureau of Land Management*, Slip Copy, 2006 WL 696050 (D.D.C. 2006) (holding that the Federal Taylor Grazing Act, which provides that the Secretary of the Interior "shall" adequately safeguard grazing privileges, does not impose a mandatory duty).

Just last term, the Supreme Court again applied this principle. In *Town of Castle Rock, Colo. v. Gonzales*, 125 S. Ct. 2796 (2005), an individual had sued a municipality and its police officers, alleging that mandatory language in a state law required them to enforce a restraining order. Noting the "deep-rooted nature of law-enforcement discretion, even in the presence of seemingly mandatory legislative commands," the Court concluded that the law did not preclude executive discretion:

> It is hard to imagine that a Colorado peace officer would not have some discretion to determine that—despite probable cause to believe a restraining order has been violated—the *circumstances of the violation* or the *competing duties of that officer or his agency* counsel decisively against enforcement in a particular instance.

*Id*. at 2806 (emphasis added); *accord Chicago v. Morales*, 527 U.S. 41, 62 n.32 (1999) ("It is possible to read the mandatory language of the ordinance and conclude that it affords the police *no* discretion, since it speaks with the mandatory 'shall.' However, not even the city makes this argument, which flies in the face of common sense that all police officers must use some discretion in deciding when and where to enforce city ordinances.").

In this case, the principle of discretion in enforcement again trumps the seemingly mandatory nature of the word "shall." As in *Gonzales*, the "circumstances of the violation"—for example, the inadvertent loss of applications in a hurricane or flood—would "counsel decisively against enforcement in a particular instance." Similarly, the Secretary's "competing duties" would militate against enforcement in all cases without exception. The Secretary's resources—

# 34678 v2                                                  4

time, personnel, and money—cannot support investigation of every potential violator of the challenged law.  This is especially true in light of the extensive rights to administrative and judicial review that Florida law confers on persons adversely affected by agency action.  *See infra.*  The Secretary's proper administration of her duties would be jeopardized by a construction of the challenged law that imposes an absolute duty on it to pursue every valid complaint.  When the assessment of any penalty would be unreasonable or improper, the Secretary has no obligation to pursue one.  And even when she does assess a fine, the person assessed has broad administrative protections under Florida law.

> **III.    FLORIDA LAW AFFORDS VOTER REGISTRATION ORGANIZATIONS NUMEROUS STATE-CREATED MECHANISMS TO CHALLENGE ANY ASSESSED FINE.**

The Florida Administrative Procedure Act creates an elaborate and robust process that allows any substantially affected party to challenge agency action.  § 120.569, Fla. Stat.  Any person against whom the Secretary enters an order assessing any penalty is entitled to an administrative hearing and judicial review.  During these proceedings, the Secretary must prove the existence of a violation by clear and convincing evidence—the highest standard known to civil actions.  In addition, the organization can raise both legal and factual defenses, not only during proceedings to review the agency action, but also in enforcement proceedings brought by the agency.

In any effort to enforce the challenged legislation, the Secretary would enter an administrative order.  And any Order assessing any penalty is subject to an administrative hearing.  *See* §§ 120.569, 120.57, Fla. Stat.  Furthermore, the assessed party would be notified of its rights.  "Parties shall be notified of any order . . . Each notice shall inform the recipient of any administrative hearing or judicial review that is available [and] shall indicate the procedure

# 34678 v2

5

which must be followed to obtain the hearing or judicial review; and shall state the time limits which apply." *Id.* § 120.569(1).

When first issued, any order assessing a fine is not a final order. *See* § 120.52(7), Fla. Stat. Until a final order is issued following an administrative hearing held pursuant to Sections 120.569 and 120.57, Florida Statutes, or until a hearing is offered and waived pursuant to notice, the agency order is merely preliminary and is of no force or effect. *See Capeletti Bros., Inc. v. State, Dept. of Transp.,* 362 So. 2d 346, 349 (Fla. 1st DCA 1978). And between the preliminary agency action and the issuance of a final order, there are numerous protections for the affected party.

Florida's administrative process includes many of the same due process protections available in courts. "All parties shall have an opportunity to respond, to present evidence and argument on all issues involved, to conduct cross-examination and submit rebuttal evidence, to submit proposed findings of facts and orders, to file exceptions to the presiding officer's recommended order, and to be represented by counsel or other qualified representative." § 120.57(1)(b), Fla. Stat. The Secretary has the burden of proving the violation by clear and convincing evidence. *See Dep't of Banking & Fin. v. Osborne Stern & Co.*, 670 So. 2d 932, 935 (Fla. 1996). In addition, because administrative fines are penal in nature, *see id.*, they "must be strictly construed, with any ambiguity interpreted in favor of" the accused, *State v. Dinsmore*, 308 So. 2d 32, 35 (Fla. 1975). After the presentation of evidence and argument, the hearing officer—an independent administrative law judge—must issue a recommended order, setting forth findings of fact, conclusions of law, and a recommended disposition or penalty. *See* § 120.57(1)(k), Fla. Stat. And once the administrative process is completed, a party may seek

additional review in Florida's appellate courts. § 120.68, Fla. Stat. At bottom, there are ample opportunities for any person affected by the new legislation to challenge any assessed fine.

### IV. FLORIDA COURTS MAY APPLY A DUE DILIGENCE STANDARD TO THE CHALLENGED LEGISLATION.

Although the challenged legislation can be enforced in the Secretary's discretion—at least in the limited circumstances set out in the proposed rule—a Florida court could construe the statute in a way that would further limit the Secretary's discretion. The Plaintiffs base much of their "chilling" argument on their suggestion that they would be exposed to liability even in the absence of wrongdoing.[1] But a Florida court could interpret the challenged legislation to include a wrongdoing requirement on the part of the person charged with violating the statute.

For example, in *Surf Attractions, Inc. v. Department of Business Regulation, Div. of Alcoholic Beverages and Tobacco*, 480 So. 2d 1354 (Fla. 1st DCA 1985), the Court applied a "lack of due diligence" standard to administrative fines imposed on unlawful sales of alcoholic beverages. It did so notwithstanding that the statutes at issue "appear to impose strict liability standards." *Id.* at 1356. And although the constitutionality of the statute was not challenged, the court explained that interpreting the "strict liability" statute to include a "lack of due diligence" standard "is consistent with constitutional principles." *Id.* The Court in *Cohen v. Schott*, 48 So. 2d 154 (Fla. 1950), similarly implied a lack of due diligence standard. "[W]e think it too harsh to revoke one's license because the patron lied to him. . . . An inquisition into a charge of violating the conditions of one's license is in no sense criminal but equitable in nature and should be adjudicated on equitable principles." *Id.* at 155-56.

---

[1] Defendants maintain their argument that there can be no "chilling" in this case because the challenged legislation does not affect the Plaintiffs' constitutionally protected interests.

In addition, other Florida courts have read a *mens rea* requirement into Florida penal statutes. *See, e.g., Cohen v. State*, 125 So. 2d 560, 563 (Fla. 1961) (applying scienter requirement to statute criminalizing the sale of obscene periodicals); *State v. Diez*, 97 So. 2d 105, 110 (Fla. 1957) (applying "knowingly" requirement to a statute requiring prospective state employees to take an oath to swear that they had not lent aid to the Communist Party).

A Florida court, therefore, may read the challenged law in a manner that would not impose strict liability. It would certainly do so if necessary to preserve the constitutionality of the challenged legislation. And where a reasonable interpretation of a statute can avoid a constitutional infirmity, the challenged law must survive a facial challenge. *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1257 (11th Cir. 2005) (court will "uphold a state statute against a facial challenge if the statute is readily susceptible to a narrowing construction that avoids constitutional infirmities"); *State v. Calhoun County,* 170 So. 883, 886 (Fla. 1936) ("It is a well-established principle of statutory construction that the language of a statute should be so construed as to preserve its constitutionality rather than to defeat it . . . .").

V.  **BECAUSE THERE IS NO INDICATION THAT THE CHALLENGED LEGISLATION WILL BE ENFORCED IN AN UNCONSTITUTIONAL MANNER, PLAINTIFFS' FACIAL CHALLENGE MUST FAIL.**

This action is a facial challenge. The Plaintiffs have not alleged that the challenged legislation has been enforced against them—they allege only that they fear it will be. They also complain of the possibility of large fines in the aggregate. But given the protections and limitations outlined above—coupled with the complete absence of any evidence that the Secretary intends to enforce the challenged law to impose tremendous liability in the form of aggregate fines—the legislation should not be invalidated on this facial challenge. If, to use Plaintiffs' example, the AFL-CIO were actually assessed a $2.5 million fine after "applications

# 34678 v2                                8

collected were destroyed by a flood or hurricane" then a constitutional challenge might be warranted.  (Prelim. Inj. Motion at 10.)  Or if the League of Women Voters is actually assessed a fine for its entire annual budget of $80,000 (*Id.* at 2), a federal court could consider the impact of that fine on the League's constitutional rights.

Putting these outrageous and exaggerated examples aside, the Plaintiffs must demonstrate on this facial challenge that, at a minimum, that the challenged legislation would "would operate unconstitutionally in *most* cases."  *Fla. League of Prof. Lobbyists v. Meggs*, 87 F.3d 457, 459 (11th Cir.) *cert. denied*, 519 U.S. 1010 (1996); *accord United States v. Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid.").

The liability associated with the new law is not such that it would be unconstitutional in all—or even most—cases.  The Florida Legislature rightly intended to hold those collecting applications—applications on which citizens depend for their right to vote—accountable.  And to advance that accountability, the Florida Legislature implemented a regime to allow for fines against those who do not properly handle the critical government documents.  It did so to protect the voting rights of applicants who entrust their applications to third parties.  If that regime ultimately results in an unconstitutional application to any party, that party can turn to a federal court.  Like the Eleventh Circuit said in *Meggs* in response to "the League's hypothesized, fact-specific worst-case scenarios": "[I]n the future courts can, to the extent necessary, evaluate the statute's constitutionality as-applied."  *Id.* at 460.  That time has not come, the statute has not

been enforced, no plaintiff has been harmed (beyond self-inflicted harms), and invalidation of the challenged legislation is not warranted.[2]

Respectfully submitted, this 30th day of July, 2006.

/s/ *Allen Winsor*
Peter Antonacci
Florida Bar No.:  280690
Allen Winsor
Florida Bar No.:  016295
George N. Meros, Jr.
Florida Bar No.:  263321
GRAYROBINSON, PA
Post Office Box 11189
Tallahassee, Florida  32302-3189
  Phone:  850-577-9090
  Fax:  850-577-3311
email:  pva@gray-robinson.com
*Attorneys for Defendants*

---

[2] The Court indicated at the July 26 hearing that it had not yet decided, but was inclined to apply the balancing test enunciated in *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1982). Defendants do not believe the *Anderson* test should be applied in this case.  Its application is even more inappropriate, though, in a facial challenge because the harm to the Plaintiffs—one of the elements to be balanced—cannot properly be quantified.  A hypothetical $2.5 million fine to a union, for example, would weigh differently than a hypothetical $250 fine to the same union.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing has been served this 30th day of July, 2006, to the following:

| | |
|---|---|
| Gary C. Rosen<br>Becker & Poliakoff, P.A.<br>3111 Stirling Road<br>Fort Lauderdale, FL 33312<br>  Phone:  (954) 985–4133<br>  Email:  grosen@becker-poliakoff.com<br>(By email and U.S. Mail (to be deposited 7/31)) | Wendy R. Weiser<br>Renee Paradis<br>Brennan Center for Justice<br>at NYU School of Law<br>161 Avenue of the Americas, 12th Floor<br>New York, NY 10013<br>  Phone:  (212) 998–6730<br>  Email:  wendy.weiser@nyu.edu<br>(By email and U.S. Mail (to be deposited 7/31)) |
| Elizabeth S. Westfall<br>Jennifer Maranzano<br>Estelle H. Rogers<br>Advancement Project<br>1730 M. Street, NW, Suite 910<br>Washington, DC  20036<br>  Phone:  (202) 728-9557<br>  Fax:  (202) 728-9558<br>  Email:  ewestfall@advancementproject.org<br>(By email and U.S. Mail (to be deposited 7/31)) | Eric A. Tirschwell<br>Craig L. Siegel<br>Kramer Levin Naftalis & Frankel LLP<br>1177 Avenue of the Americas<br>New York, NY 10036<br>  Phone:  (212) 715–9100<br>  Fax: (212) 715-8000<br>  Email:  csiegel@KRAMERLEVIN.com<br>(By email, U.S. Mail (to be deposited 7/31), and facsimile) |

/s/ *Allen Winsor*
PETER ANTONACCI
Florida Bar No. 280690
ALLEN C. WINSOR
Florida Bar No. 016295
GRAYROBINSON, P.A.
Post Office Box 11189
Tallahassee, Florida  32302-3189
  Phone:  (850) 577-9090
  Fax:  (850) 577-3311
email:  pva@gray-robinson.com
        awinsor@gray-robinson.com
*Attorneys for Secretary of State and Dawn Roberts*