UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 06-21265-CIV-SEITZ/MCALILEY

---------------------------------------- x

LEAGUE OF WOMEN VOTERS OF FLORIDA,
PEOPLE ACTING FOR COMMUNITY TOGETHER,
FLORIDA AFL-CIO, AMERICAN FEDERATION OF
STATE AND MUNICIPAL EMPLOYEES, COUNCIL
79 (AFSCME), SEIU FLORIDA HEALTHCARE
UNION, as organizations and as representatives of their
members, and MARILYN WILLS,

     Plaintiffs,

   v.

KURT S. BROWNING, in his official capacity as
Secretary of State for the State of Florida; and
DONALD PALMER, in his official capacity as
Director of the Division of Elections within the
Department of State for the State of Florida,

     Defendants.

---------------------------------------- x

: **PLAINTIFFS' VERIFIED**
: **MOTION FOR AN AWARD**
: **OF ATTORNEYS' FEES**
: **AND COSTS AND**
: **INCORPORATED**
: **MEMORANDUM OF LAW**
: **AND REQUEST FOR**
: **HEARING**

  Plaintiffs League of Women Voters of Florida, People Acting for Community Together ("PACT"), Florida AFL-CIO, American Federation of State and Municipal Employees, Council 79 ("AFSCME"), SEIU Florida Healthcare Union, and Marilyn Wills respectfully move the Court for an award of attorneys' fees and costs under 42 U.S.C. § 1988, and state:

**Preliminary Statement**

  Plaintiffs commenced this action two years ago on May 18, 2006, to protect their constitutional rights and obtain a federal injunction barring the State of Florida from enforcing a law that had forced plaintiffs to shut down their non-partisan voter registration drives and thereby "stripped" Florida citizens "of an important means and choice of registering to vote and of associating with one another." *League of Women Voters of Florida v. Cobb*, 447 F. Supp. 2d 1314, 1324 (S.D. Fla. 2006). The law, which applied to all organizations registering voters

except Florida's political parties, had threatened plaintiffs and their members with potentially devastating fines if they failed to submit completed voter registration forms within an arbitrary and unreasonable 10-day deadline or before book closing, even through no fault of their own. Plaintiffs' lawsuit presented the novel question whether voter registration drives are protected by the First Amendment, a complex constitutional issue of first impression.

After extensive briefing, two full days of fact and expert witness testimony and a third day of oral argument, and post-hearing submissions, the Court held in a groundbreaking decision of national importance that plaintiffs' collection and submission of voter registration forms constitutes speech and association protected by the First Amendment, and granted plaintiffs all of the injunctive relief they sought. *Id.* at 1341. As a result, plaintiffs were able to immediately resume their voter registration drives and their significant legal victory was hailed in news outlets across Florida and the nation. Plaintiffs were able to benefit from the Court's injunction for approximately 22 months while their counsel successfully defended the injunction against defendants' appeal. Defendants vigorously opposed plaintiffs nearly every step of the way. The Court of Appeals dismissed defendants' appeal as moot on February 19, 2008, because Florida had amended the enjoined law, including by eliminating the exemption for political parties and reducing the size of the threatened fines. On April 24, 2008, the Court dismissed plaintiffs' case as moot.

As a result of plaintiffs' huge victory and the excellent results obtained by their counsel—which include a private law firm nationally recognized for its litigation practice and pro bono commitment, including to this case, and two premiere civil rights organizations with expertise in constitutional and election law—plaintiffs are prevailing parties entitled to an award of their reasonable attorneys' fees and costs. Plaintiffs' victory only came as a result of a substantial expenditure of time and money over two years for, among other things:

- conducting an extensive factual investigation into the real-world impact of the challenged law and its legislative history, and researching and writing a 42-page detailed complaint, 37-page preliminary injunction memorandum of law, 19-page reply memorandum of law, and 19-page response to defendants' motion to dismiss;

- researching and drafting 10 detailed witness declarations totaling 61 pages, including declarations from an expert Yale University political scientist and a Florida Supervisor of Elections, and an opposition to defendants' motion to strike the expert and supervisor's testimony;

- preparing 8 witnesses to testify; preparing cross-examinations for 3 defense witnesses; participating in in-person and telephonic court conferences; and submitting joint stipulated facts;

- preparing for and participating in a preliminary injunction hearing and oral argument held on 7/25/06, 7/26/06 and 8/3/06, which included examinations of 9 witnesses and the introduction into evidence of 28 exhibits, including plaintiffs' 8 original charts analyzing state election data;

- researching and writing an 11-page supplemental memorandum of law and 25-page plaintiffs' proposed findings of fact; and

- researching and writing a 58-page memorandum of law on the merits filed in the Eleventh Circuit Court of Appeals and a 20-page supplemental memorandum in opposition to defendants' suggestion of impending mootness.

Based on counsels' reasonable time and monetary expenditures detailed in the declarations submitted in support of this motion, plaintiffs respectfully request an order awarding them $708,725.00 in attorneys' fees and $76,363.05 in costs for approximately 1,742.9 attorney hours spent litigating this case for two years. These declarations demonstrate that the requested fees and costs are reasonable and justified because of the excellent and exceptional results obtained, reasonable time plaintiffs' counsel spent litigating the case, and the consistency between counsels' rates and the prevailing market rates for attorneys of their skill, experience and reputation. In addition, plaintiffs have exercised reasonable billing judgment, including by eliminating approximately 1,950 hours by other attorneys and paralegals, including local

3

counsel, avoiding duplicative work, and maintaining detailed time and expense records which support this motion. As a result, the Court should grant plaintiffs' motion in its entirety.

## Factual Background

### I. THE CHALLENGED LAW AND THE FILING OF PLAINTIFFS' COMPLAINT AND PRELIMINARY INJUNCTION MOTION

The challenged law, Fla. Stat. §§ 97.021(36), 97.0575, was enacted in 2005 and took effect on January 1, 2006. It imposed potentially ruinous fines on all organizations registering voters—unless they happened to be Florida's political parties, which were entirely exempted.[1] Beginning in late 2005, plaintiffs conducted an extensive factual investigation into the law's real-world impact on voter registration in Florida, including by interviewing voter registration organizations such as the League of Women Voters of Florida, which had communicated with plaintiffs' counsel about the law and closely followed its enactment. These interviews demonstrated that the law had chilled organizations from registering voters.

Consequently, counsel researched legal theories for challenging the law and confirmed that no federal court had ever squarely ruled on the question whether voter registration drives—including not only speaking to other citizens but also collecting and submitting their completed registration forms—constituted speech and association protected by the First Amendment. After the board of directors of the League of Women Voters of Florida decided, on March 19, 2006, to file a lawsuit challenging the new law, plaintiffs' counsel filed a detailed 42-

---

[1] The law imposed civil fines of $250 for each application submitted more than ten days after it is collected, $500 for each application submitted after any voter registration deadline, and $5,000 for each application not submitted. Plaintiffs were strictly liable for these fines, even if their inability to meet the deadlines resulted from events beyond their control, such as the destruction of applications in a hurricane. The law not only fined the organization responsible for collecting the applications but also held personally, and jointly and severally, liable: (i) the individual volunteer, member or employee who collected the applications; (ii) the group's registered agent; and (iii) any person in the organization responsible for the group's day-to-day operations.

4

page complaint on May 18th. The filing of the lawsuit was reported by media outlets across Florida and the nation, such as the Miami Herald and Time magazine.[2]

On June 6th, plaintiffs filed their preliminary injunction motion accompanied by a 37-page memorandum of law and six detailed plaintiffs' declarations. Plaintiffs argued that their collection and submission of voter registration applications constitutes protected speech and association inextricably intertwined with their efforts to encourage and assist other citizens to register. Additionally, plaintiffs argued that the political party exemption unconstitutionally favored the speech of Florida's political parties over plaintiffs' speech, and the law's deadlines, fines, and liability scheme unconstitutionally burdened plaintiffs' speech. Defendants responded on June 21st by opposing the motion and moving to dismiss the complaint. Defendants argued that plaintiffs' voter registration drives were not protected by the First Amendment, plaintiffs applied the wrong First Amendment standards, and plaintiffs lacked standing to sue. They also argued that the law was necessary to prevent organizations from hoarding forms and submitting them at the last minute. On July 6th, plaintiffs filed, along with two supplemental declarations, a 19-page reply memorandum addressing each of defendants' arguments. On July 10th, plaintiffs filed a 19-page response to defendants' motion to dismiss, arguing (among other points) that plaintiffs had standing to sue.

On July 10th, the Court held a conference in which only attorney Craig Siegel appeared for plaintiffs. The Court scheduled a hearing date and requested the parties submit joint stipulated facts, which were submitted on July 12th. In advance of the hearing, plaintiffs submitted two additional declarations: an expert declaration from Professor Donald Green, a Yale political scientist, and a declaration from Ion Sancho, Supervisor of Elections for Leon County, Florida. On the same day, defendants filed affidavits of two witnesses—Donna Miller

---

[2] A list and copies of some of the articles is attached as Ex. G to the declaration of Craig L. Siegel, dated June 20, 2008 ("Siegel Decl.").

5

of the Florida Division of Elections, and Ivy Korman, the Deputy Supervisor of Elections for Miami-Dade County. Defendants had also informed plaintiffs they intended to call a third witness at the hearing, Evan Kolodny, an employee of the Supervisor of Elections for Broward County.

On the Sunday before the July 25th hearing, defendants served plaintiffs with a motion to strike Messrs. Green and Sancho's testimony, which plaintiffs opposed the next day.

## II. THE PRELIMINARY INJUNCTION HEARING AND THE COURT'S ORDER ENJOINING FLORIDA FROM ENFORCING THE CHALLENGED LAW

The preliminary injunction hearing comprised two days of witness testimony on July 25th and 26th, and oral argument on August 3rd. After hearing argument on the motion to strike, the Court permitted plaintiffs' witnesses to testify. Plaintiffs put on one representative of each of the plaintiffs, who explained in detail their voter registration drives and why the law had shut down those drives. In addition, Dr. Green testified that the natural effect of the challenged law was to suppress voter registration and that voter registration organizations submit a large number of completed forms just prior to a deadline because that is when the public is most interested in elections. Supervisor Sancho testified that, in his experience, groups like plaintiffs increased their voter registration activities (and submitted more forms) as elections approached and did not submit forms late (i.e., after a voter registration deadline). Defendants cross-examined plaintiffs' witnesses and disputed their factual assertions. Plaintiffs cross-examined Ms. Miller.[3]

After the first two hearing days, defendants filed a supplemental memorandum of law that raised new arguments never addressed in their previous memoranda. Plaintiffs submitted a responsive memorandum on August 2, 2006. On August 3rd, the Court completed

---

[3] Although defendants told plaintiffs they intended to call Ms. Korman and Mr. Kolodny as defense witnesses, and plaintiffs' counsel researched and prepared cross-examinations, these witnesses did not appear at the hearing. (Siegel Decl. ¶ 33.)

6

admitting exhibits, including plaintiffs' 28 exhibits (ten over defendants' objections), heard oral argument, and requested that the parties submit proposed findings of fact. The parties filed proposed joint findings of fact on August 7th, and on the same day plaintiffs' filed a 25-page proposed findings of additional facts.

On August 28th, the Court issued a 48-page order which enjoined defendants from enforcing the challenged law, thereby granting plaintiffs all of the relief they sought. *League of Women Voters of Florida*, 447 F. Supp. 2d at 1341. The Court's decision extensively relied upon the factual information contained in plaintiffs' declarations and testimony. *Id.* at 1317-21, 1324-1328, 1331. It credited plaintiffs' testimony in holding that "the collection and submission of voter registration drives is intertwined with speech and association" and, thus, protected by the First Amendment. *Id.* at 1334. The Court held further:

> As to Counts I and II, the Court finds that the Third-Party Voter Registration Law unconstitutionally discriminates in favor of political parties by excluding them from the definition of "third party voter registration organization". As to Count III, the Court finds that the Third-Party Voter Registration Law's combination of heavy, strict, joint and several liability fines is unconstitutional as it chills Plaintiffs' First Amendment speech and association rights.

*Id.* at 1316.[4] As a result, plaintiffs immediately resumed registering voters.[5]

### III. DEFENDANTS' APPEAL AND THE DISMISSAL OF THE APPEAL

On August 28th, defendants filed a notice of interlocutory appeal and, on October 26th, a 51-page initial brief. They argued that plaintiffs' collection of voter registration applications is not protected speech, the law's political party exemption did not discriminate against plaintiffs, and the law's fines were permissible because they served legitimate state

---

[4] The Court dismissed without prejudice plaintiffs' last count, Count IV, which asserted the same claims as those of the named plaintiffs but on behalf of John and Jane Doe unregistered Florida citizens, and plaintiffs' claim for nominal damages. *League of Women Voters of Florida*, 447 F. Supp. 2d at 1316.

[5] *See, e.g.*, Aldo Nahed, *Group Resumes Voter Drives: The League of Women Voters Is Playing Catch-up Since A Federal Judge in Miami Ruled That the State Discriminated Against Civic Organizations' Voter Drives*, Miami Herald, Oct. 2, 2006, at 1. (Siegel Decl. Ex. H.)

interests. Plaintiffs filed a 58-page responsive brief on December 6th, disputing each of defendants' arguments. Defendants filed their reply on December 29th. Oral argument was scheduled for March 20, 2007, and eventually rescheduled for October 3rd. On March 21st, Florida amended the challenged law by removing the political party exemption and reducing the fines. The amended law was scheduled to take effect on January 1, 2008. On July 12, 2007, defendants filed their Suggestion of Impending Mootness, which requested an order dismissing the appeal as moot and vacating the Court's order. Plaintiffs filed a responsive brief on July 26th, arguing that defendants' request should be denied. Defendants replied on August 6th. The Court of Appeals cancelled oral argument on September 26th and dismissed the appeal as moot on February 19, 2008. It did not vacate the decision below.

Subsequently, the Court entered an order dismissing the case as moot on April 24th. On May 23rd, the Court entered an order extending plaintiffs' time to file this motion to June 20th.

### Argument

#### I. PLAINTIFFS ARE PREVAILING PARTIES ENTITLED TO AN AWARD OF REASONABLE ATTORNEYS' FEES

In an action to enforce a provision of 42 U.S.C. § 1983, such as this action, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). "[A] prevailing plaintiff under § 1988 should be awarded fees as a matter of course" and a court's "discretion to deny such fees is . . . exceedingly narrow." *Heinkel v. School Board of Lee County*, 2007 WL 2757366, at *2 (M.D. Fla. Sept. 20, 2007). Congress has stated that fee awards in § 1988 cases "have proved an essential remedy" allowing citizens to vindicate important Congressional policies and ensuring that "those who violate the Nation's fundamental laws are not to proceed with impunity". S. Rep. 94-1011, at 2 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 5908, 5910.

8

Courts in this Circuit use a three-step process to determine a plaintiff's entitlement to attorneys' fees and costs. *Dillard v. City of Greensboro*, 213 F.3d 1347, 1353 (11th Cir. 2000). First, courts determine whether a plaintiff is a prevailing party; second, they calculate the lodestar; and third, they decide whether to "adjust the lodestar to account for other considerations that have not yet figured in the computation, the most important being the relation of the results obtained to the work done." *Id.*

### A. Plaintiffs Are Prevailing Parties

A plaintiff is a prevailing party if it has "succeeded on any significant claim affording it some of the relief sought." *Powell v. Carey Int'l., Inc.*, 2008 WL 1787218, at *1 (S.D. Fla. Mar. 12, 2008) (Seitz, J.). "This is a generous formulation". *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Plaintiffs in this case have succeeded on their claims and won all of the relief they sought by winning a preliminary injunction on the merits barring defendants from enforcing the challenged law for approximately 22 months and winning dismissal of defendants' appeal to the Eleventh Circuit. Consequently, plaintiffs are prevailing parties entitled to fees and costs. *See Finch v. City of Vernon*, 877 F.2d 1497, 1508 (11th Cir. 1989) (plaintiff who prevailed on Section 1983 claim against city at trial and on appeal "entitled to attorney's fees incurred in successful defense to defendant's appeal"); *Taylor v. City of Fort Lauderdale*, 810 F.2d 1551, 1558 (11th Cir. 1987) (holding "a preliminary injunction on the merits . . . entitles one to prevailing party status and an award of attorneys' fees"); *American Civil Liberties Union of Florida, Inc. v. Polk County*, 2006 WL 2147716, at *3 (M.D. Fla. July 28, 2006) ("[A] preliminary injunction that changes the status quo and creates a material alteration in the legal relationship between the parties, is sufficient to make plaintiff the prevailing party."); *id.* at **1-3 (awarding fees to plaintiffs who obtained court-ordered relief in First Amendment challenge to ordinance even though suit was later dismissed with prejudice after ordinance was repealed).

9

The Eleventh Circuit's decision in *Taylor* is directly on point. In that case, members of a religious organization challenged a city solicitation ordinance under the First Amendment. 810 F.2d at 1553-54. The district court granted plaintiffs' motion for a preliminary injunction barring the city from enforcing the ordinance against plaintiffs. *Id.* at 1554. Subsequently, the parties continued litigating the case until it was mooted by the city's decision to repeal and replace the challenged ordinance. *Id.* at 1555. When the plaintiffs moved for attorneys' fees after the case was mooted, the city argued they were not entitled to fees because "final relief did not yield a victory for plaintiffs on the merits." *Id.* The district court agreed and denied plaintiffs' motion. *Id.* at 1561. The Court of Appeals reversed, reasoning that plaintiffs were prevailing parties because they had won a preliminary injunction on the merits that gave them the practical result they sought—i.e., they "were able to solicit donations . . . without a permit and free from the threat of arrest" for approximately 26 months while the injunction was in place. *Id.* at 1560; *see also id.* at 1558 ("Fort Lauderdale was enjoined from enforcing its unconstitutionally discriminatory . . . scheme, the goal plaintiffs sought to achieve when bringing suit. This 'success' existed for 26 months until the case was mooted when the City repealed its governing ordinance.").

Plaintiffs in this case, like the *Taylor* plaintiffs, obtained a preliminary injunction which granted them all of the practical relief they sought. As a result, they were able to immediately resume registering voters free from the threat of potentially devastating government fines for approximately 22 months, until a revised law became effective and mooted plaintiffs' suit. Consequently, plaintiffs are prevailing parties entitled to fees and costs. *See also National Black Police Ass'n v. D.C. Bd. of Elections and Ethics*, 168 F.3d 525, 527-29 (D.C. Cir. 1999) (holding plaintiffs who successfully challenged statute under First Amendment were prevailing parties entitled to more than $575,000 in attorneys' fees and $44,000 in costs even though

10

injunction barring statute's enforcement was mooted after only 52 days when revised statute became effective).[6]

Plaintiffs are also prevailing parties entitled to fees and costs incurred in successfully defending and preserving on appeal the Court's preliminary injunction order. *See Finch*, 877 F.2d at 1508; *Doe v. Terhune*, 121 F. Supp. 2d. 773, 779 (D.N.J. 2000). *Terhune* is particularly instructive. In that case, the plaintiff had obtained a court-ordered injunction barring the state parole bureau from notifying his employer of his parole status following a sexual offense conviction. *Id.* at 775. While the parole bureau's appeal of the injunction was pending, the plaintiff's parole ended and as a result the Court of Appeals dismissed the appeal as moot. *Id.* The district court held plaintiff was entitled to attorneys' fees for the work performed on his appeal because "by defending the permanent injunction on appeal, [he] succeeded in obtaining relief on the merits, i.e. [his] employer was not notified of his conviction." *Id.* at 780. The court added that if plaintiff had not defended the injunction on appeal, the state may have been entitled to a judgment by default that could have terminated the injunction. *Id.*

Similarly, in this case, plaintiffs successfully defended the preliminary injunction on appeal and won dismissal of defendants' appeal as moot, which ensured their ability to continue registering voters without fear of government fines. As a result, they are entitled to attorneys' fees and costs for successfully litigating the appeal. *Cf. Sotomura v. County of Hawaii*, 679 F.2d 152, 152-53 (9th Cir. 1982) (holding plaintiffs who successfully defended civil rights judgment on appeal were prevailing parties "even though they prevailed by obtaining dismissal of the appeal as untimely rather than affirmance on the merits"); *Hastings v. Maine-Endwell*

---

[6] *Sole v. Wyner* has no bearing on this motion because plaintiffs won preliminary injunctive relief in the absence of a final decision on the merits. 127 S.Ct. 1288, 1296 (2007) ("We express no view on whether, in the absence of a final decision on the merits of a claim for preliminary injunctive relief, success in gaining a preliminary injunction may sometimes warrant an award of counsel fees."). *See also People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 232 (3rd Cir. 2008) (affirming attorneys' fee award for preliminary injunction success where case later dismissed when city amended challenged ordinance, and distinguishing *Sole*).

11

*Cent. Sch. Dist.*, 676 F.2d 893, 896-97 (2d Cir. 1982) (holding plaintiffs were prevailing parties "for their successful appellate efforts" in obtaining dismissal of appeal of preliminary injunction on jurisdictional grounds, and directing district court to award attorneys' fees to plaintiffs). For each of the reasons stated above, plaintiffs are prevailing parties.[7]

### B.  PLAINTIFFS HAVE PROPERLY CALCULATED THE LODESTAR

The lodestar is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). "There is a strong presumption that the lodestar figure is a 'reasonable fee.'" *Silva v. Miller*, 2008 WL 1803769, at *3 & n.10 (S.D. Fla. Apr. 7, 2008) (Seitz, J.). In addition, "[a]mong the many considerations a court must entertain when calculating a § 1988 award, 'the most critical factor is the degree of success obtained,'" and excellent or exceptional results should result in a "fully compensatory fee" and may even justify an "enhanced award." *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1305, 1308 (11th Cir. 2001).

### 1.  The Hourly Rate Sought for Each Attorney Is Reasonable

The "reasonable hourly rate [is the] 'prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation.'" *Powell*, 2008 WL 1787218, at *2. It is irrelevant whether plaintiffs' lawyers are private practitioners or work for public interest organizations; fees are calculated for both in the same manner. *Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989). Evidence of the prevailing market rate may include fees actually paid in similar cases and "direct evidence of charges by lawyers under similar circumstances or by opinion evidence." *Norman*, 836 F.2d at 1299.

---

[7] Plaintiffs are also entitled to compensation for the time spent preparing this motion for fees and costs, and appropriate interest. *Thompson v. Pharm. Corp. of Am., Inc.*, 334 F.3d 1242, 1245 (11th Cir. 2003) (discussing fees and costs); *Gates v. Collier*, 616 F.2d 1268, 1278-1279 (5th Cir. 1980) (discussing interest). *See also Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (Fifth Circuit decisions through September 30, 1981, constitute precedent for the Eleventh Circuit).

The Court should also consider "the skill, experience, and reputation of the lawyers involved," and may consider other of the twelve factors enunciated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). *Silva*, 2008 WL 1803769, at *3 & n.8. The relevant *Johnson* factors in this case include the novelty and difficulty of the question presented; the time, labor and skill required to litigate the case; awards in similar cases; the customary fee; the contingent nature of the fee; and the importance of the case and results obtained. *Id.*[8] Consequently, plaintiffs respectfully request the following reasonable rates:

| Attorney | Firm | 2008 Rate[9] | Requested Rate |
|---|---|---|---|
| Eric Tirschwell, Partner | Kramer Levin | $645 | $550 |
| Craig Siegel, Tenth-year Associate | Kramer Levin | $620 | $400 |
| Erin Walter, Tenth-year Associate | Kramer Levin | $620 | $400 |
| Wendy Weiser, Deputy Director | Brennan Center | N.A. | $400 |
| Elizabeth Westfall, Senior Attorney | Advancement Project | N.A. | $400 |
| Renee Paradis, Counsel | Brennan Center | N.A. | $300 |
| Amy Weiner, Associate | Kramer Levin | $365 | $300 |

These rates are consistent with the rates charged by attorneys with comparable experience in the Southern District of Florida. (Green Aff. ¶¶ 15-18.)[10] For example, in a case similarly awarding injunctive relief in 2006 against the Florida Secretary of State for First Amendment violations in the elections context, *CBS Broadcasting Inc. v. Browning*, 2007 WL 2850527, at *1, *7 (S.D. Fla. Sept. 21, 2007), the court awarded New York counsel from Cahill, Gordon & Reindell LLP—a peer firm of Kramer Levin Naftalis & Frankel LLP—the following

---

[8] Plaintiffs' counsel agreed to represent plaintiffs pro bono, but retained the right to recover their expenses and attorneys' fees if plaintiffs' litigation succeeded. The remaining *Johnson* factors are not relevant to this case: the preclusion of other employment by the attorney; time limitations imposed by the client or case; the undesirability of the case; and the nature and length of the professional relationship with the client. *Johnson*, 488 F.2d at 717-19.

[9] "The court should take into account the time value of money and the effects of inflation and generally award compensation at current rates rather than at historic rates." *Norman*, 836 F.2d at 1302.

[10] "Green Aff." refers to the affidavit of James K. Green, dated June 20, 2008.

13

rates which the court found "in keeping with the local Miami market": $550 and $525 for two partners; $375 for a seventh-year associate; and $350 and $325 for two fourth year associates.[11] Plaintiffs have voluntarily and substantially reduced their actual hourly billing rates, as shown above, to fall within the range of rates awarded in *CBS Broadcasting*.[12]

Consistent with *CBS Broadcasting*, this Court recently relied in another case on the Daily Business Review's 2006 survey of South Florida attorney billing rates which found that, two years ago, partners in South Florida were billing up to $700, and associates up to $480, per hour. *Powell*, 2008 WL 1787218, at *10 (citing Defendants' Response, Ex. 40, attached to Siegel Decl. as Ex. L); *id.* at *8 (stating customary rates for counsel from Broward County include plaintiffs' requested rate of $450 per hour). Since then, South Florida billing rates have "shot up," according to the Miami Daily Business Review, which reported last December that "75.2 percent of the firms providing billing information" charged more in 2007 than in 2006. (Siegel Decl. Ex. J.) Indeed, the Daily Business Review's 2007 survey of South Florida attorney billing rates concluded: "Partners in South Florida typically charged from $600 to $330 an hour. Associates' hourly rates ranged from $145 to $450". (*Id.* Ex. Q.) Plaintiffs' requested rates fall well within these ranges.

The requested rates are justified by the excellent results obtained, counsels' proven skill, demonstrated expertise and national reputations, and the novelty, difficulty and public importance of the case. For example, Mr. Tirschwell, who actively supervised the case and helped develop and oversee the implementation of plaintiffs' legal strategy, is a partner and former deputy section chief in a U.S. Attorney's Office with 15 years of trial and appellate

---

[11] The 2008 AmLaw ranking of America's top law firms lists Kramer Levin 90th and Cahill Gordon 99th based on gross revenues. (Siegel Decl. Ex. K.)

[12] Moreover, in *CBS Broadcasting* the Secretary affirmatively stated he did not object to hourly rates for local counsel, Gunster, Yoakley & Stewart, P.A., of up to $400 per hour. 2007 WL 2850527, at *7 & n.3.

14

experience, including in First Amendment cases. (Declaration of Eric A. Tirschwell, dated June 20, 2008, ¶¶ 3-6). Mr. Siegel and Ms. Walter are each former federal law clerks with 10 years of litigation experience and commitment to pro bono representation, including in First Amendment litigation. (Siegel Decl. ¶¶ 3-5; Declaration of Erin A. Walter, dated June 20, 2008). Ms. Weiser and Ms. Westfall are both nationally known experts in voting rights and constitutional law, with extensive experience litigating First Amendment cases in the elections context. (Declaration of Wendy Weiser, dated June 20, 2008, ¶¶ 2-3; Declaration of Elizabeth Westfall dated June 20, 2008, ¶¶ 4-7.) The legal team led by these lawyers secured an excellent result that helped develop new First Amendment jurisprudence in a highly contested case with local and national legal and political implications. Indeed, the case received extensive state and national media attention (Siegel Decl. Ex. G), and Kramer Levin was awarded both a National Law Journal 2006 Pro Bono Award for its role in the case, as well as the ABA's prestigious John Minor Wisdom Award for its work on this case and other pro bono matters. (*Id.* Ex. M.) For the reasons stated above, the hourly rates sought by plaintiffs are entirely reasonable and justified.

### 2. Plaintiffs' Counsel Spent a Reasonable Number of Hours and Exercised Appropriate Billing Judgment

Plaintiffs seek compensation for time reasonably expended in prosecuting this lawsuit; a total of 1,742.9 attorney hours for six attorneys who worked for two years on this case and coordinated and divided the work between themselves at each stage of the litigation.[13] The attorney hours may be generally and approximately broken down according to the following stages of the litigation: 132.4 hours for fact investigation and analysis from 10/05 to 4/06; 133.2 hours for researching and drafting the detailed 42-page complaint from 12/05 to 5/06; 1,130.4 hours for the preliminary injunction and motion to dismiss from 2/06 to 8/06; 285.4 hours for the

---

[13] Plaintiffs also seek compensation for Ms. Weiner who worked only on this motion. (Declaration of Amy Weiner, dated June 20, 2008, Ex. A.)

Eleventh Circuit appeal from 9/06 to 2/08; and 61.5 hours for the attorneys' fee motion from 3/08 to 5/08. (Siegel Decl. ¶ 10.) Counsel have submitted declarations with exhibits summarizing and setting forth the tasks they performed and time devoted to each task.

In considering whether the amount of time spent by plaintiffs attorneys' was reasonable, counsel's sworn testimony that they actually expended the time for which compensation is sought is given considerable weight. *Perkins v. Mobile Hous. Bd.*, 847 F.2d 735, 738 (11th Cir. 1988). The standard for determining whether time was "reasonably" spent is not a rule of perfect hindsight; it asks "whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990).[14]

All of the hours claimed were reasonably spent on activities that should be fully compensable. The time records submitted by plaintiffs' counsel in this case show that there was no unreasonable duplication, as plaintiffs' lawyers each performed different tasks.[15] For example, among many other divided tasks: (1) counsel generally divided interviewing each witness and drafting their declarations and supplemental declarations, with the Advancement Project generally working with Mr. Sancho, the Brennan Center generally working with Messrs. Green and Dorfman, and Kramer Levin generally working with Mss. Wheatley-Giliotti, Wills and Hall and Mr. Ewart; (2) Kramer Levin researched the legislative history of the law and Mr.

---

[14] Defense counsel billed time for this case for six attorneys and paralegals. (Siegel Decl. ¶ 32.) Although plaintiffs were also represented by several attorneys, it is not unreasonable for more than one lawyer to work on a case and fees may not be denied or discounted merely on that basis. *See Norman*, 836 F.2d at 1302 ("There is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer"); *Johnson v. University of Alabama*, 706 F.2d 1205, 1208 (11th Cir. 1983) ("The retaining of multiple attorneys in a significant, lengthy employment discrimination case such as this one is understandable and not a ground for reducing the hours claimed. The use in involved litigation of a team of attorneys who divide up the work is common today for both plaintiff and defense work.").

[15] While several of plaintiffs' attorneys billed for telephone conferences in which more than one attorney participated, it is customary, reasonable, and appropriate to bill for necessary consultation and strategizing among co-counsel. *See, e.g., Nat'l Ass'n of Concerned Veterans v. Sec'y of Defense*, 675 F.2d 1319, 1337 (D.C. Cir. 1982).

Siegel wrote the initial draft of the complaint; (3) counsel divided researching and writing different sections of the preliminary injunction memoranda and other memoranda; (4) Advancement Project focused on researching standing and drafting plaintiffs' response to the motion to dismiss; (5) Kramer Levin prepared all of the fact witnesses and conducted their examinations and the cross-examination of defendants' witness Donna Miller; (6) Kramer Levin researched and argued all evidentiary issues; (7) Ms. Paradis analyzed relevant state voter registration data and created plaintiffs' eight original charts analyzing the data; (8) only Mr. Siegel attended the in-person Court conference; (9) Ms. Weiser conducted Dr. Green's examination and oral argument; and (10) Kramer Levin prepared this motion.[16]

In addition, plaintiffs' lawyers brought a diverse range of complementary and relevant experience and expertise: two national public interest law firms known for their expertise on voting rights and First Amendment issues, including on voter registration in Florida, and a law firm whose attorneys have extensive trial and appellate expertise, and experience litigating cases involving questions of constitutional law. The complexity and novelty of the constitutional issues and the expedited nature of the preliminary injunction proceedings, as well as the significant number of witnesses and exhibits involved, clearly warranted the use of multiple attorneys.

Finally, counsel have exercised billing discretion by voluntarily and significantly reducing the hours requested from the total hours incurred by approximately 1,950 hours. For example, plaintiffs' counsel have omitted approximately:

- more than 1,500 hours incurred by Kramer Levin personnel, including: (1) 103 hours for Mr. Siegel on the appeal; (2) approximately 65 hours for senior partner Jeffrey Trachtman, who attended the preliminary injunction hearing; (3) more than 725 hours for associates David Landman and Emily Groendyke who conducted essential legal research, interviewed witnesses, drafted documents, and assisted during and after the preliminary

---

[16] *See* Siegel Decl. ¶ 10. A copy of two samples of the eight charts is attached to Siegel Decl. as Ex. P.

17

injunction hearing; (4) approximately 270 hours for paralegal Sandra Wong, and (5) time for various other attorneys who assisted with legal research during this two-year long case; and

- more than 365 hours incurred by Ms. Weiser and Ms. Paradis of the Brennan Center;

- more than 100 hours incurred by Advancement Project attorney Ms. Westfall, including all of the hours incurred by her colleague, Jennifer Maranzano;

- all fees and costs arising from the invaluable representation and advice provided by local counsel, Becker & Poliakoff, P.A. (*Id.* ¶ 9.)[17]

For each of the reasons stated above, the number of hours for which plaintiffs seek compensation is reasonable.

### C. THE FULL LODESTAR SHOULD BE AWARDED BECAUSE PLAINTIFFS OBTAINED AN EXCELLENT AND EXCEPTIONAL RESULT OF ENORMOUS BENEFIT TO FLORIDA'S CITIZENS AND DEMOCRACY

After calculating the lodestar, "the Court evaluates the significance of the relief counsel obtained for a plaintiff and, where plaintiff obtains an excellent result, an attorney may be awarded the full lodestar amount." *Silva*, 2008 WL 1803769, at *3. Exceptional results may merit an enhanced award, *id.* at *3 n.10, and success in a civil rights case is measured by the extent of the public benefit obtained, which benefit is "heightened" in cases "vindicating a constitutional right against a [government] defendant." *Villano*, 254 F.3d. at 1307.[18]

This case resulted in a victory providing enormous public benefits to Florida's citizens and democracy by protecting the right to vote, which the Court recognized "is the primary right by which all other rights are protected." *League of Women Voters*, 447 F. Supp. 2d at 1316. The Court found the challenged law had "essentially nullified a significant array of registration vehicles for Florida's citizens, especially [low income and minority voters]." *Id.* at

---

[17] (Siegel Decl. ¶ 9.)

[18] The Eleventh Circuit has stated: "When the results achieved are excellent, 'the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.'" *Villano*, 254 F.3d. at 1308. Plaintiffs won all of the injunctive relief they sought and, consequently, the Court's dismissal of plaintiffs' Count IV for lack of standing and their claim for nominal damages is of no consequence on this motion.

18

1338; *see also id.* at 1318. Its important decision reestablished those registration vehicles and resulted in approximately 22 months of additional voter registration. As one Florida newspaper editorialized:

> You don't have to agree with [plaintiffs'] agendas to value their role in maintaining a healthy, open democracy. The First Amendment was not created to protect only majority views of those who already have ascended to power. [The Court's decision] properly restored some balance to Florida's political process.

Editorial, *Win For Democracy*, Panama City News Herald, Sept. 5, 2006 (Siegel Decl. Ex. I). Plaintiffs should be awarded their full lodestar calculation, if not an enhanced award.

## II. PLAINTIFFS ARE ENTITLED TO THEIR REASONABLE COSTS

The Court should award a prevailing party complete recovery of their reasonable costs, applying a liberal standard of reasonableness; even if their costs are "relatively large or unusual . . . there is no bar to complete recovery." *Dowdell v. Apopka*, 698 F.2d 1181, 1991 (11th Cir. 1983). Plaintiffs respectfully request reimbursement of $76,363.05 in costs which are documented, described, and summarized in the attached declarations and exhibits thereto, and are all reasonable costs which are routinely and ordinarily billed to clients.[19] They include costs arising from transcript fees, court filing fees, Westlaw, Lexis, photocopying, printing and binding, shipping and couriers, travel expenses and conference calls. (Siegel Decl. Exs. B, C, D, E & F.) In *CBS Broadcasting*, the Secretary did not object to plaintiffs' request for reimbursement of similar expenses, including Cahill Gordon's travel expenses for those attorneys from New York who participated in the hearing in that case. Plaintiffs' request for costs is reasonable and should be granted.[20]

---

[19] *See* Siegel Decl. Ex. B; Walter Decl. Ex. B; Weiser Decl. Ex. B; Westfall Decl. Ex. B; Declaration of Renee Paradis, dated June 20, 2008, Ex. B.

[20] The *CBS Broadcasting* case involved a smaller request for costs because, as the Secretary explained in its brief in that case, it was litigated in less than two months, presented issues that were "hardly complex, novel, or difficult",

19

## Conclusion

Plaintiffs respectfully request that the Court hold a one-day hearing and enter an order awarding them the following attorneys' fees and costs, plus appropriate interest:

| | |
|---|---|
| Kramer Levin fee request: | $387,425.00 |
| Brennan Center fee request: | $256,860.00 |
| Advancement Project fee request: | $64,440.00 |
| Litigation expenses: | $76,363.05 |
| Total: | $785,088.05[21] |

## Certificate of Counsel

The undersigned certifies that plaintiffs' counsel contacted defendants' counsel, but counsel were unable to agree to settle plaintiffs' claim.

Dated: June 20, 2008
Respectfully submitted,

BECKER & POLIAKOFF, P.A.

By: /s Gary C. Rosen
    Gary C. Rosen, Esq.
    Florida Bar No. 310107
    3111 Stirling Road
    Ft. Lauderdale, Florida 33312
    (954) 985-4133

Elizabeth S. Westfall
Advancement Project
1730 M Street, NW, Suite 910
Washington, DC 20036
(202) 728-9557

Eric A. Tirschwell
Craig L. Siegel
Amy Weiner
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

Wendy R. Weiser
The Brennan Center for Justice
161 Avenue of the Americas, 12th Fl.
New York, New York 10013
(212) 998-6730

*Attorneys for Plaintiffs*

## Verification

I hereby certify that the facts set forth herein are true and correct, as confirmed by the declarations attached.

/s Gary C. Rosen
Gary C. Rosen Esq.

---

and included only one two-hour hearing. (attached to the Siegel Decl. as Ex. N, at 4). This case involved substantially more time and work over a much greater period of time.

[21] This does not include any time or costs incurred for plaintiffs' application for an award of attorneys' fees and costs after May 31, 2008. Plaintiffs reserve the right to supplement their application to seek reimbursement for their time and costs incurred after May 31, 2008.