**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**CASE NO. 06-21265-CIV-SEITZ/O'SULLIVAN**

LEAGUE OF WOMEN VOTERS OF FLORIDA;
PEOPLE ACTING FOR COMMUNITY TOGETHER
(PACT); FLORIDA ALF–CIO; AMERICAN
FEDERATION OF STATE, COUNTY AND LOCAL
EMPLOYEES, COUNCIL 79 (AFSCME); SEIU
FLORIDA HEALTHCARE UNION, as organizations
and as representatives of their members; MARILYN
WILLS; and JOHN and JANE DOES 1–100,

      Plaintiffs,

v.

KURT S. BROWNING, in his official capacity as
Secretary of State for the State of Florida; and
DONALD PALMER, in his official capacity as
Director of the Division of Elections within
the Department of State for the State of Florida,

      Defendants.
_____

**DEFENDANTS' RESPONSE TO PLAINTIFFS' VERIFIED**
**MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**

      Defendants Kurt S. Browning, in his official capacity as Secretary of State for the State

of Florida, and Donald Palmer, in his official capacity as Director of the Division of Elections,

submit this response in opposition to Plaintiffs' Verified Motion for an Award of Attorneys' Fees

and Costs (doc. 86).

## <u>INTRODUCTION</u>

This case began when Plaintiffs filed their Complaint challenging the constitutionality of Section 97.0575, Florida Statutes.  This Court preliminarily enjoined enforcement of that statute, and the Legislature subsequently amended it.  Based on the amendment, this Court dismissed the case as moot.  Now, Plaintiffs' Counsel seek nearly $800,000 in fees and costs for what they tell this Court was a "huge victory" in which Plaintiffs "won all of the relief they sought."  (Mtn at 2, 9.)  Proclaiming triumph, Plaintiffs do not even mention that four days after this case was dismissed, they initiated new litigation.  They do not mention that they now challenge the amended statute, telling this Court (but another Judge) that without a new injunction, they "will be back where they were before initiating the prior case:  with their constitutionally protected voter registration activities chilled—indeed, completely shut down."  *See infra.*  Ending where you began "is not the stuff of which legal victories are made."  *Hewitt v. Helms*, 482 U.S. 755, 760 (1987).

Because Plaintiffs did not prevail in this case, they are not entitled to an award of fees or costs.  But even if they were considered prevailing parties for purposes of Section 1988, their request is grossly excessive.  It is also untimely.  It should be denied.

## I.    <u>PLAINTIFFS ARE NOT PREVAILING PARTIES.</u>

Plaintiffs obtained a preliminary injunction that is no longer in effect.  An amended law now stands in place of the law preliminarily enjoined.  But Plaintiffs have consistently maintained that the statutory amendment is no remedy at all, and that they are in no better position with the amendment than they were without it.  Plaintiffs, by their own conduct and representations, have demonstrated that they are not prevailing parties under Section 1988.

### A.    *Procedural History and Background.*

In 2005, the Florida Legislature enacted the challenged law to protect its citizens' right to register and to vote.  The legislation required individuals and groups that collect voter registration applications from prospective voters to submit them to election officials.  §§ 97.021(36), 97.0575, Fla. Stat. (2005).  It imposed fines on private parties for each application not timely submitted, or never submitted at all.  *Id.*  The law served to protect voter registration applicants from disenfranchisement by the irresponsibility or carelessness of private actors.

On May 18, 2006, Plaintiffs filed their Complaint attacking the constitutionality of the challenged law.  (Doc. 1.)  Plaintiffs alleged that the fines imposed by the challenged law on the tardy submission of voter registration applications compelled them to "shut down their

nonpartisan voter registration activities in Florida." *Id*. ¶ 1.  Plaintiffs then sought a preliminary injunction.  (Doc. 10.)  On August 28, 2006, the Court entered a preliminary injunction order. (Doc. 57.)  Defendants appealed the same day.  (Doc. 58.)

In 2007, while the appeal remained pending, the Governor signed into law Chapter 2007-30, Laws of Florida (the "2007 Act").  The 2007 Act amended the challenged law in several respects, including by reducing the amount of the fines.  *See id*. §§ 1, 2.  Defendants then filed a Suggestion of Impending Mootness with the Eleventh Circuit, contending that, upon the effective date of the amendments to the challenged law, the case would be moot.  Plaintiffs opposed the Suggestion of Impending Mootness, vigorously arguing that the amended law suffered from the same constitutional infirmities charged upon the original enactment.[1]  According to Plaintiffs, the "law as amended leaves in place the essential features that have interfered with plaintiffs' voter registration drives."  Plaintiffs' Opp. at 4.  "Absent an injunction," Plaintiffs explained, "the amended law will penalize groups and individuals who engage in voter registration drives and will curtail their core political speech and association in a way fundamentally similar to the current version of the law."  *Id*.  Plaintiffs concluded that "the amended law is still unconstitutional, as plaintiffs will have the opportunity to allege in an amended complaint in the district court."  *Id*. at 13.[2]

On February 19, 2008, the Eleventh Circuit dismissed the appeal as moot.  (Doc. 79.) Defendants then filed a Motion to Dismiss in this Court, arguing that, like the appeal, the entire case was moot.  (Doc. 81.)  Plaintiffs did not object to dismissal but maintained that the amended law was functionally equivalent to the prior enactment.  (Doc. 82 at 3 ("The law as amended leaves in place the essential features of the prior version of the law that interfered with plaintiffs' voter registration drives . . . .")).  Judicial relief, Plaintiffs maintained, was necessary to protect their constitutional rights:  "Absent further relief, the amended law will penalize groups and individuals who engage in voter registration drives and will curtail their core political speech and association in a way similar to the prior version of the law enjoined by the Court."  *Id*.  For the first time, Plaintiffs forecast that, rather than amend their Complaint, they "will challenge the amended law in a new complaint, to be filed shortly."  *Id*. at 5.

---

[1] The Suggestion is attached as Exhibit A; Plaintiffs' Response is attached as Exhibit B.

[2] As explained *infra*, Plaintiffs later reversed course and agreed that the appeal was moot.

Four days after this Court granted the motion to dismiss, (doc. 83), Plaintiffs filed a new Complaint in the same Court to attack the same statute (as amended) and allege the same injuries. *See League of Women Voters of Florida v. Browning*, No. 08-21243 (S.D. Fla.) (Altonaga, J.) (hereinafter "*LOWV II*"). According to Plaintiffs, the challenged law—which was only "slightly amended" (*LOWV II*, Doc. 1 ¶ 2)—was no improvement at all:

> The amended law leaves in place the essential features of the original unconstitutional law that had burdened plaintiffs' speech and association in 2006: escalating fines for failing to meet arbitrary deadlines, nearly strict liability for those fines, and the risk of significant fines for individual volunteers and employees working in plaintiffs' voter registration drives.

*Id*. ¶ 3. Plaintiffs complained that the amended law "continues to impose heavy fines on third-party voter registration organizations," *id*. ¶ 60, and would force them "yet again" to discontinue their voter registration activities, *id*. ¶ 7. As before, Plaintiffs alleged that the challenged law violates their freedom of speech and the right to vote.

In their new Motion for Preliminary Injunction, Plaintiffs equated the amended statute to its predecessor. (*LOWV II*, Doc. 24). The amended law is "just as unconstitutional as the original law" *id*. at 21, and the burden on Plaintiffs' rights "is virtually unchanged," *id*. at 15. In fact, "despite its purported fixes," the amended law is "just as burdensome as and no more narrowly tailored than the prior enactment." *Id*. at 2. As a result, "once the amended law goes into effect,[3] Plaintiffs intend to shut down their registration operations across the state, just as they did when confronted with the original statute." *Id*. at 14. Significantly, Plaintiffs noted that, when the amended law takes effect:

> Plaintiffs will be back where they were before initiating the prior case: with their constitutionally protected voter registration activities chilled—indeed, completely shut down—to avoid being subject to . . . an unconstitutional burden upon the exercise of their core political speech and association. (*Id*. at 9.)

Beginning on June 18, 2008, the Court held a two-day hearing on Plaintiffs' Motion for Preliminary Injunction. Plaintiffs advanced the same arguments, asserted the same injuries, and

---

[3] The implementation of the challenged law was postponed initially by agreement of the parties. (Doc. 78.) On March 31, 2008, Defendants terminated the agreement pursuant to its terms. (Doc. 80.) After the new litigation commenced, Defendants informed the Court that the law would not be enforced until an administrative rule implementing it takes effect. (*LOWV II*, Doc. 15.) The Court entered a consent order to that effect, which also expressly stated that the consent order would not confer upon Plaintiffs prevailing-party status. *Id*. A rule has not yet been adopted, so the law remains unenforced.

requested the same relief from the same Court and against the same Defendants and the same statute (as amended) as in the prior litigation.  The Court has not yet ruled on Plaintiffs' Motion.

On June 20, 2008, Plaintiffs' Counsel filed the Motion at hand.  (Doc. 86.)  Counsel claim prevailing party status, praising the "excellent results" they obtained and characterizing the outcome of the case as a "huge victory."  *Id*. at 2.  Boasting that they "won all of the relief they sought," *id*. at 9, they do not inform the Court that the same constitutional challenge has been reinstituted or that they consider the amended law is "just as unconstitutional as the original law."  (*LOWV II*, Doc. 24 at 21.)  They silently pass over Plaintiffs' intent to discontinue their voter registration efforts once again, "just as they did when confronted with the original statute."  *Id.* at 14.  And they do not disclose that because of the new law, Plaintiffs "will be back where they were before initiating the prior case."  *Id.* at 9.

Counsel ask the Court to award them nearly $800,000 in fees and costs.  For the reasons below, Plaintiffs are not prevailing parties, and Counsel's breathtaking request must be denied.

**B.**     ***Legal Standard and Analysis.***

Under the "American Rule," courts follow "a general practice of not awarding fees to a prevailing party absent explicit statutory authority."  *Buckhannon Bd. & Care Home v. W.V. Dep't of Health & Human Res.*, 532 U.S. 598, 602 (2001).  In Section 1983 actions, Congress has determined that courts may "allow the prevailing party . . . a reasonable attorney's fee."  *See* 42 U.S.C. § 1988(b).  To be a prevailing party, a litigant must achieve a "court-ordered change in the legal relationship between the plaintiff and the defendant."  *Buckhannon*, 532 U.S. at 604 (quoting *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989)).  In other words, a plaintiff must secure a "judicial imprimatur on the change."  *Id.* at 605.

Whether a preliminary injunction qualifies as the "judicial imprimatur" requisite to an award of attorney's fees depends on circumstances.  For example, in *Sole v. Wyner*, 127 S. Ct. 2188 (2007), the Supreme Court held that a plaintiff is not entitled to fees where "a preliminary injunction . . . is reversed, dissolved, or otherwise undone by the final decision in the same case."  *Id*. at 2195.  In *Sole*, the trial court granted a preliminary injunction barring the application of an administrative rule prohibiting nudity in state parks to a contemplated "peace sign" display for expressive purposes.  *Id*. at 2192.  The Court permitted the display to take place behind a screen, but participants disregarded the screen and "went into the water in the nude."  *Id*. at 2192-93.  Recognizing that the challenged rule was no broader than necessary to serve the state's interests,

the trial court granted the defendants' motion for summary judgment, but awarded the plaintiff fees. *Id*. at 2193.  The Supreme Court reversed.  It explained that the plaintiff's "fleeting success . . . did not establish that she prevailed on the gravamen of her plea for injunctive relief." *Id*. at 2195.  "At the end of the fray, [the rule] remained intact, and [the plaintiff] had gained no *enduring change* in the legal relationship between herself and the state officials she sued." *Id*. at 2196 (emphasis added).  Thus, the plaintiff's "initial victory was ephemeral." *Id*.  The Court concluded that a "plaintiff who achieves a transient victory at the threshold of an action can gain no award under [Section 1988] if, at the end of the litigation, her initial success is undone and she leaves the courthouse emptyhanded." *Id*. at 2192.

By contrast, in *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226 (3d Cir. 2008), the trial court granted a preliminary injunction prohibiting enforcement of an ordinance regulating expressive activities in public forums. *Id*. at 228.  After entry of the injunction, the defendant prepared successive drafts of proposed ordinances to take the place of the enjoined provisions. *Id*. at 230.  The trial court and the plaintiffs expressed their concerns with the defendant's various drafts, until, after numerous revisions, the defendant ultimately "passed a new ordinance and implementing regulations which satisfied *all* of plaintiffs' concerns." *Id*. (emphasis added).  The Third Circuit affirmed the trial court's award of attorney's fees, finding that the "defendants ultimately . . . enact[ed] new legislation *giving plaintiffs virtually all of the relief sought in the complaint*." *Id*. at 233 (emphasis added).  The Court explained its decision to award fees:

> While preliminary injunctions by their nature constitute provisional relief, this case is unlike *Sole*, . . . where the initial relief plaintiffs achieved under the Court's injunction proved to be fleeting. . . . In this case, plaintiffs achieved precisely what they sought *on an enduring basis—the permanent demise of the challenged ordinance, and in its place a system that satisfied plaintiffs' goals*. . . . The injunction . . . afforded plaintiffs *lasting relief* on the merits of their claims.

*Id*. at 234 (emphases added).  Because the legislative amendment afforded the plaintiffs "virtually all" of the relief they sought on an "enduring basis," an award of fees was warranted.

*Taylor v. City of Fort Lauderdale*, 810 F.2d 1551 (11th Cir. 1987)—on which Plaintiffs' Counsel rely—mirrors the essential facts of *People Against Police Violence*.  In *Taylor*, the plaintiffs challenged the constitutionality of a municipal ordinance regulating religious solicitations.  The trial court entered a preliminary injunction, which remained in force until the defendant amended the challenged ordinance and the case became moot. *Id*. at 1558.  The

amended ordinance eliminated a registration requirement applicable exclusively to religious organizations that conduct indoor solicitation on property they do not own but occupy with consent.  *Id.* at 1555 & n.6.  In awarding fees, the Court noted that "the injunction entered here properly ended a discriminatory permitting practice by the City."  *Id.*  As in *People Against Police Violence*—and much unlike the present case—there is no indication that the plaintiffs in *Taylor* disputed the constitutionality of the amended ordinance or maintained that they were "back where they were before initiating the prior case."  (*LOWV II*, Doc. 24 at 9).

The lesson from these precedents is that a preliminary injunction may entitle a litigant to an award of fees if the subsequent termination of the case obviates the occasion for judicial relief.  *Cf. Barnes v. Broward County Sheriff's Office*, 190 F.3d 1274, 1279 (11th Cir. 1999) ("[T]o be considered a prevailing party, a plaintiff must obtain some benefit from the defendant at the time the litigation ceases.").  In *People Against Police Violence* and *Taylor*, the amendment of the challenged laws afforded the plaintiffs the precise relief they had sought from the courts.  It resulted, in one case, in the enactment of a constitutional ordinance for the regulation of public forums, and, in the other, in the discontinuance of an unconstitutional regulation of religious solicitation.  In both, the amendments perpetuated the relief initially afforded by the preliminary injunction.  On the contrary, in *Sole*, the termination of the case also terminated the relief afforded to the plaintiff, and the plaintiff found herself in the same posture she occupied at the commencement of the suit.[4]

In the present case, Plaintiffs are not prevailing parties.  They have flatly and consistently denied that the legislative amendment accomplished their objectives.  They have told this Court that it leaves in place the essential features of the challenged law, that it is equally burdensome

---

[4] The necessity of lasting relief is consistent with the Supreme Court's long-standing description of the prevailing-party standard:

> In all civil litigation, the judicial decree is not the end but the means.  At the end of the rainbow lies not a judgment, but some action (or cessation of action) by the defendant that the judgment procures—the payment of damages, or some specific performance, or the termination of some conduct.  Redress is sought *through* the court, but from the defendant. . . . The real value of the judicial pronouncement—what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff.*

*Rhodes v. Stewart*, 488 U.S. 1, 3-4 (1988) (quoting *Hewitt v. Helms*, 482 U.S. 755, 761 (1987)) (emphasis in original).  Here, Plaintiffs found neither the demanded redress nor a settlement of the dispute—but more litigation—"at the end of the rainbow."

and no more narrowly tailored than its predecessor, that it will compel them once again to refrain from their voter registration activities, that it returns them to the same position as before the first litigation, and that further judicial relief is necessary to secure their constitutional rights. The legislative amendment did not serve the same effect as permanent judicial relief. Instead, Plaintiffs continue their quest for that permanent judicial relief. In fact, they brought the same case in the same court against the same defendants seeking the same redress for the same alleged injuries inflicted by the same statute (as amended). This case is thus nothing like *People Against Police Violence* or *Taylor*, where the legislative amendment afforded the plaintiffs all or virtually all of the final relief they sought—in effect serving the same ends as the judicial relief sought.

By bringing a second suit rather than amending their complaint, Plaintiffs here improperly seek to hew a foundation for the award of fees from a transient victory. To allow fees on a procedural contingency when Plaintiffs' constitutional challenge proceeds as before— though in a different courtroom—would exalt form over substance.[5] Accordingly, Counsel cite no case holding that a party who, after obtaining a preliminary injunction, consents to the dismissal of the case and four days later re-files the same case in the same court has attained an enduring change in the behavior of the defendant entitling him to an award of attorney's fees.

Plaintiffs' claim for fees is premised on a 22-month exemption from the challenged law during the pendency of the preliminary injunction. But temporary relief, without more, is insufficient to establish an entitlement to fees. *See*, *e.g.*, *Northern Cheyenne Tribe v. Jackson*, 433 F.3d 1083, 1085 (8th Cir. 2006) ("It is of course literally true that every preliminary injunction effects some judicially sanctioned change in the parties' legal relationship. If that were all *Buckhannon* requires, then every recipient of a preliminary injunction becomes a prevailing party eligible for an attorneys' fee award."). The plaintiff in *Sole* attained temporary relief, but was denied fees because the victory was fleeting. In *Doe v. Busbee*, 684 F.2d 1375 (11th Cir. 1982), the plaintiffs secured a preliminary injunction requiring Medicaid reimbursement for abortions, but were denied fees when they lost on the merits—despite the fact

---

[5] Now claiming that this case is over and that they prevailed, it is obvious why Plaintiffs chose to file a *new* case rather than amend their Complaint. At the commencement of the new case, Plaintiffs filed their "Notice of Pending, Refiled, Related, or Similar Cases" stating: "This action raises nearly identical issues as [the earlier case], all the plaintiffs in this action were plaintiffs in [the earlier case], and the defendants in both actions are identical." (*LOWV II*, Doc. 6.)

that, in the interim, more than 1,800 abortions were reimbursed pursuant to the injunction.[6]
Conversely, in *People Against Police Violence* and *Taylor*, the plaintiffs obtained preliminary
injunctions which, in their practical effects, became permanent when legislative amendments
allayed the plaintiffs' concerns.  Here, the legislative amendments evidently have not allayed
Plaintiffs' concerns.  Indeed, the litigation continues, albeit before a different Judge.  "That is not
the stuff of which legal victories are made."  *Hewitt v. Helms*, 482 U.S. 755, 760 (1987).
Plaintiffs have not prevailed, and the Court must deny Counsel's request for fees and costs.[7]

## II.   PLAINTIFFS' MOTION WAS UNTIMELY.

In this Court, any request for attorney's fees "shall be filed and served within thirty days of
entry of a Final Judgment or other appealable order that gives rise to a right to attorneys fees."  S.D.
Fla. L.R. 7.3(A).  In this case, there has been no final judgment.  Therefore, Plaintiffs' Counsel base
their fee request on this Court's preliminary injunction order, entered August 28, 2006—nearly two
years ago.  To the extent Plaintiffs' Counsel would be entitled to fees, it is the August 28, 2006
order that constituted the "appealable order that gives rise to a right to attorneys fees."  S.D. Fla.
L.R. 7.3(A).[8]  Yet Plaintiffs made no request for fees at that time—interim or otherwise.  *Cf.
Hastings v. Maine-Endwell Cent. School Dist.*, 676 F.2d 893, 895 (2d Cir. 1982) (plaintiffs
recovered "interim award of attorney's fees on the basis of their successful motion for preliminary
injunctive relief"); *Deerfield Med. Ctr. v. Deerfield Beach*, 661 F.2d 328, 339 (5th Cir. 1981)
(plaintiffs permitted interim fees after securing preliminary injunction).

---

[6] Plaintiffs cite *ACLU of Florida, Inc. v. Polk County, Florida*, No. 8:05-cv-2266, 2006 WL 2147716
(M.D. Fla. July 28, 2006), in support of the alleged sufficiency of a preliminary injunction to support an
award of fees.  In *ACLU*, the plaintiffs sought an opportunity to erect a display on public property during
the Christmas season, and the preliminary injunction continued in force throughout the relevant period.
The plaintiffs, therefore, sought relief only for a discrete period of time—and obtained it.  *Accord Doe v.
Marshall*, 622 F.2d 118 (11th Cir. 1980) (awarding fees where a preliminary injunction allowed a student
to play high school football and was rendered moot by the student's graduation).  In the present case,
however, Plaintiffs' request for relief was not specially limited to a self-contained period of time.
Plaintiffs sought relief for all of time, and, as the new litigation shows, they did not attain it.

[7] In the alternative, Plaintiffs are not entitled to fees because *Taylor* is no longer operative precedent.
In *Buckhannon*, the Supreme Court rejected the catalyst theory of fee awards, which, in certain
circumstances, allowed fees as a result of the defendant's voluntary conduct.  *Sole* further eroded *Taylor*'s
legal footing, calling into question whether the entry of a preliminary injunction can ever serve as a basis
for fees.  Thus, since the Eleventh Circuit decided *Taylor*, the Supreme Court has twice denied attorney's
fees in circumstances that approach the facts of *Taylor*.

[8] Even if this Court's order dismissing the case as moot were a Final Judgment, it was not this order
that gave rise to an award of attorney's fees.  The order dismissed the action altogether.  To the extent
Plaintiffs "prevailed," it surely cannot be said that they prevailed *only upon dismissal*.

Plaintiffs' delay of nearly two years is sufficient alone to support denial of their Motion. *See, e.g., Watkins v. McMillan*, 779 F.2d 1465, 1466 (11th Cir. 1985) (per curiam) (enforcing local rule setting time limits for filing claims for attorney's fees); *Peasley v. Armstrong World Indus., Inc.*, 128 F.R.D. 681, 682 (S.D. Fla. 1989) (denying motion filed one week after expiration of the thirty-day period); *Vanzant v. R.L. Products, Inc.*, 139 F.R.D. 435, 438 (S.D. Fla. 1991) (denying motion filed ten months late). The Comments to the Local Rule leave no doubt: "[I]n no event may a motion for fees or costs be made later than the date provided in this Local Rule." S.D. Fla. L.R. 7.3 cmt. The Court should enforce this Rule and deny Plaintiffs' Motion.

## III. THE SPECIAL CIRCUMSTANCES IN THIS CASE PRECLUDE AN AWARD.

Even if Plaintiffs were prevailing parties for purposes of Section 1988, and even if their Motion were timely, Counsel are not entitled to the fees and costs they request. First, the continued litigation and the fact that Plaintiffs' position is not improved constitute "special circumstances" that would preclude an award even if Plaintiffs were considered prevailing parties. *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) ("[S]pecial circumstances [may] render such an award unjust . . . ."). Rather than continuing their earlier litigation and amending their Complaint—as they indicated they would do—Plaintiffs consented to dismissal and promptly re-filed. Plaintiffs' attempt to conclude the earlier litigation in favor of a new, substantially identical case strictly to manufacture a claim for fees and costs certainly constitutes "special circumstances."

## IV. COUNSEL'S FEE REQUEST IS UNREASONABLE.

The touchstone for any fee request is reasonableness, *ACLU v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999), and nearly $800,000 for a preliminary injunction order—against a statute that was never enforced—that ultimately left Plaintiffs where they began is manifestly unreasonable.

A reasonable attorney fees award under Section 1988 is "properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Id.* at 427. The product of this calculation is known as the "lodestar." *Dillard v. City of Greensboro*, 213 F.3d 1347, 1353 (11th Cir. 2000). After determining the appropriate lodestar, a court must determine whether an adjustment to the lodestar is necessary "to account for other considerations that have not yet figured in the computation, the most important being the relation of the results obtained to the work done." *Id.* The request in this case seeks an unreasonable number of hours multiplied by an unreasonable hourly rate. The product is an unreasonable request, which should be rejected.

A. ***Counsel Seek Recovery of Fees to Which They Are Not Entitled.***

Before evaluating the reasonableness of the number of hours for which Counsel seek fees, this Court should deduct all hours attributed to time for which this Court may not award fees. The Court may then consider the reasonableness of what remains.

1. **Counsel May Not Recover Fees For Their Appellate Work.**

Plaintiffs' Counsel seek fees for 285.4 hours for their work in defending the appeal. (Doc. 86-9 at 5.) But this Court is without authority to award those fees. The Eleventh Circuit has discretion to award attorney's fees for the work expended before it. *Mills by Mills v. Freeman*, 118 F.3d 727, 734 (11th Cir. 1997). But the Plaintiffs in this case did not request fees from the Circuit Court. "If a party wishes to obtain fees on appeal, he or she must file a petition with the clerk *of this circuit* within fourteen days of the issuance of the opinion of this court." *Id.* (emphasis added). In *Mills*, the district court denied appellate fees because the movant failed to request them in the circuit court. The Eleventh Circuit affirmed. "Because appellants failed to file such a petition [in this Court], and thus this court did not award attorney's fees, the district court did not have the authority to award appellants appellate fees." *Id.* at 735. Similarly, the Court held in *Davidson v. City of Avon Park* that "the district court is not authorized . . . to control the filing time or assessment of attorney's fees for services rendered on appeal." 848 F.2d 172, 173 (11th Cir. 1988); *accord Dillard v. City of Foley,* 995 F. Supp. 1358, 1372 (M.D. Ala. 1998) (denying request for appellate fees because movant failed to seek them from the appellate court); *Simpleville Music v. Mizell*, 511 F. Supp. 2d 1158, 1161 (M.D. Ala. 2007) (same).

Ignoring the Eleventh Circuit's binding authority, Counsel rely primarily on a district court decision from New Jersey. (Mtn. at 11.) That decision did not even address whether the application should have been made in the circuit court and, at any rate, cannot trump the Eleventh Circuit precedent. Counsel also rely on several circuit court decisions in which the parties *did* make their request in the circuit court. *See Finch v. Vernon*, 877 F.2d 1497, 1508 (11th Cir. 1989) (circuit court granted fee petition); *Sotomura v. County of Hawaii*, 679 F.2d 152, 152-53 (9th Cir. 1982) (same); *Hastings v. Maine-Endwell Cent. Sch. Dist.*, 676 F.2d 893, 896-97 (2d Cir. 1982) (directing district court to award fees).

Counsel's decision not to seek fees from the appellate court was certainly defensible. Although they now characterize the appeal as a victory—claiming they "won dismissal of defendants' appeal as moot" (Motion at 11)—the Court dismissed the appeal on *Defendants'*

motion. Defendants filed their Suggestion of Impending Mootness, which the Court construed as a motion to dismiss the appeal as moot. Plaintiffs vigorously opposed the motion, asserting that the case was not moot. *See* Exhs. A, B.[9] Months later, the day after the Court made available the identity of the appellate panel, Plaintiffs reversed course. By letter to the Eleventh Circuit Clerk, Plaintiffs then welcomed the dismissal of the appeal.[10] Plainly, Plaintiffs did not prevail on appeal. But even if they had, this Court is without authority to award them appellate fees or costs. *Mills*, 118 F.3d at 734.[11]

2.   <u>**Counsel Are Not Entitled to Fees Incurred Before They Had Clients.**</u>

This is unlike most fee requests, in which parties seek to recover fees they paid to their attorneys. In this case, Plaintiffs paid nothing, and their Counsel simply seek to recover as much as they can. But this does not change the fact that a Section 1988 fee award still runs to the benefit of the parties. Courts permit *pro bono* counsel to recover fees not for counsel's benefit—but for parties' benefit. *See Venegas v. Mitchell*, 495 U.S. 82, 88 (1990) ("[I]t is the party, rather than the lawyer, who is . . . eligible" for an award under § 1988). And like fee-charging lawyers, Counsel in this case may not recover fees for hours expended when they had no clients. Just as a client owes no fees when he has no lawyer.

Counsel's billing records begin with entries on October 10, 2005. (Doc. 86-4 at 7). Yet they apparently did this work on their own behalves as private interest groups. They did not enter into representation agreements until April 5, 2006—nearly six months after they began work. *See* Retainer Agreements, attached as Exhibit E.[12] "[H]ours spent looking for and soliciting potential plaintiffs should not have been included in the time billed. Putting aside any ethical considerations,

---

[9] Indeed, Counsel's time records indicate they spent 55.8 hours preparing their opposition to the very order they now claim as a victory. *See* Chart attached as Exhibit C.

[10] Counsel's time records betray this transparent judge-shopping exercise. The time records submitted with the declaration of Ms. Paradis include these sequential entries beginning the day the oral argument panel became publicly available: "Research re: panel's 11the (sic) Cir's past First Amendment cases"; then "Draft letter to court re: mootness." (Doc. 86-3 at 9.) The letter is attached as Exhibit D.

[11] For the same reason, this Court must deny Counsel's request for expenses related to the appeal, including travel, binding, copying, and *pro hac vice* fees.

[12] The attached agreements, one between the League of Women Voters of Florida Education Fund and the Brennan Center and the Advancement Project, and a second between Kramer Levin and the Florida AFL-CIO, were provided by Plaintiffs' Counsel upon Defendants' request. Counsel did not provide the agreements with their other clients but represented that the language was identical. Counsel have also represented that Plaintiffs' local counsel (Becker Polikoff) had no fee agreements with the Plaintiffs and were not compensated for their work by Plaintiffs or others.

11

time spent procuring potential plaintiffs is obviously not expended on the litigation because until the attorney has a client, there is no case to litigate." *ACLU*, 168 F.3d at 435. Fees for the 204.9 hours incurred before Counsel secured clients are not recoverable.

### B.   *Counsel's Remaining Hours Are Unreasonable.*

After subtracting the hours relating to the appeal and to the time when Counsel were acting on their own behalves, this Court must consider the reasonableness of the balance. In doing so, the Court should exclude excessive, redundant, and unnecessary hours, as well as hours for which it would be unreasonable for an attorney to bill in the exercise of good billing judgment. *See Hensley*, 461 U.S. at 434. Counsel claim too many hours.

"It is not unusual for attorneys to spend more time on a case than it reasonably requires. We see that regularly, and it is one reason why applications for attorney's fees to be paid by the other party are reviewed by courts." *Glassroth*, 347 F.3d 916, 920 (11th Cir. 2003). It is clear that the Counsel billed far more hours than were necessary. Obviously, there is a point at which thorough and diligent advocacy in litigation becomes overkill, and courts must disallow claims for excessive, redundant, or otherwise unnecessary fees. *Ok. Aerotronics v. United States*, 943 F.2d 1344, 1347 (D.C. Cir. 1991); *see also Hensley*, 461 U.S. at 433-34.

Overkill here is obvious. If there were any doubt that Counsel exercised little or no restraint in assigning resources to this case, it is put to rest by their representation that they exercised "billing judgment" to the extent of excluding nearly two thousand hours—*more than half of the time expended*. (Doc. 86-9 at 4.) Rather than supporting their request for what remains, this fact raises substantial issues as to the reasonableness of Counsel's request. In *Glassroth*, the Eleventh Circuit noted that the plaintiff represented that it exercised its "billing judgment" to exclude the fees of three attorneys. 347 F.3d at 919 n.2. "We appreciate that fact, but . . . the district court should determine whether the attorneys who *did* opt to seek reimbursement for their time should have exercised more billing judgment." *Id.* (emphasis added). Here, there should have been much more billing judgment, and much less billing.[13]

---

[13] Counsel's fee expert, Mr. Green, states that Counsel first presented him with an unreasonable fee amount and that he requested additional billing judgment. (Doc. 86-8 at 3-4.) The new number of hours, Green attests, is reasonable. *Id.* at 4. Yet he concludes that the remaining time should be subject to reductions to account for the duplication of efforts and for the lack of specificity in clarity of some entries. *Id.* at 4. This is entirely at odds with his ultimate conclusion that "plaintiffs' counsel have exercised excessive billing judgment, far beyond what they are required to do under existing [unspecified] case law, in

Counsel report that Kramer Levin appears in the AmLaw 100, and Defendants do not dispute the prestige or ability of the Kramer Levin firm.  It is highly doubtful, though, that the firm achieved its success by routinely writing off *more than half* of the fees it incurs on matters involving real, paying clients.  Instead, it is more than likely that the firm uses its *pro bono* representations as training exercises for its young associates.  This partly explains why Plaintiffs had no fewer than eight attorneys at the preliminary injunction hearing compared to Defendants' two.  Providing its attorneys with real-world experience unquestionably benefits the firm.  But it must not do so at the expense of Florida's taxpayers.[14]

In a case with substantial billing records like this one, "an hour-by-hour review is both impractical and a waste of judicial resources."  *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994).  Rather than objecting to each entry individually, Defendants offer the following examples of Counsel's unreasonable billing.

**The Complaint:**  Counsel seek 92 hours for drafting, reviewing and discussing the Complaint.  Despite Mr. Siegel's conclusory statement that Counsel divided efforts to avoid duplication, (doc. 86-9 at 4), the time records suggest otherwise.  Mr. Siegel spent 38.9 hours on the task, followed by Ms. Weiser's 27.5.[15]  Ms. Paradis, Ms. Walter, Ms. Westfall and Mr. Tirschwell added another 25.6.  All of this to draft a complaint that, under the Rules of Civil Procedure, need only include a "short and plain statement" showing the grounds for jurisdiction and relief.  Fed. R. Civ. P. 8(a).[16]  Counsel's request is unreasonable both because it is excessive and duplicative.  An award for time spent by multiple attorneys requires a showing of "the distinct contribution of each lawyer to the case."  *See Johnson v. Univ. College of UAB*, 706 F.2d 1205, 1208 (11th Cir. 1983).  Counsel offer none.

**The Conferences:**  A primary culprit behind for Counsel's excessive hours is their excessive conferences about matters such as "next steps," "case status," or "strategy."  Many

---

submitting their fee petition to the court.  In other words, I believe that they are not billing for hundreds of thousands of dollars of time to which they could be entitled."  *Id.* at 6.

[14] *Pro bono* service benefits not only New York law firms, but also their associates.  As the Southern District of New York noted:  "Had General Motors or IBM been the client it is fair to assume that neither [associate attorney] would have been given the authority he had in this litigation, nor would they have acquired the experience gained from the exercise of such authority."  *Pastre v. Weber*, 800 F. Supp. 1120, 1126 (S.D.N.Y. 1991).  The same is undoubtedly true for the Kramer Levin associates.

[15] A chart detailing the time entries contained in these totals is attached as Exhibit F.

[16] The 92 hours reflected here do not include all of the related research.  Including that, Counsel reports that the Complaint required 133.2 hours.  (Doc. 86-9 at 5.)

entries offer even less detail, stating only that there were (many) "team conference calls." These calls and conferences total more than seventy hours.[17]  Counsel's papers do not demonstrate that these conferences were necessary or appropriate, and they offer insufficient detail to evaluate whether they were.  They should be disallowed.

**The General Entries:**  Counsel's time entries suffer from a remarkable lack of specificity.  In addition to the entries listed above, entries such as "Trial Prep," "Hearing prep," or "Follow up discussions w. Siegel and Tirschwell" provide little insight into how the attorneys spent their time.  In cases with voluminous records like this one, an "across-the-board percentage cut[]" to the number of hours claimed is appropriate.  *Loranger*, 10 F.3d at 783.  The Court should provide a "concise but clear explanation of its reasons for the reduction."  *Id.*; *see also Gundlach v. NAACP*, 2005 U.S. Dist. LEXIS 45524, 12-13 (M.D. Fla. Aug. 16, 2005) ("Given the block billing 'Preparation for trial' catch-all Plaintiff used on the invoice, it would be impossible for the Court to conduct an hour-by-hour analysis in this case; the Court believes it is therefore appropriate to reduce the invoice amount by an appropriate percentage.").  Counsel's fee witness concedes that "[s]ome of the time entries on Plaintiffs' counsels' time charts do not meet the exacting requirements of existing case law for specificity and clarity."  (Doc. 86-8 at 4.) He suggests a minuscule two percent reduction.  That is woefully insufficient.[18]  *Cf. Gundlach*, 2005 U.S. Dist. LEXIS at 13 (applying 30% reduction).  "It is the fee applicant's burden to establish that the time for which compensation is sought under § 1988 is time that was reasonably expended on the litigation."  *ACLU,* 168 F.3d at 435.  Counsel's generic time entries do not satisfy that burden, and more than a *de minimis* reduction is necessary to offset their failure.

**Overstaffing the Hearing:**  Counsel seek fees for five attorneys who appeared at the hearing.  But they do not provide any explanation as to why five attorneys were necessary for the hearing.  (Counsel brought additional attorneys as well, for whom they do not seek fees.)  Their overstaffing was not reasonable.[19]  More egregiously, Counsel brought four attorneys to the

---

[17] A chart detailing the time entries contained in these totals is attached as Exhibit G.

[18] Likewise insufficient is Mr. Green's suggestion that only a three-percent reduction is warranted "to account for any duplication" where seven attorneys from three organizations seek fees.  (Doc. 86-8 at 4.)

[19] In an effort to minimize their obvious overstaffing, Mr. Siegel states in his declaration that he reviewed Defendants' counsel's time records (which are public records).  Mr. Siegel reports that "defense counsel billed time for five attorneys and one paralegal."  (Doc. 86-9 at 9).  This is true, but Mr. Siegel

closing argument, which occurred several days after the close of evidence, and which required a second trip to Miami.  Mr. Siegel nonetheless reports that Counsel appropriately divided the labor and that only Ms. Weiser conducted closing argument.  (Doc. 86-9 at 5.)  He makes no effort to explain the unnecessary attendance of her three colleagues.

**Other Noncompensable Entries:**  Again, Defendants do not offer a line-by-line list of objections for the Court's review.  *See supra.*  But several other areas are noteworthy.  Ms. Paradis spent 6.9 hours "check[ing] citations in opposing brief," a task more appropriately and efficiently assigned to administrative support.  (Doc. 86-3 at 8.)  Likewise, Ms. Walter spent 3.2 hours tending to *pro hac vice* issues, (Doc. 86-5 at 6) which traditionally do not require the lengthy study of a ten-year lawyer, *cf. Envt'l Defense Fund v. Reilly*, 1 F.3d 1254, 1259 (D.C. Cir. 1993) ("[Plaintiff] was understandably incapable of explaining how a lawyer could spend 3.5 hours on a Notice of Appearance.").  And Ms. Weiser billed .7 hours to "[a]rrang[e] travel for expert witness." (Doc. 86-4 at 10.)

**Overall Unreasonableness of Request:**  Putting aside the specific objections above, it is clear that Counsel's overall request is entirely unreasonable.  Reasonable clients do not pay nearly $800,000 for the prosecution of a case that involved one substantive hearing with only a handful of witnesses.  "[A] total of around 700 hours of lawyer time for nearly ten years of litigation and several evidentiary hearings does not on its face look unreasonable." *Dillard*, 213 F.3d at 1354.  A total of 1,742 hours for *this* case—which lasted only months and had *one* substantive hearing—looks quite unreasonable.  Remarkably, this case required *no discovery*, which is often the most time-consuming and expensive part of litigation.  Moreover, the First Amendment expertise of which Counsel boast should have increased efficiency—not reduced it. *See Glassroth*, 347 F.3d at 919-20 ("With that kind of [First Amendment] experience comes knowledge, efficiency, and self-confidence, which should reduce the number of hours necessary for the task.  A legal team headed by [a First Amendment expert] should have taken fewer hours to handle this case on appeal than one without the benefit of her expertise.").  Counsel seek far too many hours.

Indeed, their request is so unreasonable it should be denied in its entirety.  *See Andrews v. United States*, 122 F.3d 1367, 1375 (11th Cir. 1997) (noting that "[a]lthough the Eleventh Circuit

carefully omits the fact that two of those attorneys billed a *total* of 3.3 hours.  Defendants' counsel appropriately staffed the case with only three attorneys, only two of whom appeared at the hearing.

has not decided the issue . . . several other circuits hold[] that district courts do not abuse their discretion by denying in their entirety fee applications that are grossly inflated"). Otherwise, "claimants feel free to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place." *Envt'l Defense Fund*, 1 F.3d at 1258 (citation and quotation marks omitted) (denying fee request of attorney in its entirety because "even a perfunctory examination of Engel's time entries would show that she billed on a Brobdingnabian scale"); *see also ACLU*, 168 F.3d at 428 ("[I]t is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded.").[20]

### C.   *Plaintiffs' Claimed Hourly Rates Are Unreasonable.*

The next inquiry is the reasonableness of the hourly rate. "[A] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonable comparable skills, experience and reputation." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996). Counsel seek $300/hour for a first-year associate and a Brennan Center lawyer, $400/hour for two senior associates, another Brennan Center lawyer and an Advancement Project lawyer, and $550 an hour for a sixteen-year lawyer at Kramer Levin. Counsel's request is unreasonable, but not unexpected. "[T]ypically, the fee applicant asks for rates approximating the highest charged in the community . . . ." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1300 (11th Cir. 1988). Counsel are not entitled to these rates.

Counsel rely on the affidavit of James Green and certain publications listing rates of South Florida lawyers. Their evidence actually supports much lower rates. Contradicting himself, Mr. Green first states that in his opinion, "the rates sought by Plaintiffs' counsel tend to be at the low end of the range of rates charged by law firms in the Southern District." (Doc. 86-8 at 5.)

---

[20] Ironically, Counsel rely on *CBS v. Browning*, 2007 WL 2850527 (S.D. Fla. Sept. 21, 2007) to support the reasonableness of their claim. But in that case, this Court awarded less than one quarter of what Counsel seek here. *Id.* And Plaintiffs in that case—unlike here—succeeded in obtaining a final judgment invalidating as unconstitutional a portion of the Florida Election Code. *Id.* They did so in a case that the Court found to be somewhat complex. The Court also found "that the attendance of four attorneys and a paralegal at the [final] hearing for Plaintiffs was unreasonable." *Id.* at *9. The Plaintiffs in *CBS* achieved much more and were awarded a fraction of what Counsel here seek. One difference, of course, is that the Plaintiffs in *CBS* were actually paying their attorneys who, in turn, had an obligation and incentive to act economically in the clients' benefit. Here, Counsel had none—as evidenced by their bloated fee request. "Fee-shifting removes the interest a paying client would have in ensuring that the lawyer is serving the client economically." *Pa. v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 722 (1987). Therefore, "the task of monitoring the attorney is shifted to the judge." *Id.*

But he lists the reasonable range of rates in this District for Ms. Weiner at $225-$275.  She seeks $300—hardly on the low end of that range.  Likewise, Eric Tirschwell seeks $550 per hour—the top of the $450-$550 range Green considered reasonable.  Attorneys Siegel, Walter, Weiser, Westfall, and Paradis similarly all seek fees towards the higher end of Mr. Green's range of reasonable fees.

        The publications Counsel submitted also belie their claim.  According to the Daily Business Review article on which Counsel rely, Mr. Tirschwell's requested $550/hour would rank him third of the "highest billing partners in Miami-Dade." [21]  (Doc. 86-14 at 61.)  Mr. Siegel and Ms. Walter would tie for second place on the "highest billing associates in South Florida."  *Id.*  Their colleague Ms. Weiner, would be not far behind—in only her first year out of law school.  *Id.*

        The opinion of Mr. Green or Counsel themselves of their rates' reasonableness is not sufficient.  "[S]atisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits.  Testimony that a given fee is reasonable is therefore unsatisfactory evidence of market rate."  *Norman,* 836 F.2d at 1299.  Counsel offer little more than news articles to substantiate the reasonableness of their rates.  But one of those same articles notes that "[m]ost fees for associates located in court filings fell between the mid- and high $200s."  (Doc. 86-14 at 59.)  And it demonstrated that well-known firms like Shutts and Bowen and Tew Cardenas include partner rates of less than $400.  *Id.*[22]  Notably, the article reports that Becker Polikoff—a firm actually representing Plaintiffs in this case and one of whose partners signed *and verified* the fee request— billed associates at $275 and $325.  (Doc. 86-14 at 21.)

        The Court itself has expertise on the reasonableness of hourly rates and may apply "its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value."  *Norman*, 836 F.2d at 1303 (quoting *Campbell v. Green*, 12 F.2d 143, 144 (5th Cir. 1940)).[23]  In doing so, this Court should reduce each requested hourly rate by not less than $100.  The fact that some Miami lawyers may

---

        [21] It would also pay him more than Mr. Green receives from many of his clients—despite the fact that Mr. Green has been a lawyer twice as long.  (Mr. Tirschwell graduated from law school in 1992, (doc. 86-6 at 1), and Mr. Green graduated in 1976 (doc 86-8 at 2)).

        [22] Counsel report that the Secretary "affirmatively stated he did not object to hourly rates . . . of up to $400 per hour" in *CBS*.  (Motion at 14 n.12.)  Again, Counsel tell only part of the story.  The partner billing $400 per hour had more than 25 years of litigation experience—more than all three Kramer Levin associates (Siegel, Walter, and Weiner)—combined.

        [23] This Court may also consider the fact that this March, Ms. Paradis and Ms. Weiser submitted fee requests in Ohio litigation seeking $65 and $50 less, respectively, than they seek here.  *See* Exhibit H.

charge more is not dispositive.[24]  A "prevailing plaintiff is not entitled to have the losing party pay

for an attorney with the most expertise on a given legal issue, regardless of price, but only for one

with reasonable expertise at the market rate.  And 'market rate' means the hourly rate charged in the

local legal market by someone with expertise in the area who is willing and able to take the case, if

such an attorney exists."  *ACLU*, 168 F.3d at 437.

> ### D.     *Counsel's Lodestar Should Be Reduced.*

The lodestar determined by this Court must be reduced substantially to account for

Plaintiffs' lack of success.  "If the result was partial or limited success, then the lodestar must be

reduced to an amount that is not excessive."  *In re Application to Adjudge Trinity Indus.*, 876 F.2d

1485, 1495 (11th Cir. 1989); *see also Garland*, 489 U.S. at 793 ("[T]he degree of plaintiff's overall

success goes to the reasonableness of the award . . . .").  In doing so, the Court "may simply reduce

the award by some proportion."  *Norman*, 836 F.2d at 1302.  Here, nearly $800,000 for a result that

leaves Plaintiffs "back where they were before" is clearly excessive.  For all of the reasons

explained in Section I, *supra*, Plaintiffs finished well short of complete success.  But there is

another reason.  Despite arguing that they "won all of the relief they sought," (Motion at 9),

Counsel neglect their claim for damages against the officials in their individual capacities.  (Doc.

1.)  That claim was dismissed, and Plaintiffs did not appeal.  Counsel argued vigorously against

its dismissal, contending that the Secretary of State and the Division Director personally violated

Plaintiffs' rights and were thus personally liable (despite the fact that the law had never been

enforced).  Counsel even billed time to confer with an economist regarding the economic injury

caused.  (Doc. 86-4 at 8.)[25]  Because Plaintiffs obtained substantially less than full success—

indeed they were not prevailing parties at all—a reduction of the lodestar is appropriate.

---

[24] The fees charged by corporate firms such as those listed in the article—or Kramer Levin—are not
the relevant guide.  Although the fact that Counsel took this case *pro bono* may not be a basis for denying
fees, a discount is appropriate because the market rate for civil rights litigation services is lower than the
market rate for services provided to high-profile corporate clients.  *See Pastre v. Weber*, 800 F. Supp.
1120, 1125 (S.D.N.Y. 1991) (defendant should not be required to pay the rates usually charged to clients
such as General Motors or IBM, but should be required to pay the rates that "would have been charged by
a competent attorney specializing in civil rights litigation").

[25] Although the time entry does not state that the meeting with the economist related to the individual-
capacity claims, it could not have applied to the official-capacity claims because of sovereign immunity.
Plaintiffs did not seek damages from the State.

## IV.   <u>COUNSEL'S REQUEST FOR EXPENSES IS UNREASONABLE.</u>

Counsel's request for expenses is almost—but not quite—as unreasonable as their request for fees.  First, they seek more than $45,000 in electronic research costs.  Even if they were entitled to such costs, *cf. Am. Atheists, Inc. v. City of Starke*, 509 F. Supp. 2d 1221, 1228 (M.D. Fla. 2007) ("Counsel billed $ 867.32 in computer-aided research charges.  Counsel have already been handsomely compensated for the time that they spent researching matters for this case.  No additional compensation is necessary.") (citations omitted), it is clear that their specific request must be denied.  Counsel offer no documentation to demonstrate what the research was, why it was necessary, or whether it was duplicative.  Defendants therefore have no means of evaluating the request (other than to observe the facial grotesqueness of $45,000 in electronic research costs).  Counsel's records indicate that no fewer than 28 Kramer Levin timekeepers utilized online research.  Kramer Levin's "billing judgment" allowed them to seek fees for only five of those individuals.  Yet the same judgment allowed them to claim another 23 individuals' substantial research costs.  It is not clear whether these are summer interns looking for experience or seasoned litigators, but it is clear that their charges were unreasonable.  The attorneys for whom Counsel actually billed time accounted for approximately one fourth of the total research charges (and much of that was for the appeal, for which costs cannot be recovered).[26]  Even among the attorneys whose fees are requested, there is obvious duplication of research.  For example, both Mr. Siegel's and Ms. Weiner's time records include numerous entries for research relating to fee entitlement, and both of them had substantial online research during the same time period.  The unsubstantiated research costs of $45,000 must be denied.[27]

Counsel next seek $10,913.67 in costs for document-related charges such as copies, printing/binding, and courier fees.  (Doc. 86-9 at 6.)  Yet there is no indication as to what the copies were used for, and so their reasonableness cannot be determined.  In *Cullens v. Georgia Department of Transportation*, the Court affirmed the district court's denial of copying costs because "Plaintiffs did not present required evidence regarding the documents copied including their use or intended use."  29 F.3d 1489, 1494 (11th Cir. 1994).  The same defect is present here.  Counsel seek more

---

[26] See chart detailing electronic research usage, attached as Exhibit I.

[27] Counsel claim that they are billed by WestLaw and Lexis for actual usage and then pass the cost along to clients.  (Doc. 86-9 at 7.)  Upon information and belief, though, WestLaw and Lexis charge flat fees to large firms, which then allocate portions of the flat fees to various clients.  Counsel refused to provide copies of their agreements with WestLaw and Lexis.

than $1,500 in FedEx charges without any showing of reasonableness.  (Doc. 86-11 at 21.)  And the $1,883.07 they seek for the printing and binding of their appellate brief is not only facially outrageous, but also unrecoverable because it related to the appeal.  *See supra*.  It is impossible to discern from Counsel's filings how much of the other document-related charges were likewise related to the appeal.  Counsel has not justified *any* of their document-related costs.

Counsel next seek unreasonable travel expenses.  As explained *supra*, Counsel's bringing five attorneys to the hearing was unreasonable, so the travel costs associated with the unnecessary attorneys should be excluded.  The travel should be excluded altogether, because the hiring of out-of-state counsel was unnecessary.  *Johnson*, 706 F.2d at 1208 (out-of-town counsel's travel excludable if unreasonable not to hire competent local counsel).  Even if it were permitted, many of the requested costs lack support and should be removed.  For example, Ms. Weiser seeks to recover $1,035 for a stay at the Mandarin Oriental Hotel, but she supplies no documentation of the charge.  Ms. Walter seeks to recover $250.81 for a meal at the same hotel, listing only three diners and "et al." (one of the listed diners, Mr. Dorfman, worked in Miami).  (Doc. 86-5 at 11.)  This expense is facially unreasonable.  So too is Ms. Walter's charge for $700.97 for a separate one-night stay at the Mandarin, which includes more than $130 in telephone charges and a $237.83 charge at the five-star Azul restaurant for a dinner with Mr. Siegel.  (Doc. 86-5 at 24.)  (The Azul dinner was followed by an additional $39.89 worth of "in-room dining."  *Id.*)  Ms. Paradis's request for $1,035.08 for her Mandarin stay is supported only by her colleague's credit card bill—as opposed to a hotel invoice—and is therefore difficult to evaluate.  (Doc. 86-3 at 13.)  Mr. Siegel seeks certain costs for his travel, but the attachments to his declaration appear to relate to Ms. Walter's travel.  Finally, Ms. Walter seeks costs for her travel to Orlando to make a board presentation.  (Doc. 86-5 at 11.)  There is no showing that this trip was reasonable or necessary, and her time records do not even indicate that she went.  This must be denied.

## CONCLUSION

For the reasons above, Counsel are entitled to no award of fees or costs.  Even if they were, it would be substantially lower than the manifestly unreasonable amounts requested.  Defendants request a hearing on the Motion and respectfully suggest that it be bifurcated to avoid the necessity of a substantial evidentiary hearing if this Court concludes that Plaintiffs are not prevailing parties.  Otherwise, Defendants respectfully seek an evidentiary hearing at which they may cross-examine those submitting declarations on Counsel's behalf.

Respectfully submitted this 25th day of July, 2008.

/s/ Allen Winsor
ALLEN C. WINSOR
Florida Bar No. 016295
PETER ANTONACCI
Florida Bar No. 280690
GRAYROBINSON, P.A.
Post Office Box 11189
Tallahassee, Florida  32302-3189
  Phone:  (850) 577-9090
  Fax:  (850) 577-3311
email:  awinsor@gray-robinson.com
            pva@gray−robinson.com
*Attorneys for Secretary of State and
Donald Palmer*

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served through the Court's CM/ECF system on all counsel or parties of record on the attached service list this 25th day of July, 2008.

/s/ Allen Winsor
Allen Winsor

**SERVICE LIST**

**CASE NO. 06-21265-CIV-SEITZ/O'SULLIVAN**

Gary C. Rosen
Becker & Poliakoff, P.A.
3111 Stirling Road
Fort Lauderdale, FL 33312
 Phone:  (954) 985–4133

Elizabeth S. Westfall
Jennifer Maranzano
Estelle H. Rogers
Advancement Project
1730 M. Street, NW, Suite 910
Washington, DC  20036
 Phone:  (202) 728-9557

Wendy R. Weiser and Renee Paradis
Brennan Center for Justice at
NYU School of Law
161 Avenue of the Americas, 12th Floor
New York, NY 10013
 Phone:  (212) 998–6730

Eric A. Tirschwell
Craig L. Siegel
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
 Phone:  (212) 715–9100