UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 06-21265-CIV-SEITZ/MCALILEY

---------------------------------------- x
LEAGUE OF WOMEN VOTERS OF FLORIDA,          :
PEOPLE ACTING FOR COMMUNITY TOGETHER,       :
FLORIDA AFL-CIO, AMERICAN FEDERATION OF     :
STATE AND MUNICIPAL EMPLOYEES, COUNCIL      :
79 (AFSCME), SEIU FLORIDA HEALTHCARE        :
UNION, as organizations and as representatives of their :
members, and MARILYN WILLS,                 :
                                            :
                    Plaintiffs,             :
                                            :
        v.                                  :
                                            :
KURT S. BROWNING, in his official capacity as :
Secretary of State for the State of Florida; and :
DONALD PALMER, in his official capacity as  :
Director of the Division of Elections within the :
Department of State for the State of Florida, :
                                            :
                    Defendants.             :
---------------------------------------- x

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR
VERIFIED MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**

Plaintiffs respectfully submit this reply memorandum showing that defendants' arguments objecting to plaintiffs' motion are incorrect and should be rejected by the Court.

## I. Plaintiffs Prevailed Because They Won Injunctive Relief That Was Never Vitiated

Defendants argue that plaintiffs are not prevailing parties on the completely erroneous theory that the preliminary injunction barring enforcement of the 2005 Act gave plaintiffs only temporary relief. In their view, *Taylor v. City of Fort Lauderdale*, *Sole v. Wyner*, and *People Against Police Violence v. City of Pittsburgh* stand for the proposition that "temporary relief, without more, is insufficient to establish an entitlement to fees." (Opp. 7.) This argument is utterly meritless; it misconstrues the governing legal standards, misreads the applicable case law and misstates the relevant facts. Neither *Taylor*, *Sole*, nor *Police Violence* held that a party that wins a preliminary injunction must also obtain some form of permanent relief before being entitled to a fee award, and no other case cited by defendants provides such a rule.[1] For this reason alone, defendants' argument fails.

Additionally, as plaintiffs have shown, this case is controlled by the Eleventh Circuit's on-point decision in *Taylor*, 810 F.2d 1551, *reh'g en banc denied*, 816 F.2d 688 (11th Cir. 1987). (Mem. 10.) Rather than providing a rule requiring permanent relief, *Taylor* held: "The rule . . . is that a preliminary injunction on the merits, as opposed to a merely temporary order which decides no substantive issues but merely maintains the status quo, entitles one to prevailing party status and an award of attorney's fees." *Id.* at 1558. It also held that plaintiffs who win a preliminary injunction on the merits are entitled to fees even if they suffer a subsequent negative ruling in the case, as long as that ruling "[does] not vitiate plaintiffs' earlier success in obtaining prevailing party status *on the basis of the preliminary injunction.*" *Id.* at 1559 (emphasis added).

The reasoning of *Taylor* was reaffirmed by the Supreme Court in *Sole*, which held that the plaintiffs in that case were not prevailing parties because the preliminary injunction they won was superseded by an adverse ruling on the merits. 127 S.Ct. 2188, 2195-96 (2007). *Sole* emphasized that it was "of controlling importance to [the Court's] decision, [that] the eventual ruling on the merits . . . superseded the preliminary ruling"—a statement on all fours with *Taylor*. *Id.* at 2195-96. In addition, it made clear that the Court "express[ed] no view on whether,

---

[1] *Doe v. Busbee*, 684 F.2d 1375 (11th Cir. 1982), is distinguishable because the Eleventh Circuit held plaintiffs were granted a preliminary injunction based on a "mistake in law." *Taylor*, 810 F.2d at 1558.

1

in the absence of a final decision on the merits of a claim for permanent injunctive relief, success in gaining a preliminary injunction may sometimes warrant an award of counsel fees." *Id.* at 2191.

However, *Taylor* sets forth the Eleventh Circuit's binding view that the rule in this Circuit is that plaintiffs who win a preliminary injunction on the merits are prevailing parties, even if they do not secure additional relief, provided the injunction is not vitiated or superseded by a subsequent negative ruling on the merits.[2] In this case, defendants do not dispute—nor could they—that the Court's 48-page preliminary injunction order resolving each of plaintiffs' constitutional claims was granted on the merits. Furthermore, it is beyond dispute that the order was never vitiated or superseded by a subsequent ruling. Thus, plaintiffs are prevailing parties.

Moreover, defendants cannot distinguish *Taylor* on the bogus claim that "the amendment of the challenged laws" in that case "afforded the plaintiffs the *precise relief* they had sought" and "*perpetuated the relief* initially afforded by the preliminary injunction." (Opp. 6) (emphasis added). This description of what happened in *Taylor* is simply inaccurate. The plaintiffs in *Taylor* sought to enjoin a city ordinance imposing a solicitation permit requirement on the Unification Church's *outdoor* solicitations. *Id.* at 1556. The district court granted a preliminary injunction on the merits suspending the permit requirement for both *outdoor and indoor* solicitations. *Id.* at 1557. On summary judgment, the court held the ordinance unconstitutional only with respect to *indoor* solicitation, and found "there had been no discrimination by the City in its permit requirement for *outdoor* solicitation." *Id.* at 1555 (emphasis added). Subsequently, the city amended its ordinance by removing the *indoor* solicitation permit requirement but continued to regulate *outdoor* solicitation, and the case was dismissed as moot. *Id.*

In appealing plaintiffs' fee award, the city argued plaintiffs were not prevailing parties because "*final* relief did not yield a victory for plaintiffs on the merits." *Id.* The Eleventh Circuit flatly rejected the argument, explaining that plaintiffs were prevailing parties because

---

[2] *Police Violence*, 520 F.3d 226 (3rd Cir. 2008), which does not control this case, is entirely consistent with *Taylor* and *Sole*. It affirmed an award of fees for plaintiffs that won a preliminary injunction that was mooted when the challenged law was amended. *Id.* at 228-29. Although the Third Circuit observed that the amended law provided plaintiffs with "virtually"—but not completely—all of the relief they sought on an enduring basis, it never held or even implied that such enduring relief was a prerequisite to prevailing party status for winning a preliminary injunction. *Id.* at 234.

2

during the "26 month period [that the injunction was in effect] the plaintiffs were able to solicit donations in Fort Lauderdale without a permit." *Id.* at 1557. This reasoning applies with equal force in the present case, and compels the conclusion that plaintiffs are prevailing parties because during the approximately 22-month period their injunction was in effect, they were able to register voters across Florida without fear of government fines. (Mem.10.)[3]

Apparently acknowledging that the controlling force of *Taylor* dooms their argument, defendants half-heartedly suggest that the Court should declare it "no longer operative precedent" after *Sole* and *Buckhannon*, (Opp. 8 n.7), or find it distinguishable. (*Id.* 6.) Yet even if they were correct that these cases somehow weakened *Taylor* (which they do not), the Court remains bound—as does the Court of Appeals—to follow *Taylor*. *See Garrett v. University of Alabama at Birmingham Bd. of Trustees*, 344 F.3d 1288, 1292 (11th Cir. 2003) ("Without a *clearly contrary* opinion of the Supreme Court or of this court sitting en banc, we cannot overrule a decision of a prior panel of this court.").[4]

Defendants also cannot rely on *Texas State Teachers Ass'n v. Garland Indep. School Dist.*, 489 U.S. 782, 791-92 (1989), which held that a prevailing party must have "succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit,'" and achieved "a material alteration of the legal relationship of the parties." (Opp. 4.) Plaintiffs clearly meet this standard; they succeeded on their core constitutional claims against the 2005 Act and secured an injunction that lasted approximately 22 months. Moreover, the resulting 2007 Act which mooted the claims in plaintiffs' original complaint forever eliminated the 2005 Act's political party exemption and strict liability provision, reduced the various fines that could be imposed on plaintiffs to one-tenth or one-fifth their original amount, and imposed a new $1,000 annual cap on fines.

---

[3] There is no evidence in *ACLU of Florida, Inc. v. Polk County*, 2006 WL 2147716, at *3 (M.D. Fla. July 28, 2006), that plaintiffs in that case "sought relief only for a discrete period of time," (Opp. 8 n.6), and defendants fail to distinguish it on that ground. Rather, *ACLU* squarely supports plaintiffs' argument. While the *ACLU* plaintiffs secured an order allowing them to temporarily erect holiday displays in a free speech zone on county property without having to comply with certain challenged application requirements, they ultimately lost their right to erect the displays when the county entirely eliminated the zone and mooted plaintiffs' case. *Id.* In awarding plaintiffs' fees, the court rejected the county's argument—similar to defendants' argument here—that plaintiffs did not prevail because "the suit was ultimately detrimental to Plaintiffs." *Id.* The court stated it "[did] not find Defendant's argument to be persuasive, or even relevant; Plaintiffs status as a prevailing party [was] based entirely on the material change in the legal relationship between the parties resulting from the stipulated order." *Id.*

[4] *Taylor* emphasized that it reached its result without recourse to the catalyst rule rejected in *Buckhannon*, *Taylor*, 810 F.2d at 1560. *Sole* reaffirmed *Taylor* (as shown above), and the Eleventh Circuit reaffirmed *Taylor* in *Wyner v. Struhs*, 179 Fed. Appx. 566, 568 (11th Cir.), *rev'd on other grounds*, *Sole*, 127 S.Ct. 2188.

3

Defendants also argue that plaintiffs are not prevailing parties based on their oft-repeated, false statement that plaintiffs have failed to succeed on any of their claims in this case. Defendants contend that this purported failure is shown by the decision of some (but not all) plaintiffs to file a new lawsuit challenging the 2007 Act, (Opp. 4), in which it was argued that the 2007 Act "leaves in place the essential features of the original unconstitutional law" (Opp. 3) and that without a new injunction plaintiffs "will be back where they were before initiating the prior case." (Opp. 1.) Defendants' argument is meritless.

As an initial matter, the Eleventh Circuit's on-point, controlling decision in *Church of Scientology Flag Service Org., Inc. v. City of Clearwater*, 2 F.3d 1509, 1511-12 (11th Cir. 1993), *cert. denied*, 513 U.S. 807 (1994), squarely refutes defendants' argument. *Church of Scientology* reversed a district court's denial of attorneys' fees to a plaintiff that had initially won a permanent injunction against an unconstitutional ordinance but, after the ordinance was amended, lost a subsequent constitutional challenge to the amended ordinance. 2 F.3d at 1511-12. Like the defendants argue in this case, the district court reasoned that the plaintiff "had not 'prevailed' because, *inter alia*, its rights were not vindicated as a result of its lawsuit." *Id.* at 1512. The Eleventh Circuit disagreed, explaining:

> [I]t is inappropriate to deny 'prevailing party' status merely because Scientology's pleadings in challenging the amended 1984 Ordinance alleged the same or similar constitutional defects as its earlier action. Scientology's challenges were addressed to new features of the amended ordinance, as well as old features carried over from the [original] 1983 Ordinance. The fact that Scientology may (or may not) ultimately prevail in those challenges has little do with the question of whether it prevailed in challenging the repealed provisions of the 1983 Ordinance. Scientology did not fail when Clearwater ceased some of its challenged discriminatory conduct merely because the city persisted in other challenged conduct. For this reason, *the fact that Scientology challenges the 1984 Ordinance as invalid is irrelevant [and]... does not mean that it did not 'prevail' as a threshold matter.*

*Id.* at 1514 (emphases added). *Accord Johnson v. Mortham*, 950 F. Supp. 1117, 1121 (N.D. Fla. 1996) (awarding fees where plaintiffs "fully succeeded" in suit to strike down original redistricting plan but objected to redrawn district). Under *Church of Scientology*, it would be clearly erroneous for the Court to deny plaintiffs prevailing party status on defendants' discredited argument.

4

Second, defendants' argument fails to acknowledge the Eleventh Circuit's determination in this case that the 2007 Act "substantially" amended the 2005 Act such that "the law preliminarily enjoined no longer exists in its challenged form." (Order, Doc. 79.) In addition, this Court recently stated in denying plaintiffs' motion for a preliminary injunction in the new lawsuit, *League of Women Voters of Florida v. Browning* ("*LWVF II*"), that the "significant changes" made to the 2005 Act "[t]aken together . . . address the constitutional infirmities of the [2005 Act] identified in *LWVF I*, and as a result, substantially reduce[d] the alleged burdens imposed on Plaintiffs' First Amendment rights." 2008 WL 3200654, at *23-24 (S.D. Fla. Aug. 6, 2008).[5] These two decisions—which are effectively the "law of the case"—also clearly reject the core premise of defendants' objection to plaintiffs' fee request, i.e., that the 2007 Act somehow negated plaintiffs' victory.[6] Even defendants have conceded that "the 2007 Act eliminated the concerns on which Plaintiffs challenged [the 2005 Act]" and "fundamentally altered the framework of the [2005 Act]," (Defs'. Mot., Doc. 81-1); they cannot be heard to argue differently now.

## II. Plaintiffs' Motion Is Timely and There Are No Purported "Special Circumstances"

Defendants are incorrect that plaintiffs' motion is untimely because it was not filed within 30 days of the Court's preliminary injunction order. (Opp. 8.) Local Rule 7.3(A) states that a fee motion "shall be filed and served within thirty days of entry of a Final Judgment or other appealable order that gives rise to a right to attorneys fees and/or costs." The Court's order dismissing this case as moot finally resolved all claims and motions in the case (Order, Doc. 83), and thus should be considered a final judgment for the purposes of this fee motion. *Cf. Myers v. Sullivan*, 916 F.2d 659, 678-79 (11th Cir. 1990) (holding order of dismissal constituted final judgment for fee purposes under EAJA). Alternatively, as *Sole* makes abundantly clear, because plaintiffs' right to fees did not actually arise until the Court's final order dismissing this case as moot, that order is properly considered the relevant appealable order under Rule 7.3(A). 127 S.Ct. at 2195 (holding fee award unavailable where preliminary injunction "reversed,

---

[5] Defendants are incorrect in repeatedly describing the new lawsuit challenging the 2007 Act as involving the same plaintiffs asserting the same claims and injuries against the same law (as amended). (*E.g.*, Opp. 1, 3, 7.) Only three of the six plaintiffs in this case are plaintiffs in the new case, and the new case challenges a substantially different set of statutory provisions on a different set of legal theories—i.e., that the challenged provisions in the 2007 Act are unconstitutionally vague as well as burdensome, but not discriminatory. *LWVF II*, 2008 WL 3200654, at *13-14.

[6] To the contrary, the decision in *LWVF II* benefited plaintiffs by construing the 2007 Act in such a way as to cure the issues about which plaintiffs complained. In particular, it clarified the meaning of the term "affiliate" in the 2007 Act and thereby reduced the risk of fines greater than $1,000 for plaintiffs' statewide organizations. *Id.* at *18-19.

dissolved, or otherwise undone by the final decision in the same case"). Either way, since plaintiffs obtained within 30 days of the dismissal order another order extending their time to file, and they fully complied with that order, their motion is timely and defendants' argument is completely unavailing. (Order, Doc. 83; Order, Doc. 85; Pls' Mot., Doc. 86.)[7]

Defendants' untimeliness argument also fails because it does not cite a single case in which a court denied fees to a party that did not file their motion within 30 days of winning a preliminary injunction. To the contrary, in situations analogous to this case, courts routinely grant fee motions filed after a mooted case is dismissed. *See, e.g., Taylor*, 810 F.2d at 1555, *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 941 (D.C. Cir. 2005); *Watson v. County of Riverside*, 300 F.3d 1092, 1094 (9th Cir. 2002); *ACLU*, 2006 WL 2147716, at *3.[8]

Defendants are also incorrect that the lawsuit challenging the 2007 Act somehow constitutes "special circumstances" precluding a fee award. (Opp. 9.) As shown above, *Church of Scientology* precludes this argument. In addition, the Eleventh Circuit has held that the special circumstances exception to fee awards "should be construed narrowly" and generally applies in only four specific situations. *Love v. Deal*, 5 F.3d 1406, 1410 (11th Cir. 1993).[9] None are present in this case, defendants do not argue otherwise, and their argument fails. *Id.*[10]

### III. Plaintiffs' Fee Request Is Reasonable

Each of defendants' arguments that plaintiffs' fee request is not reasonable is wrong and should be rejected. First, defendants mistakenly rely on cases predating the Eleventh

---

[7] Defendants also wrongly assert that plaintiffs' motion is untimely because plaintiffs did not move for interim fees. (Opp. 8.) Moving for interim fees is clearly discretionary, not mandatory, *see* Cmt. Rule 7.3 (1999) ("A motion for fees and costs may be made before such a judgment or order has been entered where appropriate"), and such fees may not even have been appropriate in this case. *See Bradley v. Richmond Sch. Bd.*, 416 U.S. 696, 723 (1974) (holding interim fees appropriate when "[t]o delay a fee award until the entire litigation is concluded would work substantial hardship on plaintiffs and their counsel").

[8] Even if the Court determined plaintiffs' motion was untimely, which it is not, it should exercise its equitable power to entertain the motion both to effectuate the purposes of § 1988 and because defendants have not suffered, and do not argue they suffered, any prejudice. *See Morris v. Arizona Beverage Co., L.L.C.*, 2005 WL 5544961, at *8 (S.D. Fla. Feb. 9, 2005); *Borges v. City of West Palm Beach*, 1994 WL 397301, at *1 (S.D. Fla. Jun. 7, 1994).

[9] The four situations are: "(1) where the plaintiff's action asserted essentially a private tort claim for money damages, (2) where the plaintiff was not instrumental in achieving the remedy sought, (3) where plaintiffs challenged an antiquated, rarely enforced statute, and (4) where the plaintiff through a settlement or consent order agreed to compromise his right to pursue subsequent fees." *Love v. Deal*, 5 F.3d 1406, 1410 (11th Cir. 1993).

[10] Defendants' various ad hominem attacks on plaintiffs and their counsel, including regarding their motives for filing a new suit and in litigating on appeal (*e.g.*, Opp. 9, 11 n.10), are absolutely baseless, improper and should be disregarded. *See Bethel v. Town of Loxley*, 2006 WL 3449140, at *2 (S.D. Ala. Nov. 29, 2006) ("Ad hominem attacks in written filings in federal court are never acceptable."). Nonetheless, plaintiffs had every right to file a new suit, which they fully disclosed to the Court. (Pls.' Resp., Doc. 82; Order, Doc. 83.)

Circuit's 2003 amendment of its Rule 39-2 to argue that the Court has no authority to award plaintiffs any appellate fees. (Opp. 10.)[11] The 2003 amendment added Rule 39-2(e), which permits a prevailing party to seek appellate fees directly from a district court in certain circumstances. In particular, Rule 39-2(e) provides:

> When a reversal on appeal, in whole or in part, results in a remand to the district court for trial or other further proceedings (e.g., reversal of order granting summary judgment, or denying a new trial), a party who may be eligible for attorney's fees on appeal after prevailing on the merits upon remand may, in lieu of filing an application for attorney's fees in this court, request attorney's fees for the appeal in a timely application filed with the district court upon disposition of the matter on remand.

This language makes clear that the purpose of the rule is to permit a prevailing party that is ultimately successful on the merits of its case to recover appellate fees from a district court when the Court of Appeals does not fully resolve a case on appeal and sends it back to a district court for further proceedings. While the rule explicitly discusses perhaps the most common circumstance in which a case is sent back to a district court for further proceedings—reversal and remand—it should not be read restrictively but rather broadly. Such a reading is consistent with the purpose of § 1988 to provide incentives for private enforcement of civil rights laws, *Jonas v. Stack*, 758 F.2d 567, 569 (11th Cir. 1985), and "the Eleventh Circuit's strong policy of resolving issues on the merits and not on procedural technicalities." *Morroni v. Gunderson*, 169 F.R.D. 168, 171 (M.D. Fla. 1996). Although the panel's order dismissing the appeal as moot did not formally result in a reversal and remand, the net effect was the same: the panel clearly rejected defendants' argument that it should vacate the preliminary injunction order "without the need for further proceedings" (Appellants' Suggestion, Doc. 92-2), and sent the case back to the Court where the parties engaged in additional motion practice before the case was finally resolved.[12]

Second, because defendants admit that they fail to "object[] to each [billing entry] individually" and instead offer only "examples" of purportedly "unreasonable billing," (Opp.

---

[11] In addition, *Simpleville Music v. Mizell*, 511 F. Supp. 2d 1158 (M.D. Ala. 2007), fails to address Rule 39-2(e).

[12] Defendants wrongly conclude that plaintiffs did not prevail on appeal. (Opp. 11.) Defendants requested that the Eleventh Circuit dismiss their appeal as moot and vacate the district court's order. (Appellants Suggestion, Doc. 92-2.) Plaintiffs responded that defendants' motion to dismiss and for vacatur should be denied as premature or, in the alternative, treated as a motion to withdraw the appeal and granted. (Pls.-Appellees' Opp., Doc. 92-3.) The Court of Appeals ultimately agreed with plaintiffs and did not vacate the district court's order, thereby preserving the preliminary injunction decision. (Order, Doc. 79.)

7

13), the Court should accept all of the hours as to which the defendants have not made a specific objection. *See Wales v. Jack M. Berry, Inc.*, 192 F. Supp. 2d 1313, 1320-1321 (M.D. Fla. 2001) (stating that "a fee opponent's failure to explain exactly which hours he views as unnecessary or duplicative is generally viewed as fatal").[13] For this reason alone, the Court should reject out-of-hand defendants' improperly sweeping argument that plaintiffs' "overall request" for reimbursement for a "total of 1,742 hours for this case" is unreasonable. (Opp. 15.)[14] It should also reject defendants' objections because, while plaintiffs rely on their expert's detailed line-by-line analysis to show the reasonableness of their hours, defendants offer no expert evidence whatsoever, let alone even a lay witness line-by-line analysis. (Aff., Doc. 86-8.) Defendants' shoot-from-the-hip arguments are wholly insufficient.

Third, defendants are wrong that plaintiffs cannot seek fees for time spent on the litigation prior to when retainer agreements were signed. (Opp. 11.) *See Dowdell v. City of Apopka*, 698 F.2d 1181, 1188 (11th Cir. 1983) (rejecting as "disingenuous" argument that "plaintiffs' attorneys should not have been compensated for hours invested 'prior to the lawyer-client relationship'"). Plaintiffs' fact gathering, witness interviewing and legal research properly began months before any retainer agreements were signed, and is compensable. (Mem. 4.)[15] For example, plaintiffs are entitled to reimbursement for Ms. Weiser's time spent on 11/28/05 "draft[ing] list of fact questions for client," (Doc. 86-4), and Mr. Siegel's time spent on 1/10/06 "[i]nterview[ing] leadership of FL AFL-CIO about voter registration activities." (Doc. 86-9.)[16]

---

[13] Although plaintiffs reply to defendants' general arguments here, they are prepared to provide additional factual detail at the requested hearing to more fully respond to defendants' objections to plaintiffs' hours, rates and costs.

[14] *Gundlach v. National Ass'n for Advancement of Colored People, Inc.*, 2005 WL 2012738 (M.D. Fla. Aug. 16, 2005), offers no basis whatsoever to reduce the lodestar in this case because counsel's outrageously sparse time records in that case, coupled with his claim that he was too busy to document his work and submission of obviously inappropriate billing items, bears absolutely no resemblance at all to this case. Similarly, *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994), is inapposite because in that case, unlike here, the prevailing party improperly grouped together billing records for different legal services, "thereby making it difficult to determine the exact number of hours undertaken in the present case."

[15] *See also Webb v. Board of Educ.*, 471 U.S. 234, 243 (1985) (stating compensable activities may include "services performed before a lawsuit is formally commenced," such as "drafting of the initial pleadings and the work associated with the development of the theory of the case"); *ACLU of Georgia v. Barnes*, 168 F.3d 423, 436 (11th Cir. 1999) (stating compensable activities may include "[i]nterviews, correspondence, and meetings with a potential plaintiff [that] may yield factual information which will be utilized in pursuing the litigation").

[16] Defendants' suggestion that fee awards are inappropriate in pro bono cases is meritless. (Opp. 11.) Contingency fee arrangements between civil rights plaintiffs and pro bono counsel, like those in this case, have long been "normal and customary," *Perry v. Golub*, 1980 WL 298, at *26 (N.D. Ala. Dec. 16, 1980), and courts have long held that fees for pro bono counsel are often "essential." *M.O. Sims v. Amos*, 340 F. Supp. 691, 695 (M.D. Ala. 1972).

Finally, plaintiffs' counsels' time spent: (i) researching and writing the detailed, 42-page complaint was reasonable and not duplicative;[17] (ii) conferring by phone to strategize, coordinate research and avoid duplication, is properly compensable (Mem. 16 n.15); (iii) attending the July 2006 hearing was reasonable since Mr. Siegel, Ms. Walter and Ms. Weiser examined witnesses, Ms. Westfall coordinated Supervisor Ion Sancho's appearance and was available to lend her expertise on Florida's voter registration system and help cross-examine defendants' witnesses, and Ms. Paradis analyzed state voter registration data and created 8 detailed charts admitted into evidence (*Id.* 15-17); and (iv) attending the August 2006 hearing was reasonable because, contrary to defendants' assertion (Opp. 15), Mr. Siegel and Ms. Walter extensively participated in the proceedings, along with Ms. Weiser. (Tr., Doc. 56.)[18]

### IV. Plaintiffs' Costs Are Reasonable

Defendants' suggestion that plaintiffs may not be entitled to reimbursement of their computerized research costs is wrong (Opp. 19); such costs are normally reimbursed under § 1988. *See Terry Properties, Inc. v. Standard Oil Co.*, 799 F.2d 1523, 1540 (11th Cir. 1986). The various researchers included associates, summer associates, paralegals and library staff who conducted reasonable and non-duplicative research generally directed by Mr. Siegel and Ms. Walter. Kramer Levin has written off time for 24 of the timekeepers, but seeks reimbursement of its out-of-pocket research expenditures for all timekeepers. Reliance on these researchers significantly reduced Mr. Siegel's and Ms. Walter's billable hours for this case. Additionally, plaintiffs' counsels' (i) FedEx charges were for reasonable and customary shipments of legal documents to the Court, local counsel, and counsels' Miami hotel during the hearings, (Docs. 86-11); and (ii) printing/copying charges are supported by detailed invoices. (*Id.*)

Defendants also err in arguing that travel costs should be excluded because "the hiring of out-of-state counsel was unnecessary." (Opp. 20.) In *Johnson v. University College of the Univ. of Alabama*, the Eleventh Circuit actually reversed the district court's decision not to award fees for out-of-town counsels' travel time. 706 F.2d 1205, 1207-08 (11th Cir. 1983). Additionally, out-of-town travel and hotel expenses are routinely reimbursed under § 1988,

---

[17] For example, on 5/1/06 Mr. Siegel revised the complaint to "incorporate[] new information from the AFL and LWV", (Doc. 86-9), and on 4/19/06 Ms. Paradis added "PACT, AFSCME sections to complaint." (Doc. 86-3.)

[18] No reduction in the lodestar is appropriate regarding plaintiffs' immaterial damages claim; plaintiffs' counsel endeavored to exclude the de minimis time on this issue from its fee request. Moreover, defendants misrepresent the entry regarding a conference with an economist, which related not to seeking damages from defendants but to assessing the effect of financial penalties on voter registration organizations. (Opp. 18 n.25.)

*Dowdell*, 698 F.2d at 1191-92, and the Court may exclude "out-of-town counsel's travel time . . . only if it was unreasonable not to hire qualified local counsel." *Johnson*, 706 F.2d at 1208. In this case, it was entirely reasonable for plaintiffs to hire its chosen counsel because (i) they have extensive, complementary expertise litigating First Amendment and election law cases (Mem. 14-15); (ii) they were willing to represent plaintiffs pro bono (*Id.* 13 n.8); and (iii) defendants similarly found it reasonable to hire out-of-town counsel and pay their travel expenses. *See Wales*, 192 F. Supp. 2d at 1324, 1332 (reimbursing travel time and costs to Washington, D.C.-based pro bono counsel where local counsel was available).

Finally, Ms. Weiser and Ms. Paradis each incurred an identical $1,035 hotel bill from 7/23/06 to 7/27/07, both bills were paid with one credit card for which one receipt is attached to Ms. Paradis' declaration, but Ms. Weiser and Ms. Paradis separately seek reimbursement for their respective costs. (Docs. 86-3, Doc. 86-4.) Ms. Walter's $250.81 dinner bill on 7/23/06 was for a dinner/witness preparation and strategy session with client Aaron Dorfman and Mr. Siegel, Ms. Paradis and two Kramer Levin associates, on the eve of the 7/25/06 hearing. (Doc. 86-5.)[19] Ms. Walter's $700.97 charge reasonably included $258.77 for a hotel room for the 8/3/06 hearing, $133.48 in business phone calls to Kramer Levin's offices, and $39.89 for a meal on 8/3/06. (Doc. 86-5.)[20] Ms. Walter's travel expenses to Orlando were for a 9/14/07 League of Women Voters of Florida board meeting that included a presentation by Ms. Walter and Mr. Siegel, and an in-depth discussion about how to proceed with this case. In addition, the receipts for Mr. Siegel's costs were inadvertently omitted from his declaration due to a clerical error, and are attached to his August 22, 2008 supplemental declaration accompanying this reply memorandum.

## Conclusion

Plaintiffs' motion for an award of fees and costs should be granted in its entirety.[21]

---

[19] Since Kramer Levin wrote off the billable time and travel costs of the two associates, Mr. Landman and Ms. Groendyke, it is willing to withdraw the pro rata cost of the dinner for them too.

[20] Kramer Levin also is willing to write off the $237.38 cost for dinner on 8/2/06 that constitutes part of Ms. Walter's $700.97 charge. Although Mr. Siegel and Ms. Walter recollect that others attended the dinner, they cannot specifically recall who attended. Upon information and belief, Ms. Walter's phone costs reflect rates typically charged by hotels for in-room calls.

[21] The Court should deny defendants' request to bifurcate any hearing as burdensome, unnecessary and unprecedented.

Dated: August 22, 2008

Respectfully submitted,

BECKER & POLIAKOFF, P.A.

By: /s Gary C. Rosen
    Gary C. Rosen, Esq.
    Florida Bar No. 310107
    3111 Stirling Road
    Ft. Lauderdale, Florida 33312
    (954) 985-4133

Elizabeth S. Westfall
Advancement Project
1730 M Street, NW, Suite 910
Washington, DC 20036
(202) 728-9557

Eric A. Tirschwell
Craig L. Siegel
Amy Weiner
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

Wendy R. Weiser
The Brennan Center for Justice
161 Avenue of the Americas, 12th Fl.
New York, New York 10013
(212) 998-6730

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 22, 2008, I caused to be electronically filed a true and correct copy of the Plaintiffs' Reply Memorandum Of Law In Support Of Their Verified Motion For An Award Of Attorneys' Fees And Costs with supporting declaration using CM/ECF. I also certify that the foregoing documents are being served this day on all counsel of record identified below by transmission of Notices of Electronic Filing generated by CM/ECF.

Peter Antonacci
pva@gray-robinson.com

Allen Winsor
awinsor@gray-robinson.com

GRAYROBINSON, PA
Post Office Box 11189
Tallahassee, Florida 32302-3189
Telephone: (850) 577B9090
Facsimile: (850) 577B3311

*Attorneys for Defendants*
*Kurt S. Browning and Donald L. Palmer, in their official capacities*

                                                                    s/Gary C. Rosen
                                                                    Gary C. Rosen