UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 06-21265-CIV-SEITZ/O'SULLIVAN

LEAGUE OF WOMEN VOTERS OF FLORIDA;
PEOPLE ACTING FOR COMMUNITY TOGETHER
(PACT); FLORIDA AFL–CIO; AMERICAN
FEDERATION OF STATE, COUNTY AND LOCAL
EMPLOYEES, COUNCIL 79 (AFSCME); SEIU
FLORIDA HEALTHCARE UNION, as organizations
and as representatives of their members; MARILYN
WILLS; and JOHN and JANE DOES 1–100,

   Plaintiffs,

v.

KURT S. BROWNING, in his official capacity as
Secretary of State for the State of Florida; and
DONALD PALMER, in his official capacity as
Director of the Division of Elections within
the Department of State for the State of Florida,

   Defendants.
_____

**DEFENDANTS' SUR-REPLY IN OPPOSITION TO PLAINTIFFS'**
**VERIFIED MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**

  Pursuant to this Court's Order of September 26, 2008 (doc. 99), Defendants Kurt S. Browning, in his official capacity as Secretary of State for the State of Florida, and Donald Palmer, in his official capacity as Director of the Division of Elections, submit this sur-reply in opposition to Plaintiffs' Verified Motion for an Award of Attorneys' Fees and Costs (doc. 86).

**I.     This Court's Recent Decision Denying Plaintiffs' Motion for Preliminary Injunction Undermines Counsel's Request for Nearly $800,000 in Fees and Costs in this Case.**

In this case, Plaintiffs asserted that the original challenged law was unconstitutional and that it prevented them from conducting their First Amendment activities. After the law was amended, they repeatedly said the same about the new law. (*E.g.*, Doc. 82 at 4.) They re-filed their challenge and asked this Court to enter a new preliminary injunction based on essentially the same legal arguments presented earlier. While Plaintiff's fee motion in this case was pending, the Court issued a 48-page order denying Plaintiffs' Motion for Preliminary Injunction in the re-filed case. (Case No. 08-21243 ("*LWV II*", Doc. 80)).[1] This recent decision substantially informs the analysis of Plaintiffs' current request for nearly $800,000 in fees and costs.

   **A.     The Intervening Decision Demonstrates that Plaintiffs in this Case Are Not Prevailing Parties.**

In their preliminary injunction motion in *LWV II*, Plaintiffs insisted that without injunctive relief, they "will be back where they were before initiating the prior case: with their constitutionally protected voter registration activities chilled—indeed, completely shut down—to avoid being subject to . . . an unconstitutional burden upon the exercise of their core political speech and association." (*LWV II*, Doc. 24 at 9.) This Court has now denied their request, so by Plaintiffs' own admission, they are "back where they were before initiating the prior case." "That is not the stuff of which legal victories are made." *Hewitt v. Helms*, 482 U.S. 755, 760 (1987).

In the face of this Court's recent order in *LWV II*, Plaintiffs' Counsel now recharacterize their purported victory. No longer contending they "won all of the relief they sought," as they did in their motion for fees, (doc. 86 at 9), Plaintiffs' Counsel now contend that they prevailed in "forever eliminatin[ing] the 2005 Act's political party exemption and strict liability provision, [and] reduc[ing] the various fines that could be imposed on plaintiffs." (Doc. 94 at 3.) But these supposed victories result in no actual benefit to Plaintiffs. Eliminating the political party exemption does not free Plaintiffs from regulation; it simply imposes regulation on other non-parties. Plaintiffs informed this Court that if the new law were not enjoined, they would "cease all of their voter registration efforts." (*LWV II*, Doc. 24 at 13.) They cannot now credibly claim that the imposition

---

[1] The *LWV II* decision denying Plaintiffs' Motion for Preliminary Injunction was filed in this case as Document 96-2.

of regulation on others will benefit them.[2]  Likewise, the amended law's reduced fines afford Plaintiffs no actual benefit—at least, not if Plaintiffs are to be believed.  Plaintiffs told this Court that they "cannot afford to risk accruing fines" even under the amended statute and that they would therefore completely shut down their voter registration drives.  *Id*.  Plaintiffs contended that the fines under the old law were sufficiently onerous to preclude their voter registration activities, and they said the same about the fines under the new law.  In *LWV II*, Plaintiffs argued that the reduced fines were of no consequence; now they tell this Court that the reduced fines entitle them to nearly $800,000 in fees and costs.  Plaintiffs' Counsel cannot have it both ways.[3]

      The issue is not—as Plaintiffs' Counsel contend—whether the new law is different from the old law.  This Court, the Eleventh Circuit, and all parties agree that the new law is different.  The issue is whether the new law provides Plaintiffs with any material benefit over the old law.  *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992) ("In short, a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.").  As explained above, it does not—because Plaintiffs are unable to engage in voter registration under the new law, just as they were under the old law.  As this Court explained in *LWV II*, Plaintiff League of Women Voters "has imposed a moratorium on voter registration drives that will continue until Amended Law is either enjoined or clarified."  (*LWV II*, Doc. 80 at 2.)  Likewise, Plaintiff Florida AFL-CIO "claims it has suspended voter registration drives in response to the Amended Law."  *Id.* at 3.  And the only other Plaintiff, Marilyn Wills "will not [register voters] now unless the Amended Law is enjoined or

---

[2] In *LWV II*, this Court analyzed the differences between the old and new laws.  "[P]erhaps most significantly, the Amended Law does not discriminate between the treatment of political parties and other third-party voter registration organizations.  In sharp contrast to the Original Law, the Amended Law is facially neutral." (*LWV II,* Doc. 80 at 42).  Thus, for constitutional purposes, the most significant change was the one that not only provides no benefit to Plaintiffs, but does not even affect the legal relationship between the parties.

[3] Responding to this Court's recent order, Plaintiffs' Counsel resort to noting that the original case included Plaintiffs that are not involved in the new case. (Doc. 94 at 5 n.5.)  The fee request, though, is for the attorneys, as the Plaintiffs have no obligation to pay their counsel's fees. (Doc. 86 at 13 n.8.)  Plaintiffs' Counsel may not avoid an adverse fee determination by nominally shuffling their Plaintiffs in and out of cases.  And at any rate, Plaintiffs' counsel informed this Court in *this* case—on behalf of *these* Plaintiffs—that the new law "leaves in place the essential features of the prior version of the law that interfered with plaintiffs' voter registration drives." (Doc. 82 at 3.)  (Plaintiffs' Counsel also now contend that their legal

clarified." *Id.*[4]  Indeed, Plaintiffs' decision to react to the new and old laws in precisely the same is entirely consistent with their contention that "the severity of the injury posed by the Amended Law is nearly identical to the danger posed by the Original Law." *Id.* at 38.  Simply put, a reduction in fines is of no benefit where the fines remain prohibitive.  Plaintiffs are not prevailing parties because—by their own admission—the new law provides them no actual benefit.

> B.  <u>Even if Plaintiffs Were Prevailing Parties, the Intervening Decision Demonstrates that the Victory Provided *De Minimis* Benefit to Plaintiffs.</u>

In their Motion, Plaintiffs' Counsel describe this Court's earlier preliminary injunction order as "a groundbreaking decision of national importance that plaintiffs' collection and submission of voter registration forms constitutes speech and association protected by the First Amendment." (Doc. 86 at 2.)  Even if that statement accurately characterized this Court's earlier decision, any "national importance" was eliminated by the Court's decision in *LWV II*.  In that case, this Court agreed with Defendants "that the collection and handling of voter registration applications is not inherently expressive activity." (*LWV II*, Doc. 80 at 36.)[5]  Consequently, Counsel's novel argument that Plaintiffs' collection and submission of voter registration applications constitutes protected speech has now been squarely rejected by this Court.[6]  Plaintiffs sought to be free from regulation altogether—including relief from "an arbitrary and unreasonable 10-day deadline" for submitting

---

reasoning in the two cases was different, but they represented to this Court in the more recent case that the new action "raises nearly identical issues" as the original case. (*LWV II*, Doc. 6.))

[4] This Court in *LWV II* denied all of the relief Plaintiffs sought.  Nonetheless, Counsel curiously contend that the denial of relief in *LWV II* actually *benefitted* them. (Doc. 94 at 5 n.6.)  They argue that the order provided Plaintiffs relief by clarifying the statute's reach.  *Id.*  Counsel again are too charitable in describing their legal accomplishments.  The Court fully rejected Plaintiffs' claims that the law required clarification, noting that the statute "could not be any plainer in defining who is and who is not" covered, that "there is no ambiguity as to precisely what conduct is prohibited by the legislation," and that the term "affiliate" (which Plaintiffs claimed was unconstitutionally vague) "has a common meaning or understanding that requires little more investigation than the use of a standard dictionary." (*LWV II*, Doc. 80 at 30-32.)

[5] The Court further noted:  "Undoubtedly, Plaintiffs' interactions with prospective voters in connection with their solicitation of voter registration applications constitutes constitutionally protected activity.  However . . . *the Amended Law does not place any direct restrictions or preconditions on those interactions.*"  *Id.* at 40 (emphasis added).

[6] It has since been rejected by another court as well.  *See Am. Ass'n of People With Disabilities v. Herrera*, --- F. Supp. 2d ---, No. 08-0702 JB/WDS, 2008 WL 4368941, *17 (D.N.M. Sept. 17, 2008) (concluding that regulation of third-party registration groups "does not directly impair or regulate speech" and that "the First Amendment is not invoked at all").

applications. (Doc. 86 at 2.) Instead, given this Court's decision in *LWV II*, Plaintiffs would be subject to the deadline, the fines, and every other component of the challenged law—if they chose to resume their activities. In short, to the extent Plaintiffs prevailed at all, they "asked for a bundle and got a pittance." *Farrar*, 506 U.S. at 121 (O'Connor, J., concurring). And "the appropriate fee in such a case is no fee at all." *Id.* at 122 (O'Connor, J., concurring).

**II.     Eleventh Circuit Rule 39-2 Does Not Apply to This Case.**

Plaintiffs' Counsel seek fees for their work on the appeal in this case, but they did not seek those fees from the appellate court. In their reply, Plaintiff's Counsel now argue that Eleventh Circuit Rule 39-2 permits this Court to award appellate fees in this circumstance. It plainly does not. That rule permits a party prevailing on appeal to later present his fee claim to the district court if he subsequently prevails. CA11 Rule 39-2(e). But this rule is expressly limited to situations "[w]hen a reversal on appeal . . . results in a remand to the district court for trial or other further proceedings," which is obviously not the case here. Wishfully rewriting the unambiguous rule—insisting that it should be ready "broadly"—Counsel argue that the rule's purpose is to defer a fee determination when "the Court of Appeals does not fully resolve a case on appeal." (Doc. 94 at 7.)

First, the rule says what it says, and there was no reversal or remand in this case. Neither this Court nor the Plaintiffs can simply ignore the rule's plain language. Second, even if Plaintiffs' Counsel were correct that the rule applied anytime the appellate court did not finally resolve the case on appeal, this decision plainly did. The Eleventh Circuit concluded that the appeal was moot. Mootness, of course, deprives a federal court of jurisdiction, so there was nothing else for this Court to do with respect to the claims on appeal.[7] Indeed, Counsel contend (albeit in presenting a different argument) that they prevailed at the point the case was dismissed as moot. (Doc. 94 at 6.) Third, the actual purpose of the rule is to prevent needless fee petitioning. For example, if a Plaintiff appeals an adverse summary judgment decision, and the appellate court remands for a trial, the Plaintiff may or may not ultimately prevail. He thus may or may not be entitled to appellate fees.[8]

---

[7] Plaintiffs' Counsel argue that the case was "sent back to the [District] Court where the parties engaged in additional motion practice before the case was finally resolved." (Doc. 94 at 8.) The pre-dismissal "additional motion practice" consisted solely of Defendants' motion to dismiss for mootness, predicated on the Circuit Court's decision. (Doc. 81.)

[8] The rule itself lists as examples: "reversal of order granting summary judgment, or denying a new trial." CA11 Rule 39-2(e). In these examples, the party prevailing on appeal has not yet prevailed in the case below.

4

In an election case involving the LOWV of Georgia, the Northern District of Georgia recently rejected the argument Counsel present here. In that case, the Eleventh Circuit dismissed an appeal, and Plaintiffs sought fees based on Rule 39-2. But because "that appeal did not result in 'a reversal on appeal' that 'result[ed] in a remand,'" the District Court did not award appellate fees. *Common Cause Georgia v. Billups*, Case No. 05-201, at 91 (N.D. Ga. Dec. 27, 2007) (attached as Exhibit A). The Court found that it lacked authority to award fees for appellate matters, and it therefore denied a request for approximately $90,000 in appellate fees. *Id.* at 93-94; *see also Lopez v. Rica Foods, Inc.*, 277 Fed. Appx. 931, 933 (11th Cir. 2008) ("An application for fees in this court should be filed with the clerk of this court. *See* 11th Cir. R. 39-2.").

**III.     The Costs Detailed in the Siegel Declaration Are Unreasonable.**

Like the entirety of Counsels' request for fees and costs, the expenses detailed in the Siegel declaration (doc. 94-2) are manifestly unreasonable. Siegel seeks costs for a trip to Florida for a "League of Women Voters Board presentation," without any explanation as to its reasonableness or necessity. His time records do not indicate that he even went. (Doc. 86-9 at 15.) His colleague, Ms. Walter, submitted costs requests for the same trip, likewise omitting any showing of reasonableness. (Doc. 86-5 at 11.)

The attachment to Mr. Siegel's declaration references costs associated with travel for witness Ion Sancho, but Plaintiffs' Motion for Fees and Costs makes no mention of that cost. (Doc. 94-2 at 4.) At any rate, the only documentation submitted to support it was a heavily redacted credit-card billing statement that does not show who provided the travel or any other details.

Perhaps the most unreasonable request is for Siegel's $1,573.28 four-night stay at Miami's Mandarin Oriental Hotel. (Doc. 94-2 at 23-24.) The Siegel declaration does not explain why four nights in a five-star hotel for a two-day hearing are reasonable or necessary. Nor does it explain why it was reasonable to incur more than $220 in telephone charges during that stay—not to mention $130 for "in-room dining," the $35 from the "private bar," or a $53 visit to the hotel's "Martini Bar." *Id.* "Section 1988 is not a relief Act for lawyers." *Farrar,* 506 U.S. at 122 (O'Connor, J., concurring) (marks omitted). Only reasonable travel costs can be awarded, and the expenses claimed in the Siegel declaration are not reasonable.

5

Respectfully submitted this third day of October, 2008.

/s/ *Allen Winsor*
ALLEN C. WINSOR
Florida Bar No. 016295
PETER ANTONACCI
Florida Bar No. 280690
GRAYROBINSON, P.A.
Post Office Box 11189
Tallahassee, Florida  32302-3189
  Phone:  (850) 577-9090
  Fax:  (850) 577-3311
email:  awinsor@gray-robinson.com
         pva@gray-robinson.com
*Attorneys for Secretary of State and Donald Palmer*

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served through the Court's CM/ECF system on all counsel or parties of record on the attached service list this third day of October, 2008.

/s/ *Allen Winsor*
Allen Winsor

6

## SERVICE LIST

### CASE NO. 06-21265-CIV-SEITZ/O'SULLIVAN

Gary C. Rosen
Becker & Poliakoff, P.A.
3111 Stirling Road
Fort Lauderdale, FL 33312
  Phone: (954) 985–4133

Elizabeth S. Westfall
Jennifer Maranzano
Estelle H. Rogers
Advancement Project
1730 M. Street, NW, Suite 910
Washington, DC 20036
  Phone: (202) 728-9557

Wendy R. Weiser and Renee Paradis
Brennan Center for Justice at
NYU School of Law
161 Avenue of the Americas, 12th Floor
New York, NY 10013
  Phone: (212) 998–6730

Eric A. Tirschwell
Craig L. Siegel
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
  Phone: (212) 715–9100

# 145086 v1