IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

Common Cause/Georgia,
League of Women Voters of
Georgia, Inc.,
The Central Presbyterian
Outreach and Advocacy
Center, Inc.,
Georgia Association of Black
Elected Officials, Inc.,
The National Association for the
Advancement of Colored
People (NAACP), through its
Georgia State Conference of
Branches,
Georgia Legislative Black Caucus,
Concerned Black Clergy of
Metropolitan Atlanta, Inc.,
Bertha B. Young, and
Eugene Taylor,

     Plaintiffs,

                          CIVIL ACTION FILE
v.                      NO.  4:05-CV-0201-HLM

Ms. Evon Billups, Superintendent
of Elections for the Board of

AO 72A

(Rev.8/82)

Elections and Voter Registration
for Floyd County and the City of
Rome, Georgia,
Tracy Brown, Superintendent of
Elections of Bartow County,
Georgia,
Gary Petty,
Michelle Hudson,
Amanda Spencer,
Ron McKelvey, and
Nina Crawford, Members of the
Board of Elections and
Registration of Catoosa County,
Georgia,
Judge John Payne, Superintendent
of Elections of Chattooga County,
Georgia,
Shea Hicks, Superintendent of
Elections for Gordon County,
Georgia,
Jennifer A. Johnson, Superintendent
of Elections for Polk County,
Georgia,
Individually and in their Respective
Official Capacities as Superintendents
or Members of the Elections Board
 in their Individual Counties, and
as Class Representatives, and

2

Karen Handel, individually and
in her official capacities as Secretary
of State of Georgia and Chair of the
Georgia Elections Board,

and

the State Election Board,

      Intervenor-Defendant.,

      Defendants.

## ORDER

This case is an action to have the photo identification ("Photo ID") requirement set forth in Senate Bill 84 ("The 2006 Photo ID Act") declared unconstitutional both on its face and as applied, and to enjoin its enforcement on the ground that it imposes an unauthorized, unnecessary, and undue burden on the fundamental right to vote of hundreds of thousands of registered Georgia voters, in violation of the Fourteenth and Twenty-Fourth Amendments to the federal

AO 72A

(Rev.8/82)

Constitution, the Civil Rights Act of 1964 (42 U.S.C.A. § 1971(a)(2)(A) and (a)(2)(B)), and Section 2 of the Voting Rights Act of 1965 (42 U.S.C.A. § 1973(a)).  The case is before the Court on Plaintiffs' Preliminary Motion for Attorney Fees and Expenses [234].

## I.    Background

On September 1, 2005, Plaintiffs filed this lawsuit. (Docket Entry No. 1.)  Plaintiffs initially asserted that the Photo ID requirement in the 2005 Amendment to O.C.G.A. § 21-2-417 (Act. No. 53) ("The 2005 Photo ID Act") violated the federal and Georgia constitutions, was a poll tax that violated the Twenty-Fourth Amendment and the Equal Protection Clause, unduly burdened the fundamental right

4

to vote, violated the Civil Rights Act of 1964, and violated Section 2 of the Voting Rights Act of 1965.

On September 19, 2005, Plaintiffs requested that the Court schedule a preliminary injunction hearing. (Docket Entry No. 2.) On that same day, the Court entered an Order scheduling a preliminary injunction hearing for October 12, 2005. (Order of Sept. 19, 2005.)

On October 6, 2005, Plaintiffs filed a formal Motion for Preliminary Injunction. (Docket Entry No. 23.) On October 7, 2005, former Secretary of State Cathy Cox and the State Election Board (the "State Defendants") filed a Motion to Dismiss Individual Capacity Claims. (Docket Entry No. 27.) On October 11, 2005, individual Plaintiff Tony Watkins filed a Stipulation of Dismissal Without Prejudice of his claims. (Docket Entry No. 29.) On October 12, 2005, Plaintiffs filed

5

their First Amendment to Complaint, which addressed the issue of standing for the organizational Plaintiffs. (Docket Entry No. 41.)

On October 12, 2005, the Court held a hearing with respect to Plaintiffs' Motion for Preliminary Injunction. (Oct. 12, 2005, Hr'g Tr.)  During the October 12, 2005, hearing, the parties presented evidence and arguments in support of their respective positions.  (Id.)

On October 18, 2005, the Court entered an Order granting Plaintiffs' Motion for Preliminary Injunction and finding that Plaintiffs had a substantial likelihood of success on their claims that the 2005 Photo ID Act unduly burdened the right to vote, and that the 2005 Photo ID Act constituted a poll tax.  (Order of Oct. 18, 2005.)  On October 19, 2005, the Court denied the State Defendants' Motion to Dismiss

6

Individual Capacity Claims.   (Order of Oct. 19, 2005.)

The State Defendants filed a Notice of Appeal from the October 18, 2005, Order.   (Docket Entry No. 52.)   On October 20, 2005, the Court denied the State Defendants' Motion to Stay Preliminary Injunction Pending Appeal. (Order of Oct. 20, 2005.)   The State Defendants then requested that the United States Court of Appeals for the Eleventh Circuit stay the Court's October 18, 2005, Order pending resolution of the appeal, as well as expedite the consideration and disposition of the appeal.  (Docket Entry No. 56.)  On October 27, 2005, the Eleventh Circuit denied the State Defendants' Motion to Stay the October 18, 2005, Order pending resolution of the appeal, but granted the request for expedited consideration and disposition of the appeal.  (Id.)

7

In January 2006, the Georgia General Assembly passed the 2006 Photo ID Act, which Governor Purdue signed into law.  The 2006 Photo ID Act eliminated the fee for obtaining a Photo ID card for voting purposes, and also made the Photo ID card for voting available at local registrars offices.

On February 23, 2006, Plaintiffs filed a Motion for Leave to File Second Amended Complaint.  (Docket Entry No. 79.)  In that Motion, Plaintiffs sought permission to amend their First Amendment to Complaint to assert claims that both the 2005 Photo ID Act and the 2006 Photo ID Act violated the Georgia Constitution, the federal Equal Protection Clause, the Fourteenth and Twenty-Fourth Amendments to the federal Constitution, the Civil Rights Act

of 1964, and Section 2 of the Voting Rights Act of 1965. (Id.)

On March 2, 2006, the Court held a telephone conference with counsel to discuss the issues relating to preclearance of the 2006 Photo ID Act by the United States Department of Justice ("DOJ"). (Docket Entry No. 82.) The Court stayed the proceedings in this case pending notification of the DOJ's decision concerning preclearance of the 2006 Photo ID Act. (Order of Mar. 2, 2006.)

On April 21, 2006, former Secretary of State Cox filed a Notice of Section 5 Preclearance of Act 432 (SB 84). (Docket Entry No. 83.)   On that same day, the Court entered an Order lifting the stay in this case, and setting forth a briefing schedule for Plaintiffs' Second Motion for Preliminary Injunction. (Order of Apr. 21, 2006.)   O n

9

April 26, 2006, Plaintiffs filed their Second Amended Complaint. (Docket Entry No. 85.) In count one of the Second Amended Complaint, Plaintiffs contended that the 2005 Photo ID Act and the 2006 Photo ID Act violated the Georgia Constitution. (Second Am. Compl. ¶¶ 85-88.) In count two of the Second Amended Complaint, Plaintiffs alleged that both the 2005 Photo ID Act and the 2006 Photo ID Act imposed an undue burden on the right to vote, in violation of equal protection of the law. (Id. ¶¶ 89-91.) In count three of the Second Amended Complaint, Plaintiffs contended that the 2005 Photo ID Act imposed an unconstitutional poll tax on the right to vote. (Id. ¶¶ 92-95.) In count four of the Second Amended Complaint, Plaintiffs alleged that the 2006 Photo ID Act was an unconstitutional poll tax on the right to vote if the 2006 Photo ID Act were

10

construed or applied to require a voter to pay a fee for a birth certificate or other documents to obtain a Voter ID Card. (Id. ¶¶ 96-97.) In count five of the Second Amended Complaint, Plaintiffs alleged that the 2005 Photo ID Act and the 2006 Photo ID Act both violated the Civil Rights Act of 1974, 42 U.S.C.A. §§ 1971(a)(2)(A) and 1971(a)(2)(B). (Id. ¶¶ 98-102.)   In count six of the Second Amended Complaint, Plaintiffs contended that the 2005 Photo ID Act and the 2006 Photo ID Act both violated Section 2 of the Voting Rights Act of 1965.  (Id. ¶¶ 103-106.)

On May 5, 2006, Plaintiffs filed a Motion to Revise Scheduling Order of April 21, 2006, pending the State Election Board's adoption of rules and regulations implementing the 2006 Photo ID Act, and pending DOJ preclearance of those rules and regulations.  (Docket Entry

11

AO 72A

(Rev.8/82)

No. 86.)  On that same day, the Court approved a Consent Order revising the briefing schedule for Plaintiffs' Second Motion for Preliminary Injunction to require Plaintiffs to file that Motion within ten days after the rules and regulations adopted by the State Election Board received preclearance from the DOJ.  (Order of May 5, 2006.)

On May 10, 2006, former Secretary of State Cox and the State Election Board filed a Motion to Dismiss Plaintiffs' Second Amended Complaint for Declaratory and Injunctive Relief in Part.  (Docket Entry No. 90.)  On May 25, 2006, Plaintiffs filed a Second Motion for Order to Certify Questions of State Law to the Georgia Supreme Court. (Docket Entry No. 94.)

On June 29, 2006, the Court entered an Order granting the Motion to Dismiss Plaintiffs' Second Amended

12

Complaint for Declaratory and Injunctive Relief in Part, dismissing Counts One and Three of Plaintiffs' Second Amended Complaint, as well as the portions of Counts Two, Five, and Six of Plaintiffs' Second Amended Complaint that challenged the 2005 Photo ID Act.  (Order of June 29, 2006.)  The Court observed that the Eleventh Amendment barred Plaintiffs' claims in Count One of their Second Amended Complaint that the 2005 Photo ID Act and the 2006 Photo ID Act violated the Georgia Constitution. (Id. at 5.)  The Court therefore dismissed those claims.  (Id.)  The Court dismissed the portions of Plaintiffs' Second Amended Complaint pertaining to the 2005 Photo ID Act as moot, reasoning that those challenges became moot when Georgia's General Assembly enacted the 2006 Photo ID Act to replace the 2005 Photo ID Act, and the State did not

13

AO 72A
(Rev.8/82)

intend to pursue the 2005 Photo ID Act or enforce its requirements. (<u>Id.</u> at 8-9.)  In that same Order, the Court denied Plaintiffs' Second Motion for Order to Certify Questions of State Law to the Georgia Supreme Court. (<u>Id.</u> at 9.)

After the Court's June 29, 2006, Order, only the following claims asserted in Plaintiffs' Second Amended Complaint remained pending: (1) Plaintiffs' contention, contained in count two of their Second Amended Complaint, that the 2006 Photo ID Act imposed an undue burden on the right to vote, in violation of the Equal Protection Clause, (Second Am. Compl. ¶¶ 89-91); (2) Plaintiffs' contention, contained in count four of their Second Amended Complaint, that the 2006 Photo ID Act was an unconstitutional poll tax if it were construed or applied to

14

require voters to pay a fee for a birth certificate or other documents to obtain a Georgia voter Photo ID card,  (id. ¶¶ 96-97); (3) Plaintiffs' contention, contained in count five of their Second Amended Complaint, that the 2006 Photo ID Act violated the Civil Right Act of 1964, as set forth in 42 U.S.C.A. §§ 1971(a)(2)(A) and 1971(a)(2)(B), (id. ¶¶ 98-102); and (4) Plaintiffs' contention, contained in count six of their Second Amended Complaint, that the Photo ID requirement violated Section 2 of the Voting Rights Act of 1965, 42 U.S.C.A. § 1973(a),  (id. ¶¶ 103-106).

On July 5, 2006, Plaintiffs filed their Second Motion for Preliminary Injunction.  (Docket Entry No. 108.)  Plaintiffs sought to have the 2006 Photo ID Act declared invalid, both on its face and as applied, and to enjoin its enforcement. (Id.)    Plaintiffs  contended  that  the  2006  Photo  ID  Act

15

imposed an unauthorized, unnecessary, and undue burden on the fundamental right to vote of hundreds of thousands of registered Georgia voters, in violation of article II, section I, paragraph 2 of the Georgia Constitution, the Fourteenth and Twenty-Fourth Amendments to the United States Constitution, the Civil Rights Act of 1964 (42 U.S.C.A. §§ 1971(a)(2)(A) and (a)(2)(B)), Section 2 of the Voting Rights Act of 1965 (42 U.S.C.A. § 1973(a)), and 42 U.S.C.A. §§ 1983 and 1988.  (Id.)  Plaintiffs requested that the Court enter a preliminary injunction that prohibited Defendants from: (1) enforcing or attempting to enforce or apply the 2006 Photo ID Act and the regulations issued by the State Election Board under that Act at any elections in Georgia; or (2) discouraging, interfering with, or preventing any person who is lawfully registered from voting in person in

16

any such elections, pending a final trial on the merits or a further Order from the Court. (Id.) Plaintiffs requested that the Court enjoin Defendants "and [that] all state or local election officials be further enjoined from making any public announcement or statements or other communications that advise registered voters or election officials in Georgia that registered voters may not cast a ballot in any election if the voter does not have one of the forms of photo identification specified in the 2006 Photo ID Act." (Id. at 2.) Plaintiffs also asked the Court to order and direct Defendants "to send prompt written notice to each of the 675,000 registered voters who have been identified by the Secretary of State as not having Georgia driver's licenses, informing them that they are not required to present photographic identification as a condition to being admitted to the polls or

17

allowed to vote and that they will not be discouraged, interfered with, or otherwise prevented from voting in person by defendants or other election officials on the ground that they are unable to present photographic identification to election officials at the polls." (Id. at 2-3.)

On July 7, 2006, the State Election Board filed a Motion to Dismiss Plaintiffs' Second Motion for Preliminary Injunction and to Cancel Hearing. (Docket Entry No. 113.) That Motion to Dismiss followed a temporary restraining order issued by the Superior Court of Fulton County, Georgia, on July 7, 2006, enjoining the defendants in that case from enforcing the 2006 Photo ID Act during the July 18, 2006, primary election or any resulting run-off election. Lake v. Perdue, Civil Action File No. 2006CV119207, slip op. at 3-4 (Fulton County Super. Ct. July 7, 2006.) The

AO 72A

(Rev.8/82)

plaintiffs in <u>Lake</u> had argued that the 2006 Photo ID Act violated the Georgia Constitution.

On July 10, 2006, following a telephone conference with counsel, the Court entered an Order indicating that the Court would postpone the July 12, 2006, preliminary injunction hearing in this case if the Supreme Court of Georgia entered an Order denying the <u>Lake</u> defendants' request to stay the temporary restraining order in that case prior to July 12, 2006. (Order of July 12, 2006.) The Court, however, deferred ruling on the Motion to Dismiss. (<u>Id.</u>)

On July 12, 2006, the Court held a hearing concerning Plaintiffs' Second Motion for Preliminary Injunction. (July 12, 2006, Hr'g Tr.) Near the conclusion of the hearing, counsel received information that the Georgia Supreme Court had denied the <u>Lake</u> defendants' request to stay the

19

temporary restraining order in that case, leaving the temporary restraining order in place for at least thirty days. (Id.)

At the conclusion of the July 12, 2006, hearing, the Court orally granted Plaintiffs' Second Motion for Preliminary Injunction to the extent that Plaintiffs contended that the 2006 Photo ID Act unduly burdened the right to vote, in violation of the Equal Protection Clause. (July 12, 2006, Hr'g Tr.) On July 14, 2006, the Court entered a written Order that formally set forth the Court's findings and conclusions concerning Plaintiffs' Second Motion for Preliminary Injunction. (Order of July 14, 2006.) The Court granted Plaintiffs' Second Motion for Preliminary Injunction solely with respect to the July 2006 primary elections and associated run-offs, reasoning that 2006 Photo ID Act

posed an undue burden on certain voters with respect to those elections. (Id.) The Court declined to extend the preliminary injunction to cover subsequent elections, reasoning that if the State Defendants continued their education efforts with respect to the 2006 Photo ID Act, the requirements of that Act might no longer prove unduly burdensome for voters in subsequent elections. (Id.)

In the July 14, 2006, Order, the Court found that Plaintiffs did not have a substantial likelihood of succeeding on the merits of their claim that the 2006 Photo ID Act constituted a poll tax. (Order of July 14, 2006, at 169-78.) Similarly, the Court concluded that Plaintiffs did not have a substantial likelihood of succeeding on the merits of their claim that the 2006 Photo ID Act violated the Civil Rights Act of 1964. (Id. at 179-87.) Finally, the Court found that

21

Plaintiffs did not have a substantial likelihood of succeeding on the merits of their claim that the 2006 Photo ID Act violated Section 2 of the Voting Rights Act. (Id. at 187-88.)

After the Court's July 14, 2006, Order, and after the Georgia Supreme Court's refusal to stay the temporary restraining order issued in the Lake case, the State Defendants stopped all of their attempts to educate voters concerning the 2006 Photo ID Act.  In early September 2006, the State Election Board voted to resume those educational efforts.

On September 5, 2006, the Court held a telephone conference with the parties to address Plaintiffs' concerns with respect to the educational efforts  and the application of the 2006 Photo ID Act to the September 2006 special elections.  (Docket Entry No. 136.)

22

On September 6, 2006, Plaintiffs filed their Motion for Hearing on Plaintiffs' Second Motion for Preliminary Injunction in Advance of the September 2006 special elections. (Docket Entry No. 137.) On September 14, 2006, the Court held its third preliminary injunction hearing in this case. (Sept. 14, 2006, Hr'g Tr.) At the conclusion of the September 14, 2006, hearing, the Court verbally granted Plaintiffs' request for a preliminary injunction with respect to the September 2006 special elections. (Id.)

On September 15, 2006, the Court entered an Order memorializing the reasons for the Court's September 14, 2006, ruling. (Order of Sept. 15, 2006.) The Court concluded that Plaintiffs had shown a substantial likelihood of succeeding on the merits of their claim that the 2006 Photo ID Act unduly burdened the right to vote, in violation

23

of the Equal Protection Clause.  (Id.)  The Court, however, concluded that Plaintiffs did not have a substantial likelihood of succeeding on the merits of their claims that the 2006 Photo ID Act constituted a poll tax, violated the Civil Rights Act of 1964, and violated Section 2 of the Voting Rights Act. (Id. at 40-42.)

On September 26, 2006, the State Defendants filed a Motion to Stay Proceedings Pending Resolution of Appeal of the Superior Court of Fulton County's Declaratory Judgment and Permanent Injunction to the Georgia Supreme Court.  (Docket Entry No. 144.)  On September 28, 2006, the Court granted that Motion.  (Order of Sept. 28, 2006.)

On June 11, 2007, the Georgia Supreme Court issued its decision in Perdue v. Lake, 647 S.E.2d 6 (Ga. 2007).  In

24

that decision, the Georgia Supreme Court concluded that the plaintiff in <u>Lake</u> lacked standing because she possessed a MARTA card that was acceptable for in-person voting under the 2006 Photo ID Act, and vacated the Fulton County Superior Court's determination that the 2006 Photo ID Act violated the Georgia Constitution. <u>Lake</u>, 647 S.E.2d at 8. On July 27, 2007, the Georgia Supreme Court denied a request for reconsideration by the plaintiff. (Docket Entry No. 151-3.)

On July 27, 2007, the State Defendants filed a Motion for Order Lifting Stay of Proceedings and Setting Trial on Merits. (Docket Entry No. 151.) On August 1, 2007, the Court granted that Motion. (Order of Aug. 1, 2007.) On August 2, 2007, the Court entered an Order directing the parties and their counsel to appear before the Court on

25

August 22, 2007, for a final trial on the merits.  (Order of Aug. 2, 2007.)

On August 13, 2007, Plaintiffs filed a Motion for Leave to Amend to Add Plaintiffs and to Reflect the Substitution of a Defendant.  (Docket Entry No. 159.)  Plaintiffs sought to amend their Second Amended Complaint to add new individual plaintiffs in light of the Georgia Supreme Court's finding that a MARTA card is an acceptable form of Photo ID for purposes of the 2006 Photo ID Act, the lone individual Plaintiff, Clara Williams, lacked standing to pursue this action because she had a MARTA card.  (Id.) Plaintiffs also sought to substitute the current Georgia Secretary of State, Karen Handel, for the former Georgia Secretary of State, Cathy Cox.  (Id.)  On August 14, 2007, the State Defendants filed a Motion to Dismiss Plaintiff Clara Williams

26

for Lack of Standing.  (Docket Entry No. 166.)

On August 16, 2007, counsel for Plaintiffs filed a new lawsuit challenging the 2006 Photo ID Act.  <u>Young v. Billups</u>, Civil Action File No. 4:07-CV-0163-HLM.  Plaintiffs sought to add the named plaintiffs in the <u>Young</u> case as individual Plaintiffs in this lawsuit.  On August 17, 2007, the <u>Young</u> Plaintiffs filed an Emergency Motion to Consolidate the <u>Young</u> case with the instant case.

On August 17, 2007, the Court entered an Order granting Plaintiffs' Motion for Leave to Amend, and allowed Plaintiffs to add Bertha B. Young and Eugene Taylor as individual Plaintiffs and to substitute current Secretary of State Karen Handel for former Secretary of State Cox. (Order of Aug. 17, 2007.)  The Court denied as moot the Emergency Motion to Consolidate the <u>Young</u> case with this

27

one.  (Id.)  On that same day, the Court granted the State Defendants' Motion to Dismiss Plaintiff Clara Williams for Lack of Standing, and dismissed Plaintiff Williams from this suit.  (Id.)

On August 23, 24, and 25, 2007, the Court held a bench trial in this case.  (Docket Entry Nos. 206, 207, 210.) Plaintiffs proceeded to trial only on their claim that the 2006 Photo ID Act unduly burdened the right to vote, in violation of the Equal Protection Clause.  On September 6, 2007, the Court entered an Order rejecting Plaintiffs' claim that the 2006 Photo ID Act unduly burdened the right to vote, and denying Plaintiffs' request for a permanent injunction with respect to that claim.  (Order of Sept. 6, 2007.)  Plaintiffs have appealed from this ruling.  (Docket Entry No. 235.)

On September 20, 2007, Plaintiffs filed a Preliminary

28

Motion for Attorney Fees and Expenses. (Docket Entry No. 234.) Plaintiffs seek attorneys' fees and expenses solely with respect to their expenses and work in connection with Plaintiffs' challenge to the constitutionality of the 2005 Photo ID Act. According to Plaintiffs:

> The plaintiffs are "prevailing parties" within the meaning of § 1988 because they received a court order enjoining the enforcement of the 2005 Photo ID Act. Rather than litigate this ruling to a final judgment, and in direct response to that ruling, the State repealed the 2005 Act and provided the plaintiffs with complete relief on many of the claims asserted in their original complaint.

(Id. at 2.) Plaintiffs seek a total of $229,814.50 in attorneys' fees, an amount that includes: (1) fees of $225,377.00 for work performed by attorneys and support staff with the law

29

firm of Bondurant, Mixson, & Elmore, LLP;[1] and (2) fees of

---

Attorney Bondurant has filed a declaration indicating that Bondurant, Mixson & Elmore, LLP seeks $223,252.50 in attorneys' fees, plus $2,030.00 in fees for work performed by paralegals and legal assistants, for a total of $225,282.50 in fees. (Decl. of Emmet J. Bondurant ¶¶ 8-9.)   Attorney Brackett, however, filed a declaration indicating that Bondurant, Mixson & Elmore, LLP seeks a total of $223,098.00.  (Decl. of David G.H. Brackett ¶ 11.)  The Court arrived at this $223,098.00 figure by subtracting $4,434.50, the amount that Attorney Brackett indicated Plaintiffs seek to recover for work performed by Attorney Hine's law firm, from the $227,532.50 total fees figure listed in Attorney Brackett's declaration.  (Id. ¶ 12.)

For the following reasons, however, the Court concludes that Attorney Brackett's declaration actually seeks $225,380.00 in attorneys' fees on behalf of Bondurant, Mixson & Elmore, LLP. First, although Attorney Brackett's declaration states that Plaintiffs seek $29,440.50 for 103.0 hours of work performed by Attorney Brackett during phase two of the litigation at an hourly rate of $285.00, 103.0 multiplied by $285.00 actually equals $29,355.00. (Brackett Decl. ¶ 11.)   Second, although Attorney Brackett's declaration states that Plaintiffs seek $14,908.00 for 28.4 hours of work performed by Attorney Bondurant during phase four of the litigation, at an hourly rate of $525.00, 28.4 multiplied by $525.00 actually equals $14,910.00.   (Id.)   Third, Attorney Brackett's declaration states that Plaintiffs seek $16,302.00 for 65.5 hours of work performed by Attorney Brackett at an hourly rate of $285.00 during phase six of the litigation; however, 65.5 multiplied by $285.00 actually equals $18,667.50.   (Id.)   Using the correct figures, the total amount of fees sought by Plaintiffs for work performed by Bondurant, Mixson & Elmore, LLP, as claimed in

$4,437.50 for work performed by the law firm of Edward

Hine, Jr., P.C.[2]  Plaintiffs also seek a total of $7,467.12 in

_____

Attorney Brackett's declaration, is $225,380.00.

Attorney Bondurant's declaration also is inconsistent with Attorney Brackett's declaration in another respect.   Attorney Bondurant's declaration indicates that Plaintiffs seek to recover for 96.3 hours of work performed by Attorney Brackett at an hourly rate of $325.00. (Bondurant Decl. ¶ 8.) Attorney Brackett's declaration, however, states that Plaintiffs seek to recover for 96.6 hours of work performed by Attorney Brackett at an hourly rate of $325.00. (Brackett Decl. ¶ 11.)  The Court uses the larger number set forth in Attorney Brackett's declaration.

[2]Attorney Hine has filed a declaration indicating that his law firm seeks a total of "$6,881.61" in attorneys' fees and expenses, including $4,200.00 in fees for 16.8 hours of work performed by Attorney Hine at an hourly rate of $250.00, $59.50 for 0.7 hours of work performed by a paralegal at an hourly rate of $85.00, and $375.00 for 55.0 hours of "Notebook Maintenance" at an hourly rate of $25.00.  The $375.00 figure appears to be a typographical error, as 55.0 hours multiplied by $25.00 equals $1,375.00, not $375.00. Further, the total of the fees and expenses listed in Attorney Hine's declaration, as originally printed, is $5,881.61, not $6,881.61. The Court presumes, however, that Attorney Hine actually seeks $6,881.61 in attorneys' fees and expenses.

The Court also observes that Attorney Hine's billing records reflect that he billed for 17.5 hours of work, rather than the 16.8 hours claimed in his Affidavit. (Decl. of Edward Hine, Jr. Ex. A.) Attorney Brackett's declaration also indicates that Plaintiffs seek to recover for 17.5 hours of work performed by Attorney Hine.

expenses, including: (1) $6,220.01 in expenses incurred by the law firm of Bondurant, Mixson & Elmore; and (2) $1,247.11 in expenses incurred by the law firm of Edward Hine, Jr., P.C.  Plaintiffs have clarified that they seek to recover attorneys' fees and expenses only from the State Defendants, rather than from the various local elections officials.  (Docket Entry No. 240.)

---

(Brackett Decl. ¶ 11.) Attorney Brackett's declaration also indicates that Plaintiffs seek to recover for 0.7 hours of work by Attorney Hine's paralegal, Dondra Mercer, at an hourly rate of $85.00. Attorney Brackett's declaration, however, does not expressly indicate that Plaintiffs seek to recover for the $1,375.00 "notebook maintenance" charge contained in Attorney Hine's declaration. The Court uses the hourly figure set forth in Attorney Brackett's declaration to determine the amount of attorneys' fees to award to Plaintiffs for Attorney Hine's work.  The Court therefore presumes that Plaintiffs seek to recover for 17.5 hours of work by Attorney Hine at an hourly rate of $250.00, plus 0.7 hours of work by Attorney Hine's paralegal, Dondra Mercer, at an hourly rate of $85.00, for a total of $4,437.50 in fees for work performed by Attorney Hine's law firm.

32

## II.   Discussion

### A.   Whether Plaintiffs May Recover Attorneys' Fees and Expenses

"In the United States, parties are ordinarily required to bear their own attorney's fees–the prevailing party is not entitled to collect from the loser." <u>Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Human Res.</u>, 532 U.S. 598, 602 (2001).  Under this "American Rule," courts "follow 'a general practice of not awarding fees to a prevailing party absent explicit statutory authority.'" <u>Id.</u> (quoting <u>Key Tronic Corp. v. United States</u>, 511 U.S. 809, 819 (1994)).  Courts apply an exception to this rule where a statute authorizes the award of attorneys' fees and expenses.  <u>Id.</u>   Courts, however, must narrowly construe such statutes.   <u>Sierra Club v. Hamilton County Bd. of</u>

County Comm'rs, No. 05-4437, 2007 WL 3024006, at *7 (6th Cir. Oct. 18, 2007) ("the courts have held that statutes awarding fees to the prevailing party in federal court are to be narrowly construed").

Here, 42 U.S.C.A. § 1988 allows the award of attorneys' fees to a "prevailing party" in an action filed under 42 U.S.C.A. § 1983.  Smalbein v. City of Daytona Beach, 353 F.3d 901, 904 (11th Cir. 2003) (per curiam).  Plaintiffs seek attorneys' fees under § 1988.

A plaintiff need not ultimately "prevail on each and every claim asserted" or "receive all the relief requested" to be considered a prevailing party.  Doe v. Busbee, 684 F.2d 1375, 1379 (11th Cir. 1982).  Instead, "[t]o qualify as a prevailing party, the plaintiff must obtain the primary relief sought in the case."  ACLU of Fla., Inc. v. Polk County, Fla.,

34

No. 8:05CV02266 T 17 TGW, 2006 WL 2147716, at * 2 (M.D. Fla. July 28, 2006); see also Doe v. Busbee, 684 F.2d at 1379 ("a line of Fifth Circuit cases has enunciated a test that a party has prevailed when he 'has succeeded on the central issue, as exhibited by the fact that he has obtained the primary relief sought'") (quoting Taylor v. Sterett, 640 F.2d 633, 669 (5th Cir. 1981)).  A civil rights plaintiff is a prevailing party if he "has succeeded on any significant issue in the litigation which has achieved some of the benefit the parties sought in bringing suit." ACLU, 2006 WL 2147716, at * 2.

"However, it is clear that a plaintiff may not claim status as a 'prevailing party' by virtue of any success during the course of a civil rights case." Doe v. Busbee, 684 F.2d at 1380.   For instance, "mere procedural victories are

35

insufficient to justify the award of attorney's fees." Id. Rather, "'[t]he touchstone of the prevailing party inquiry,' . . . is 'the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute.'" Sole v. Wyner, 127 S. Ct. 2188, 2194 (2007) (quoting Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792-93 (1989)).

The Supreme Court, however, has held that the definition of a prevailing party did not include a plaintiff whose lawsuit served as a "catalyst"–that is, a plaintiff who "failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved a desired result because the lawsuit brought about a voluntary change in the defendant's conduct." Buckhannon, 532 U.S. at 600. The Court reasoned that this "catalyst theory" allowed "an

award where there is no judicially sanctioned change in the legal relationship of the parties." Id. at 605. The Court further observed:

> A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change. Our precedents thus counsel against hold that the term "prevailing party" authorizes an award of attorney's fees without a corresponding alteration in the legal relationship of the parties.

Id.

After Buckhannon, for a plaintiff to be considered a prevailing party under § 1988, "there must be a 'court-ordered . . . material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees." Smalbein, 353 F.3d at 904 (quoting Buckhannon, 532 U.S.

37

at 604) (internal quotation marks omitted; omission in original).  Stated differently, "there must be: (1) a situation where a party has been awarded by the court 'at least some relief on the merits of his claim' <u>or</u> (2) a 'judicial imprimatur on the change' in the legal relationship between the parties." <u>Id.</u> at 905 (internal quotation marks omitted; emphasis in original).

Obtaining a preliminary injunction may suffice to make the plaintiff a prevailing party. <u>Sandusky County Democratic Party v. Blackwell</u>, 191 F. App'x 397, 399 (6th Cir. 2006) (per curiam); <u>see also</u> <u>Watson v. County of Riverside</u>, 300 F.3d 1092, 1096 (9th Cir. 2002) ("A preliminary injunction issued by a judge carries all the 'judicial imprimatur' necessary to satisfy <u>Buckhannon</u>."); <u>ACLU</u>, 2006 WL 2137716, at *3 ("a preliminary injunction that changes the

38

status quo and creates a material alteration in the legal relationship between the parties[] is sufficient to make plaintiff the prevailing party"); but see Yousuf v. Motiva Enters., LLC., No. 06-31097, 2007 WL 2538437, at *2 (5th Cir. Sept. 5, 2007) ("several circuits have determined that a preliminary injunction that merely preserves the status quo temporarily will not confer 'prevailing party' status on a party").   The Supreme Court, however, recently concluded that a plaintiff who initially obtains a preliminary injunction "does not qualify for an award of counsel fees under § 1988(b) if the merits of the case are ultimately decided against her." Sole, 127 S. Ct. at 2196.

In Sole, the plaintiff notified the Florida Department of Environmental Protection that she intended to create, on February 14, 2003, within a state park, an antiwar artwork

consisting of nude individuals assembled into a peace sign. 126 S. Ct. at 2189.    The Florida Department of Environmental Protection informed the plaintiff that her planned display would be lawful "only if the participants complied with Florida's 'Bathing Suit Rule,' which requires patrons of state parks to wear, at a minimum, a thong and, if female, a bikini top." Id.   On February 12, 2003, the plaintiff filed suit against Florida officials in a federal district court, challenging the "Bathing Suit Rule" on First Amendment grounds and seeking "immediate injunctive relief against interference with the peace sign display and permanent injunctive relief against interference with future activities similarly involving nudity." Id.

On February 13, 2003, the federal district court granted the plaintiff a preliminary injunction, "suggesting that a

40

curtain or screen could satisfy the interests of both the State and [the plaintiff]." <u>Sole</u>, 127 S. Ct. at 2189-90.   The plaintiff's peace symbol display occurred on the following day, but was set up outside a barrier. <u>Id.</u> at 2190.  "Once disassembled from the peace symbol formation, participants went into the water in the nude." <u>Id.</u>

The plaintiff subsequently pursued her claim for a permanent injunction, contending that she intended to stage another production involving nudity at the same state park on the following Valentine's Day. <u>Sole</u>, 127 S. Ct. at 2190. Following discovery, both the plaintiff and the defendants moved for summary judgment.   <u>Id.</u>  The district court ultimately granted the defendants' motion for summary judgment. <u>Id.</u>  The district court, however, concluded that the plaintiff still qualified as a prevailing party to the extent

41

that the plaintiff had obtained a preliminary injunction, even though the plaintiff ultimately did not prevail on the merits. Id. The United States Court of Appeals for the Eleventh Circuit affirmed the award of attorneys' fees. Id.

The Supreme Court reversed, observing:

Wymer is not a prevailing party, we conclude, for her initial victory was ephemeral. A plaintiff who "secur[es] a preliminary injunction, then loses on the merits as the case plays out and judgment is entered against [her]," has "[won] a battle but los[t] the war." Watson v. County of Riverside, 300 F.3d 1092, 1096 (CA 9 2002). We are presented with, and therefore decide, no broader issue in this case.

We express no view on whether, in the absence of a final decision on the merits of a claim for permanent injunctive relief, success in granting a preliminary injunction may sometimes warrant an award of counsel fees. We decide only that a

42

> plaintiff who gains a preliminary injunction does not
> qualify for an award of counsel fees under §
> 1988(b) if the merits of the case are ultimately
> decided against her.

Sole, 127 S. Ct. at 2196 (alterations in original).

Plaintiffs acknowledge that they ultimately lost their challenge to Georgia's Photo ID requirement on the merits. Plaintiffs, however, contend that they nonetheless are prevailing parties with respect to their challenge to the 2005 Photo ID Act.   In support of this contention, Plaintiffs primarily rely upon Joyce v. Potter, No. 5:06-cv-339-Oc-10GRJ, 2007 WL 2050955 (M.D. Fla. July 16, 2007).

In Joyce, the plaintiff was a United States Postal Service ("USPS") box delivery contractor who held two USPS contracts for delivering mail. 2007 WL 2050955, at *1. Although the plaintiff was not an employee of the USPS,

she personally performed one of the delivery contracts and employed a third party to perform the other contract. Id. In 1997, the plaintiff was the subject of a USPS investigation concerning alleged rifling of a package. Id. The USPS suspended the plaintiff for approximately one month during the investigation, but allowed her to regain access to the mail and to perform one of her contracts personally until June 30, 2006. Id. On June 30, 2006, the plaintiff received a letter from the USPS suspending her from access to the mail because she was the subject of an investigation. Id. The investigation underlying the suspension was the 1997 investigation. Id.

The plaintiff sent a letter to the USPS Inspector handling her suspension, explaining that she was cleared of any wrongdoing concerning the 1997 incident and was

reinstated after her 1997 suspension.  <u>Joyce</u>, 2006 WL 2050955, at *1.  According to the plaintiff, the USPS orally informed her that it would not grant her appeal of her suspension because her letter did not include the statement, "I hereby appeal."  <u>Id.</u>  The plaintiff sent a second letter contesting her suspension that included the statement, "I hereby appeal." <u>Id.</u> The USPS denied the plaintiff's appeal, and she filed suit in federal district court.  <u>Id.</u> at *1-2.

The court granted in part the plaintiff's motion for a preliminary injunction.  <u>Joyce</u>, 2006 WL 2050955, at *2. The court specifically enjoined the USPS to rescind its letter denying the plaintiff's appeal of her suspension, and directed the USPS to, among other things, consider the plaintiff's appeal <u>de novo</u>.  <u>Id.</u>

After the court entered its preliminary injunction, the

45

USPS reinstated the plaintiff's security clearance, and assured the plaintiff that the 1997 incident "did not and will not provide cause" for the USPS to deny the plaintiff a security clearance or a contract route. Joyce, 2007 WL 2050955, at *2-3. The USPS then moved to dismiss the plaintiff's case as moot. Id. at 3. The court ultimately granted the motion to dismiss the plaintiff's case as moot, concluding that the "action no longer presented a case or controversy under Article III." Id. The court reasoned that the USPS had remedied the plaintiff's alleged deprivations, and had provided the court and the plaintiff with sufficient assurances to convince the court that "there is no reasonable expectation that the alleged wrong in this case–the deprivation of the Plaintiff's liberty interest in reputation without due process of law due to the revocation

46

of her security clearance–will be repeated." Id. at *4.

The plaintiff later applied for attorneys' fees under the Equal Access to Justice Act. Joyce, 2007 WL 2059055, at *4. The court concluded that the plaintiff was a prevailing party, noting:

> the voluntary actions taken by the Defendant above and beyond the Court's Order do not strip the Plaintiff of her initial victory. Indeed, the very reason that the Defendant restored the Plaintiff's security clearance and returned her to work is because the Court ordered that the Defendant reconsider de novo its revocation of the Plaintiff's security clearance. Thus, the preliminary injunction at issue here has the "judicial imprimatur" necessary to confer prevailing party status upon the Plaintiff.

Id. at *5.

The Joyce court distinguished Sole, observing:

47

Here, the Defendant did not secure an eventual ruling on the merits and the preliminary injunction was not superseded by a later ruling unfavorable to the Plaintiff.  To the contrary, the Court made an enduring change in the legal relationship of the parties by ordering the rescission of the letter denying the Plaintiff's appeal and reconsideration of that appeal.  The fact that on reconsideration of her appeal the Plaintiff obtained a favorable outcome that mooted her remaining claims does not somehow undue [sic] her victory.

Id.

Plaintiffs argue that, like the plaintiff in Joyce, they obtained a favorable outcome with respect to the 2005 Photo ID Act, particularly with respect to their poll tax claim. According to Plaintiffs, the State enacted the 2006 Photo ID Act in response to  the Court's entry of a preliminary injunction.  Plaintiffs point out that the 2006 Photo ID Act

48

eliminated the fee for obtaining a Photo ID for voting purposes, and contend that their eventual loss on the merits of their remaining claims did not undo their victory at the preliminary injunction stage on their poll tax claims.

The Court finds the reasoning of <u>Joyce</u> persuasive, and applies that reasoning to this case. Here, the State, on its own initiative, enacted the 2006 Photo ID Act in response to the Court's October 18, 2005, Order. The 2006 Photo ID Act eliminated the fee for obtaining a Photo ID for purposes of voting, which effectively mooted Plaintiff's poll tax claim. The Court's September 6, 2007, Order denying Plaintiffs' request for a permanent injunction did not eliminate that positive result or undo Plaintiffs' victory on their poll tax challenge to the 2005 Photo ID Act. The Court therefore finds that <u>Sole</u> does not preclude Plaintiffs from recovering

49

attorneys' fees relating to their poll tax challenge to the 2005 Photo ID Act, as Plaintiffs are prevailing parties with respect to that claim.

The Court finds, however, that Plaintiffs may not recover attorneys' fees relating to their other challenges to the 2005 Photo ID Act.  The Court declined to find in its October 18, 2005, Order that Plaintiffs had a substantial likelihood of succeeding on the merits of their claims arising under the Georgia Constitution, their claims arising under the Civil Rights Act, or their claim arising under Section 2 of the Voting Rights Act.  The Court reached the same conclusions with respect to those claims in the July 14, 2006, and September 15, 2006, Orders.  Plaintiffs thus are not prevailing parties for purposes of those claims, and may not recover attorneys' fees or expenses with respect to

50

those claims.

Likewise, the Court finds that Plaintiffs may not recover attorneys' fees or expenses with respect to their undue burden claim arising under the Equal Protection Clause. Although the Court's October 18, 2005, preliminary injunction was based in part on that claim, the 2006 Photo ID Act did little to affect that claim or to vindicate Plaintiffs' interests with respect to that claim.   Indeed, Plaintiffs continued to argue that the 2006 Photo ID Act's Photo ID requirement unduly burdened the right to vote, and proceeded to a bench trial solely on that claim.   The Court ultimately denied Plaintiffs' request for a permanent injunction based on their undue burden claim, and concluded that the 2006 Photo ID Act's Photo ID requirement did not unduly burden the right to vote.

51

Plaintiffs thus did not achieve the central relief they sought for their undue burden claim: an Order enjoining and prohibiting the State from requiring voters to present Photo ID for in-person voting. The Court consequently cannot find that Plaintiffs are prevailing parties as to that claim.

Similarly, Plaintiffs are not prevailing parties with respect to their attempts to have the Court certify the Georgia Constitutional claims to the Supreme Court of Georgia. As previously noted, the Court declined to certify those claims. Consequently, Plaintiffs may not recover attorneys' fees relating to those attempts.

The State Defendants contend that Plaintiffs may not recover attorneys' fees at all for their challenge to the 2005 Photo ID Act, arguing that Plaintiffs lacked standing to challenge that Act. It is true that the Court ultimately found

that Plaintiffs failed to satisfy their burden of proof as to standing. The Court, however, concluded, for purposes of the October 18, 2005, preliminary injunction Order, that Plaintiffs had satisfied the standing requirement. The Court finds that the appropriate inquiry is not whether Plaintiffs ultimately had standing at the bench trial stage, but instead is whether Plaintiffs had standing at the time of the October 18, 2005, Order. Given that Plaintiffs clearly satisfied their burden to allege standing at that point, the Court will not deny the request for attorneys' fees based on the State Defendants' lack-of-standing argument.

## B. Amount of Attorneys' Fees to Award

"The starting point in fashioning an award of attorneys' fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." Loranger v. Stierheim, 10

53

F.3d 776, 781 (11th Cir. 1994). "This 'lodestar' may then be adjusted for the results obtained." Id. Although the Court has wide discretion in determining an award of attorneys' fees, the Court "must articulate the decisions it made, give principled reasons for those decisions, and show its calculation." Id. (internal quotations and citations omitted). Defendants, as the fee applicants, bear "'the burden of establishing entitlement and documenting the appropriate hours and hourly rates.'" ACLU of Georgia v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999) (quoting Norman v. Housing Auth. of Montgomery, 836 F.2d 1292, 1304 (11th Cir. 1988)).

### 1.    Reasonable Hourly Rate

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by

lawyers of reasonably comparable skills, experience, and reputation." <u>Norman</u>, 836 F.2d at 1299. "The party seeking attorneys' fees bears the burden of producing 'satisfactory evidence that the requested rate is in line with prevailing market rates.'" <u>Loranger</u>, 10 F.3d at 781 (quoting <u>Norman</u>, 836 F.2d at 1299).[3] "A court, however, 'is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment." <u>Id.</u> (quoting <u>Norman</u>, 836 F.2d at 1303).

---

[3] Satisfactory evidence requires "'more than the affidavit of the attorney performing the work.'" <u>Loranger</u>, 10 F.3d at 781 (quoting <u>Norman</u>, 836 F.2d at 1299). Additionally, "satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits." <u>Norman</u>, 836 F.2d at 1299. "Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence." <u>Id.</u> Opinion evidence, however, should include "testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge." <u>Id.</u>

Generally, the "relevant legal community," for purposes of determining prevailing market rates, "is that of the place where the case is filed." <u>Cullens v. Georgia Dept. of Transp.</u>, 29 F.3d 1489, 1494 (11th Cir. 1994). The Court, however, may "consider a different legal market if it appears unlikely that there would be any attorneys in the local market who would be willing to take the case and who would possess sufficient expertise in the area of law involved." <u>Gay Lesbian Bisexual Alliance v. Sessions</u>, 930 F. Supp. 1492, 1495 (M.D. Ala. 1996).

For purposes of this Order, the State Defendants have not challenged the particular rates sought by Plaintiffs' counsel. (State Defs.' Resp. Pls.' Specification & Itemization of Att'ys Fees & Costs at 7 n.2.) The Court therefore uses the following rates to determine the amount

of attorneys' fees to award to Plaintiffs: (1) $250.00 per hour for work performed by Attorney Hine; (2) $85.00 per hour for work performed by Paralegal Mercer; (3) $285.00 per hour for work performed by Attorney Brackett prior to January 1, 2006, and $325.00 per hour for work performed by Attorney Brackett after January 1, 2006; (4) $225.00 per hour for work performed by Attorney Sarah Shalf prior to January 1, 2006, and $230.00 per hour for work performed by Attorney Shalf after January 1, 2006; (5) $215.00 per hour for work performed by Attorney Jason Carter; (6) $150.00 per hour for work performed by Paralegal Tanya Reed; (7) $95.00 per hour for work performed by Paralegal Assistant Debbie Calhoun; (8) $95.00 per hour for work performed by librarian Ron Hockensmith; and (9) $525.00 per hour for work performed by Attorney Bondurant prior to January 1, 2006,

AO 72A

(Rev.8/82)

and $550.00 per hour for work performed by Attorney Bondurant after January 1, 2006.

### 2. Reasonable Number of Compensable Hours

In determining the number of hours reasonably expended on a case, courts must review each attorney's "billing judgment" to eliminate "'excessive, redundant, or otherwise unnecessary' hours." Norman, 836 F.2d at 1301 (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). "[A] lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights." Id.

The party seeking an award of attorneys' fees has the burden of introducing evidence to establish the number of hours spent litigating the case. The Court then has the

discretion to reduce the number of compensable hours to reflect excessive or unnecessary work on given tasks. Norman, 836 F.2d at 1301. The Court, however, "should identify the hours disallowed and explain why they are disallowed." Loranger, 10 F.3d at 783.

"[I]n determining reasonable hours, the district court must deduct time spent on discrete and unsuccessful claims." Norman, 836 F.2d at 1302. Where, however, the claims for relief involve a common core of facts or are based on related legal theories, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." Hensley, 461 U.S. at 435.

"It is well established that '[t]he fee applicant bears the burden of demonstrating, through proper documentation,

that an appropriate amount of time was expended at an appropriate hourly rate.'" <u>Mr. and Mrs. B. v. Weston Bd. of Educ.</u>, 34 F. Supp.2d 777, 781 (D. Conn. 1999) (quoting <u>Patrick G. v. Chicago Sch. Dist. No. 299</u>, No. 94 C 3417, 1994 WL 715590, at *1 (N.D. Ill. Dec. 20, 1994), <u>aff'd</u>, 69 F.3d 540 (7th Cir. 1995)) (alteration in original). "Applications for attorney's fees 'must be accompanied by contemporaneous time records that specify for each attorney, the date, hours expended, and nature of the work done.'" <u>Id.</u> (quoting <u>New York State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1148 (2d Cir. 1983)). Attorneys can recover fees only for entries that "identify the general subject matter of their expenditures." <u>Hensley</u>, 461 U.S. at 437 n.2. "Entries stating such vague references as 'review of file', 'review of correspondence', 'research,'

'conference with client,' and 'preparation of brief' do not provide an adequate basis upon which to evaluate the reasonableness of the services and hours expended on a given matter." <u>Mr. and Mrs. B.</u>, 34 F. Supp.2d at 781. "In order to survive a dispute about the sufficiency of time entries, the time records should include a reference line to describe adequately the subject of the work performed." <u>Id.</u>

Here, Plaintiffs seek to recover for seven general categories of fees: (1) fees incurred to perform initial research and to draft the Complaint; (2) fees incurred to draft the brief in support of Plaintiffs' Motion for Preliminary Injunction, to conduct additional legal research, to speak with potential witnesses, and to draft affidavits and documents relating to the Motion; (3) fees incurred to prepare for and attend depositions, and to meet with

61

witnesses and potential witnesses; (4) fees incurred in preparing for, and attending, the hearing on Plaintiffs' Motion for Preliminary Injunction; (5) fees incurred to oppose the State Defendants' requests to stay the preliminary injunction pending the appeal to the Eleventh Circuit; (6) fees incurred in connection with work performed before the Eleventh Circuit; and (7) fees incurred in researching, briefing, and arguing issues related to individual capacity claims against the State officials, to a stay of the proceedings during the appeal, and to Plaintiffs' Motion to Certify State Law Issues to the Supreme Court of Georgia. The Court first addresses the problems of vague and general billing entries and noncompensable matters, and then addresses the particular categories of fees.

### a.   Vague   and   General   Entries   and Noncompensable Matters

The time entries presented by Plaintiffs' counsel include several vague and general entries.   The Court cannot determine from those entries whether the time expended on the tasks was reasonable.   The State Defendants have proposed that the Court reduce the total amount of attorneys' fees sought by Plaintiffs by ten percent to take into account these general, vague entries.

The Court has reviewed the billing records attached to Attorney Bondurant's declaration, and concludes that many of the entries are too vague and general to allow the Court to determine what work Plaintiffs' counsel actually performed.   Those entries include the following entries by Attorney Bondurant: (1) a September 1, 2005, entry billing

63

0.8 hours for "[r]eading and responding to e-mails; draft and edit complaint," (Bondurant Decl. Ex. A); (2) a September 12, 2005, entry by Attorney Bondurant billing 2.0 hours for "[r]eading and responding to e-mails draft complaint," (id.); (3) a September 13, 2005, entry billing 2.7 hours for "[d]rafting and editing complaint; reading and responding to e-mails; legal research," (id.); (4) a September 14, 2005, entry billing 8.5 hours for "[d]rafting and editing complaint; reading and responding to e-mails," (id.); (5) a September 16, 2005, entry billing 1.5 hours for "[r]eading and responding to e-mails," (id.); (6) a September 19, 2005, entry billing 3.5 hours for"[r]eading and responding to e-mails; edit and finalize complaint," (id.); (7) a September 20, 2005, entry seeking 3.2 hours for "[r]eading and responding to e-mails; legal research," (id.); (8) a September 21, 2005,

entry billing 4.2 hours for "[r]eading and responding to e-mails," (id.); (9) a September 26, 2005, entry billing 1.5 hours for "[r]eading and responding to e-mails," (id.); (10) a September 27, 2005, entry billing 4.3 hours for "[r]eading and responding to e-mails; editing Summary Judgment brief," (id.); (11) a September 28, 2005, entry billing 3.0 hours for "[r]eading and responding to e-mails," (id.); (12) a September 29, 2005, entry billing 6.5 hours for "[r]eading and responding to e-mails; editing Summary Judgment Brief," (id.); (13) an October 3, 2005, entry billing 5.0 hours for, among other things, "E-mails," (id.); (14) an October 5, 2005, entry billing 3.5 hours for "[r]eading and responding to e-mails; conference call with Judge Murphy," (id.); (15) an October 6, 2005, entry billing 2.5 hours for "[r]eading and responding to e-mails," (id.); (16) a January 11, 2006, entry

AO 72A

(Rev.8/82)

billing 3.0 hours for "[r]eading and responding to e-mails," (<u>id.</u>); (17) a January 13, 2006, entry billing 2.3 hours for "[r]eading and responding to e-mails; e-mails with Bill Bozarth," (<u>id.</u>); (18) a January 17, 2006, entry billing 2.2 hours for "[r]eading and responding to e-mails from Jon Greenbaum and Neil Bradley," (<u>id.</u>); (19) a January 19, 2006, entry billing 5.3 hours for "[r]eading and responding to e-mails," (<u>id.</u>); and (20) a February 9, 2006, entry billing 1.0 hours for "[t]elephone conference with Neal Bradley; reading and responding to e-mails," (<u>id.</u>). Similarly, Attorney Shalf billed for a September 25, 2005, entry generally billing 0.1 hours for a "[t]elephone conference with D. Brackett." (<u>Id.</u>)[4]

---

[4]In their reply brief, Plaintiffs assert:

Plaintiffs were represented by a large number of attorneys with separate offices.  The most efficient way for co-counsel to communicate regarding everything from overall strategy to day-to-day management of the

case was via email.   Accordingly, Mr. Bondurant communicated extensively with co-counsel on issues relating to the complaint, the preliminary injunction brief, depositions, discovery, and preparation for the hearing[] itself.   Mr. Bondurant's emails were often extremely detailed questions or analysis concerning legal strategy. These emails allowed the plaintiffs to benefit from the collective wisdom and extensive litigation and voting rights experience of co-counsel. Often, the emails would result in insight or information from co-counsel that would obviate the need for plaintiffs' counsel to "reinvent the wheel."   Thus, the time spent emailing co-counsel actually reduced the total amount of time ultimately spent on the action by plaintiffs' counsel.  In addition, because of the expedited nature of the proceedings in this case, many of the communications between plaintiffs' counsel and counsel for the State Defendants were conducted via email. These included discovery and Open Records Act requests and communications regarding scheduling. Accordingly, the time expended by plaintiffs' counsel reading and responding to emails in this action was reasonable.

(Pls.' Reply Br. Supp. Mot. Atty. Fees at 4-5.)  The problem with this argument is that Plaintiffs, as the parties seeking attorneys' fees, have the burden to show that their time entries are reasonable and necessary.  Plaintiffs have not updated their time entries or provided any type of documentation supporting this argument. The Court simply cannot determine from the time entries submitted by Plaintiffs whether Attorney Bondurant's e-mails indeed were related to the case or were necessary at all.  The entries do not disclose the identities of the individuals who received the e-mails, and do

The vague or general entries include the following submissions by Attorney Brackett: (1) a September 2, 2005, entry billing 2.6 hours for "[l]egal research," (Bondurant Decl. Ex. A.); (2) a September 6, 2005, entry stating that he spent 4.6 hours on "[l]egal research," (id.); (3) a September 9, 2005, entry seeking compensation for 3.6 hours of "[l]egal research," (id.); (4) a September 11, 2005, entry billing 1.7 hours for "[l]egal research," (id.); (5) a September 12, 2005, entry for 8.3 hours of "[l]egal research," (id.); (6) a September 14, 2005, entry billing 5.8 hours for "[l]egal research; conference call with co-counsel; conference with E. Bondurant," (id.); (7) a September 20, 2005, entry billing 7.7 hours for "[r]ead and respond to e-mails; legal research,"

---

not even generally describe the subject matter of the e-mails. Under those circumstances, Plaintiffs simply have not met their burden of proof on this issue.

68

(<u>id.</u>); and (8) a September 22, 2005, entry billing 0.9 hours for "[d]raft section of brief; read and send e-mails to co-counsel," (<u>id.</u>).[5]

By the Court's calculation, 101.8 hours of the 662.1 hours for which Plaintiffs' counsel seek compensation were contained in vague and general billing entries. The vague and general billing entries thus represent approximately 15.375 percent of the total hours billed by Plaintiffs' counsel. Under those circumstances, the Court finds that the State

---

[5]Contrary to Plaintiffs' arguments, the Court cannot determine "[t]he general purpose of the research" from "the context of the billing records as a whole." (Pls.' Reply Br. Supp. Mot. Atty. Fees at 4.) Again, Plaintiffs have the burden of producing time entries that are sufficiently detailed to allow the Court to determine whether the hours spent by Plaintiffs' counsel were reasonable and necessary. Simply asserting, without support, that the hours were reasonable, is not enough.

Similarly, Plaintiffs' argument that the Court should direct counsel for the State Defendants to produce their time records so that the Court can compare those records to Plaintiffs' time records is not well-taken. It is not up to the Court or the State Defendants to shoulder Plaintiffs' burden of proof.

AO 72A

(Rev.8/82)

Defendants' proposal to reduce the fees recovered by Plaintiffs' counsel by ten percent to take into account the vague and general entries is more than fair.[6]  The Court therefore will reduce the total fees sought by Plaintiffs by ten percent to reflect the vague and general time entries.  See Kenny A. ex rel. Winn v. Perdue, 454 F. Supp. 2d 1260, 1286-87 (N.D. Ga. 2006) (reducing hours by fifteen percent to reflect vague and noncompensable entries, excessive hours, and noncompensable time); Marisol A. v. Giuliani, 111 F. Supp. 2d 381, 395-401 (S.D.N.Y. 2000) (reducing lodestar amount by fifteen percent based on, among other things, time spent on non-compensable administrative matters, excessive time spent on certain tasks, time spent

---

[6]The Court ordinarily would deny recovery entirely for those vague and general entries.

by attorneys getting acquainted with case, and over-staffing at court conferences); Meriwether v. Coughlin, 727 F. Supp. 823, 827 (S.D.N.Y. 1989) (deducting fifteen percent from fee request for entries that were too vague to permit court to assess reasonableness adequately).

The billing records provided by Plaintiffs' counsel also include several non-compensable entries. For instance, Attorney Hine sought to recover for $1,375.00 in fees associated with "notebook maintenance," an amount representing 55.0 hours of work at an hourly rate of $25.00. Plaintiffs, however, may recover only for work typically performed by an attorney. Jean v. Nelson, 863 F.2d 759, 778 (11th Cir. 1988) (noting that paralegal time is compensable only to extent paralegal performed work traditionally done by attorney). In this case, Plaintiffs have

71

not demonstrated that "notebook maintenance" is a task typically performed by an attorney. Plaintiffs therefore may not recover for "notebook maintenance." The Court consequently has excluded the "notebook maintenance" fee from the calculation of Plaintiffs' fee award.

Similarly, Attorney Hine billed for 1.0 hours of time on September 19, 2005, spent, among other things, "meeting with Judge Murphy and staff." (Hine Decl. Ex. A.) No such meeting ever occurred.[7] That entry also indicates that Attorney Hine spent time reviewing the filed Complaint and reporting to the working group. Because some of the tasks

---

[7]For obvious reasons, the Court and its staff do not hold <u>ex parte</u> meetings with counsel in cases. In their reply brief, Plaintiffs note that the "meeting" consisted of Attorney Hine dropping off courtesy copies of the filed Complaint with the Court. (Pls.' Reply Br. Supp. Mot. Atty. Fees at 4 n.4.) Plaintiffs, however, have not shown why it was necessary for Attorney Hine to drop off the courtesy copies in person, rather than mailing the copies, or why it was necessary for Attorney Hine himself to perform that task.

72

performed by Attorney Hine on September 19, 2005, may be compensable, the Court will not disallow compensation for this entry entirely.  Instead, the Court finds that the ten percent reduction in attorneys' fees sought by Plaintiffs' counsel is adequate to take into account this partially non-compensable entry.

### b.   Time Spent Drafting the Complaint and Conducting Related Research

Plaintiffs seek $23,355 in attorneys' fees for work performed during phase one of this litigation, which included drafting the Complaint and conducting related research. This amount includes compensation for 28.2 hours of work performed by Attorney Bondurant, at an hourly rate of $525.00, plus compensation for 30.0 hours of work performed by Attorney Brackett, at an hourly rate of

73

$285.00.   (Brackett Decl. ¶ 11.)   The State Defendants argue that the Court should reduce the hours sought by Plaintiffs by thirty percent to take into account work on the challenges to the 2005 Photo ID Act on which Plaintiffs clearly did not succeed.

In their original Complaint, Plaintiffs contended that the 2005 Photo ID Act violated the Georgia constitutions, was a poll tax that violated the Twenty-Fourth Amendment and the Equal Protection Clause of the federal constitution, unduly burdened the fundamental right to vote, in violation of the federal constitution, violated the Civil Rights Act of 1964, and violated Section 2 of the Voting Rights Act of 1965.  As the Court previously noted, however, Plaintiffs actually obtained a preliminary injunction only with respect to their undue burden and poll tax claims arising under the

74

federal Constitution, and were prevailing parties only with respect to their poll tax challenge to the 2005 Photo ID Act. Plaintiffs' time entries also do not permit the Court to determine which portions of the entries relate to work performed in connection with the poll tax challenge and which portions correspond to work performed on other claims. Plaintiffs correctly note, however, that the claims all arise from a common course of conduct and share a common core of facts. Under those circumstances, the Court will not reduce the hours sought by Plaintiffs in connection with drafting their Complaint and conducting research in connection with their Complaint to reflect Plaintiffs' lack of success on their other claims.

The Court therefore will not reduce the hours sought by Plaintiffs for drafting their Complaint and conducting

research associated with the Complaint by thirty percent, as urged by the State Defendants. Plaintiffs consequently may recover for 28.2 hours of work performed by Attorney Bondurant and for 30.0 hours of work performed by Attorney Brackett in connection with drafting Plaintiffs' Complaint and conducting related legal research. Plaintiffs therefore may recover $14,805.00 for work performed by Attorney Bondurant[8] and $8,550.00 for work performed by Attorney Brackett[9], for a total of $23,355.00 in attorneys' fees associated with preparing Plaintiffs' Complaint and performing related research.

---

[8]This amount represents 28.2 hours multiplied by an hourly rate of $525.00.

[9]This amount represents 30.0 hours multiplied by an hourly rate of $285.00.

AO 72A

(Rev.8/82)

### c.   Preparing the Motion for Preliminary Injunction and Related Documents

Plaintiffs seek to recover $50,442.50 in attorneys' fees for work associated with preparing Plaintiffs' Motion for Preliminary Injunction and related documents. This amount includes: (1) $18,795.00 for 35.8 hours of work performed by Attorney Bondurant at an hourly rate of $525.00; (2) $29,355.00 for 103.0 hours of work performed by Attorney Brackett at an hourly rate of $285.00; (3) $1,057.50 for 4.7 hours of work performed by Attorney Shalf at an hourly rate of $225.00; (4) $285.00 for 3.0 hours of work performed by Mr. Hockensmith at an hourly rate of $95.00; and (5) $950.00 for 3.8 hours of work performed by Attorney Hine at an hourly rate of $250.00.  (Brackett Decl. ¶ 11.)

The State Defendants argue that the Court should

reduce the total hours sought by Plaintiffs for this phase of the litigation by thirty percent to take into account the claims on which Plaintiffs failed to prevail.  As previously noted, Plaintiffs ultimately prevailed only on their poll tax challenge to the 2005 Photo ID Act, and failed to succeed on their other four claims. The Court, however, finds that all of the claims shared a common core of facts and arose from the same course of conduct.  Under those circumstances, the Court declines to reduce the hours sought by thirty percent to reflect the unsuccessful claims.

Additionally, the State Defendants argue that Plaintiffs' counsel seek compensation for non-compensable matters. Specifically, the State Defendants note that the entries for Attorney Bondurant and Attorney Brackett indicate that those attorneys billed for work performed in connection with

78

a summary judgment motion. The State Defendants observe that Plaintiffs never filed a summary judgment motion. The State Defendants therefore request that the Court reduce the hours sought in those entries by one-half to apportion the time spent on the summary judgment motion with time spent on other, potentially compensable tasks.

The Court has reviewed the billing records attached as Exhibit B to Attorney Bondurant's declaration, and notes that the following billing entries pertain to a summary judgment motion: (1) a September 27, 2005, entry by Attorney Bondurant that billed 4.3 hours; (2) a September 29, 2005, entry by Attorney Bondurant that billed 6.5 hours; (3) a September 30, 2005, entry by Attorney Bondurant that billed 7.6 hours; (4) a September 16, 2005, entry by

79

Attorney Brackett that billed 9.3 hours; and (5) a September 30, 2005, entry by Attorney Brackett that billed 9.0 hours. Because Plaintiffs never actually filed a summary judgment motion, allowing Plaintiffs to recover for attorneys' fees associated with that motion ordinarily would be unfair. Plaintiffs, however, explained in their reply brief that they used the research and work performed on the "summary judgment brief" to compose their brief in support of their Motion for Preliminary Injunction.  (Pls.' Reply Br. Supp. Mot. Atty. Fees at 6-7.)  The Court therefore finds that the entries attributed, in whole or in part, to the summary judgment motion indeed related to work that was reasonable and necessary for this case.

The Court therefore will permit Plaintiffs to recover for 35.8 hours of work performed by Attorney Bondurant during

AO 72A

(Rev.8/82)

this phase of the litigation. The Court also will permit Plaintiffs to recover for 103.0 hours of work performed by Attorney Brackett during this phase of the litigation. Additionally, Plaintiffs may recover for 4.7 hours of work performed by Attorney Shalf during this phase of the litigation, and for 3.0 hours of work performed by Mr. Hockensmith. Finally, Plaintiffs may recover for 3.8 hours of work performed by Attorney Hine during this phase of the litigation.

Plaintiffs thus may recover a total of $50,442.50 in attorneys' fees associated with preparing the Motion for Preliminary Injunction. This amount includes: (1) $18,795.00 for 35.8 hours of work performed by Attorney Bondurant at an hourly rate of $525.00; (2) $29,355.00 for 103.0 hours of work performed by Attorney Brackett at an

hourly rate of $285.00; (3) $1,057.50 for 4.7 hours of work performed by Attorney Shalf at an hourly rate of $225.00; (4) $285.00 for 3.0 hours of work performed by Mr. Hockensmith at an hourly rate of $95.00; and (5) $950.00 for 3.8 hours of work performed by Attorney Hine, at an hourly rate of $250.00.

### d.    Depositions   and   Meetings   with   Witnesses

Plaintiffs seek to recover $12,798.00 for work related to depositions and meetings with witnesses.   This amount includes compensation for 13.9 hours of work by Attorney Bondurant at an hourly rate of $525.00, and compensation for 19.3 hours of work by Attorney Brackett at an hourly rate of $285.00.  The State Defendants do not object to the fees sought by Plaintiffs in connection with this phase of the

82

AO 72A

(Rev.8/82)

litigation.[10]

The Court has reviewed the billing records provided by Plaintiffs in connection with this phase of the litigation, and concludes that it is appropriate to award Plaintiffs $12,798.00 in fees for work incurred during this phase of the litigation.   This amount includes: (1) $7,297.50 for 13.9 hours of work performed by Attorney Bondurant at an hourly rate of $525.00; and (2) $5,500.50 for 19.3 hours of work performed by Attorney Brackett at an hourly rate of $285.00.

### e.   Preparing for the Preliminary Injunction Hearing and Attending the Preliminary Injunction Hearing

Plaintiffs seek to recover $27,298.00 in fees associated with preparing for, and attending, the preliminary injunction

---

[10]The State Defendants, however, contend that Plaintiffs are not prevailing parties and should not recover attorneys' fees at all.

83

hearing.   That amount includes: (1) $14,910.00 for 28.4 hours of work performed by Attorney Bondurant at an hourly rate of $525.00; (2) $7,353.00 for 25.8 hours of work performed by Attorney Brackett at an hourly rate of $285.00; (3) $1,552.50 for 6.9 hours of work performed by Attorney Shalf at an hourly rate of $225.00; (4) $43.00 for 0.2 hours of work performed by Attorney Carter at an hourly rate of $215.00; (5) $330.00 for 2.2 hours of work performed by Paralegal Reed at an hourly rate of $150.00; (6) $59.50 for 0.7 hours of work performed by Paralegal Mercer at an hourly rate of $85.00; and (7) $3,050.00 for 12.2 hours of work by Attorney Hine at an hourly rate of $250.00.

The State Defendants contend that the Court should reduce the time sought by Plaintiffs by thirty percent to reflect time spent on unsuccessful claims.   The State

Defendants also propose that the Court reduce the hourly rate for 2.5 hours billed by Attorney Brackett and the hourly rate for 2.5 hours billed by Attorney Bondurant to reflect travel time.  Plaintiffs object to both of those contentions.

The Court has reviewed the billing records attached as Exhibit B to Attorney Bondurant's declaration, and concludes that Attorney Brackett and Attorney Bondurant both billed for entries on October 11, 2005, and October 12, 2005, that included travel to or from Rome.   The Court agrees with the State Defendants that it is appropriate to compensate Plaintiffs for their attorneys' travel time at fifty percent of the attorneys' normal hourly rates. Kenny A., 454 F. Supp. 2d at 1284 (citing Wilder v. Bernstein, 975 F. Supp. 276, 284 (S.D.N.Y. 1997)).  The Court further agrees with the State Defendants that Attorneys Brackett and

85

Bondurant both likely spent approximately 2.5 hours traveling to and from Rome for the preliminary injunction hearing.  Plaintiffs may obtain compensation for $1,012.50 in attorneys' fees associated with travel time.  This amount includes: (1) $656.25 in compensation for 2.5 hours of travel time billed by Attorney Bondurant at an hourly rate of $262.50;[11] and (2) $356.25 in compensation for 2.5 hours of travel time billed by Attorney Brackett at an hourly rate of $142.50.[12]  For the reasons previously stated, however, the Court will not reduce the other hours billed by Plaintiffs' counsel by thirty percent to take into account time spent on unsuccessful claims.

Plaintiffs therefore may recover $26,285.50 in

---

[11]$262.50 is half of $525.00, Attorney Bondurant's hourly rate.

[12]$142.50 is half of $285.00, Attorney Brackett's hourly rate.

attorneys' fees associated with preparing for and attending the preliminary injunction.   This amount includes: (1) $1,012.50 in compensation for travel time; (2) $13,597.50 for 25.9 hours of non-travel work[13] by Attorney Bondurant at an hourly rate of $525.00; (3) $6,640.50 for 23.3 hours of non-travel work[14] by Attorney Brackett at an hourly rate of $285.00; (4) $1,552.50 for 6.9 hours of work by Attorney Shalf at an hourly rate of $225.00; (5) $43.00 for 0.2 hours of work by Attorney Carter at an hourly rate of $215.00; (6) $330.00 for 2.2 hours of work by Paralegal Reed at an hourly rate of $150.00; (7) $59.50 for 0.7 hours of work by

---

[13]The Court arrived at the 25.9 hour figure for Attorney Bondurant by subtracting 2.5 hours of travel time from the 28.4 hours initially sought.

[14]The Court calculated the 23.3 hour figure for Attorney Brackett by subtracting 2.5 hours of travel time from the 25.8 hours initially sought.

AO 72A

(Rev.8/82)

Paralegal Mercer at an hourly rate of $85.00; and (8) $3,050.00 for 12.2 hours of work by Attorney Hine at an hourly rate of $250.00.

### f.   Time Spent In Connection With Motions to Stay

Plaintiffs seek to recover $15,355.50 in attorneys' fees associated with opposing the State Defendants' motions to stay the preliminary injunction pending the appeal to the Eleventh Circuit.  This amount includes: (1) $12,084.00 for 42.4 hours of work by Attorney Brackett at an hourly rate of $285.00; (2) $1,912.50 for 8.5 hours of work by Attorney Shalf at an hourly rate of $225.00; (3) $1,311.50 for 6.1 hours of work by Attorney Carter at an hourly rate of $215.00; and (4) $47.50 for 0.5 hours of work by Mr. Hockensmith at an hourly rate of $95.00.

88

The State Defendants note that most of the billing entries presented by Plaintiffs in connection with the motions to stay involved a motion to stay that was filed before the Eleventh Circuit. The State Defendants argue that the Court cannot issue an award of attorneys' fees for work performed before the Eleventh Circuit at this point, and request that the Court compensate Plaintiffs only for work done to oppose the motion to stay filed in this Court.

Plaintiffs, however, contend that the Court may award Plaintiffs fees for work on appeal under § 1988. According to Plaintiffs, a 2003 amendment to the rules of the Eleventh Circuit allows the Court to award attorneys' fees in a remanded case. Specifically, Eleventh Circuit Rule 39-2(e) provides:

When a reversal on appeal, in whole or in part,

results in a remand to the district court for trial or other further proceedings (e.g., reversal of order granting summary judgment, or denying a new trial), a party who may be eligible for attorney's fees on appeal after prevailing on the merits upon remand may, in lieu of filing an application for attorney's fees in this court, request attorney's fees for the appeal in a timely application filed with the district court upon disposition of the matter on remand.

Eleventh Circuit Rule 39-2(e).   By its plain terms, Eleventh Circuit Rule 39-2(e) allows the district court to award attorney's fees on remand in the case of "a reversal on appeal." Id.  Although the State Defendants appealed the October 2005 preliminary injunction, that appeal did not result in "a reversal on appeal" that "result[ed] in a remand." Id.  Instead, the Eleventh Circuit apparently remanded the case to the Court at the parties' request, and dismissed the

90

appeal without prejudice.  Under those circumstances, and in the absence of any authority interpreting Eleventh Circuit Rule 39-2(e), the Court will not take it upon itself to award attorneys' fees for work performed by Plaintiffs' counsel at this point.  Instead, the Court concludes that, without an order from the Eleventh Circuit directing this Court to award attorneys' fees, the Court cannot award attorneys' fees to Plaintiffs for work that Plaintiffs' counsel performed while this case was on appeal.  Mills ex rel. Mills v. Freeman, 118 F.3d 727, 734-35 (11th Cir. 1997); Wyatt ex rel. Rawlins v. Sawyer, 67 F. Supp. 2d 1331, 1346-47 (M.D. Ala. 1999).

For the reasons discussed above, the Court will not award attorneys' fees to Plaintiffs in connection with Plaintiffs' opposition to the motion to stay filed in the Eleventh Circuit.  Instead, the Court will only award

91

attorneys' fees for work done to oppose the motion to stay filed in this Court, and will deny without prejudice the request for attorneys' fees for work performed on appeal.

The Court has reviewed the billing records attached as Exhibit B to Attorney Bondurant's declaration, and finds that only the following billing entries appear to relate to the motion to stay pending in this Court: (1) the October 19, 2005, entry billing for 6.3 hours of work by Attorney Brackett; (2) the October 20, 2005, entry billing for 0.4 hours of work by Attorney Carter; (3) the October 20, 2005, entry billing for 6.2 hours of work by Attorney Brackett; and (4) the October 20, 2005, entry billing for 0.5 hours of work by Mr. Hockensmith.   Plaintiffs therefore may recover only for those entries.

Consequently, Plaintiffs may recover $3,696.00 for

work done in connection with the motion to stay pending in this Court.   That amount includes: (1) $3,562.50 for 12.5 hours of work by Attorney Brackett at an hourly rate of $285.00; (2) $86.00 for 0.4 hours of work by Attorney Carter at an hourly rate of $215.00; and (3) $47.50 for 0.5 hours of work by Mr. Hockensmith at an hourly rate of $95.00.

### g.   Work Performed on Appeal

Plaintiffs also seek to recover $89,178.00 for work performed on appeal.  That amount includes: (1) $2,730.00 for 5.2 hours of work performed by Attorney Bondurant at an hourly rate of $525.00; (2) $33,165.00 for 60.3 hours of work by Attorney Bondurant at an hourly rate of $550.00; (3) $18,667.50 for 65.5 hours of work by Attorney Brackett at an hourly rate of $285.00; (4) $31,395.00 for 96.6 hours of work by Attorney Brackett at an hourly rate of $325.00; (5)

$697.50 for 3.1 hours of work by Attorney Shalf at an hourly rate of $225.00; (6) $828.00 for 3.6 hours of work by Attorney Shalf at an hourly rate of $230.00; (7) $210.00 for 1.4 hours of work by Paralegal Reed at an hourly rate of $150.00; (8) $825.00 for 5.0 hours of work by Paralegal Reed at an hourly rate of $165.00; (9) $190.00 for 2.0 hours of work by Mr. Hockensmith at an hourly rate of $95.00; (10) $95.00 for 1.0 hour of work by Paralegal Assistant Calhoun at an hourly rate of $95.00; and (11) $375.00 for 1.5 hours of work by Attorney Hine at an hourly rate of $250.00.

As previously discussed, the Court finds that it lacks authority at this point to award attorneys' fees to Plaintiffs for work performed on appeal. The Court therefore cannot award fees to Plaintiffs in connection with work performed before the Eleventh Circuit. The Court consequently denies

without prejudice this portion of Plaintiffs' request for attorneys' fees.

### h.    Issues Before the Court

Plaintiffs also seek to recover $11,387.50 in attorneys' fees associated with researching, briefing, and arguing other issues before this Court, including opposing the State Defendants' Motion to Dismiss the State officials in their individual capacities, opposing the State Defendants' Motion to Stay Proceedings Pending Appeal, and filing Plaintiffs' Motion for Certification of State Law Claims.  This amount includes: (1) $945.00 for 1.8 hours of work by Attorney Bondurant at an hourly rate of $525.00; (2) $7,980.00 for 28.0 hours of work by Attorney Brackett at an hourly rate of $285.00; (3) $1,125.00 for 5.0 hours of work by Attorney Shalf at an hourly rate of $225.00; (4) $1,290.00 for 6.0

95

hours of work by Attorney Carter at an hourly rate of $215.00; and (5) $47.50 for 0.5 hours of work by Mr. Hockensmith at an hourly rate of $95.00.

The State Defendants argue that Plaintiffs may obtain compensation only for work performed in connection with opposing the State Defendants' Motion to Dismiss the Individual Capacity claims, as Plaintiffs' other efforts failed. The Court observes that although Plaintiffs tried on two occasions to have the Court certify Plaintiffs' claims under the Georgia constitution to the Georgia Supreme Court, the Court refused to do so.  (Order of Dec. 28, 2005; Order of June 29, 2006.)  Similarly, the Court granted the State Defendants' Motion to Stay Proceedings Pending Resolution of Expedited Appeal.  (Order of Nov. 28, 2005.) Plaintiffs thus were not successful in their efforts to oppose

AO 72A

(Rev.8/82)

the Motion to Stay or their efforts to certify their claims arising under the Georgia constitution to the Georgia Supreme Court, and Plaintiffs therefore may not recover attorneys' fees incurred in connection with those efforts.

The Court has reviewed the billing records attached as Exhibit B to Attorney Bondurant's declaration, and concludes that only the following entries relate to Plaintiffs' opposition to the State Defendants' Motion to Dismiss the Individual Capacity Claims: (1) the October 7, 2005, entry billing 3.2 hours for work by Attorney Shalf; (2) the October 7, 2005, entry billing 6.0 hours of work by Attorney Carter; and (3) 0.5 hours of the October 10, 2005, entry by Attorney Brackett, which stated: "Draft e-mail to co-counsel; read Brief in Opposition to Motion to Dismiss; prepare for

97

hearing; supplement legal research."[15]  Plaintiffs therefore may recover only fees associated with those entries.

The Court therefore awards Plaintiffs $2,152.50 in attorneys' fees associated with this phase of the litigation. This amount includes: (1) $720.00 for 3.2 hours of work by Attorney Shalf at an hourly rate of $225.00; (2) $1,290.00 for 6.0 hours of work by Attorney Carter at an hourly rate of $215.00; and (3) $142.50 for 0.5 hours of work by Attorney Brackett at an hourly rate of $285.00.

### i.    Summary

In sum, Plaintiffs ordinarily could recover $118,729.50 in attorneys' fees associated with this litigation.   That

---

[15]The Court finds that 0.5 hours is more than sufficient time to read the brief in opposition to the Motion to Dismiss.  As the State Defendants correctly point out, the substantive portion of Plaintiffs' brief in opposition to the State Defendants' Motion to Dismiss Individual Capacity Claims is only four pages long.  (Docket Entry No. 32.)

98

amount includes: (1) $23,355.00 for fees associated with preparing the Complaint and conducting related research; (2) $50,442.50 for fees associated with preparing the Motion for Preliminary Injunction; (3) $12,798.00 in fees associated with depositions and interviews of witnesses; (4) $26,285.50 in fees associated with preparing for, and attending, the preliminary injunction hearing; (5) $3,696.00 in fees associated with opposing the motion to stay the preliminary injunction filed in this Court; and (6) $2,152.50 in fees associated with opposing the State Defendants' Motion to Dismiss Individual Capacity Claims. As discussed above, however, the Court will reduce this amount by ten percent, or $11,872.95, to account for vague, general, and non-compensable billing entries. After taking into account this ten percent deduction, Plaintiffs may recover $106,856.55

in attorneys' fees.

## C.   Award of Expenses

Plaintiffs seek an award of $7,467.12 in expenses, including: (1) $6,220.01 in expenses incurred by the law firm of Bondurant, Mixson & Elmore; and (2) $1,247.11 in expenses incurred by the law firm of Edward Hine, Jr., P.C. Expenses such as postage, long distance telephone calls, necessary travel, and on-line research may be recoverable under § 1988.   Cullens v. Ga. Dept. of Transp., 29 F.3d 1489, 1494 (11th Cir. 1994).

The State Defendants object to certain of the expenses requested by Plaintiffs, including: (1) $100.63 in expenses incurred by Attorney Hine's firm for lunch; (2) charges incurred while this case remained on appeal, including: (a) $80.00 in messenger charges for Eleventh Circuit filings

incurred by Bondurant, Mixson & Elmore, LLP on November 30, 2005; (b) $40.00 in messenger charges for Eleventh Circuit filings incurred by Bondurant, Mixson & Elmore, LLP on January 31, 2006; (c) a $10.00 messenger charge incurred by Bondurant, Mixson & Elmore, LLP on November 30, 2005; (d) a $63.60 messenger charge incurred by Bondurant, Mixson & Elmore, LLP for service between January 1 and 15, 2006; (e) a $11.85 charge incurred by Bondurant, Mixson & Elmore, LLP for obtaining a New York Times article on November 1, 2005; (f) a $66.57 Federal Express charge incurred by Bondurant, Mixson & Elmore, LLP on October 25, 2005; (g) a $14.63 Federal Express charge incurred by Bondurant, Mixson & Elmore, LLP on November 8, 2005; and (h) a $161.18 conference call charge incurred by Bondurant, Mixson & Elmore for a

101

conference call that occurred on November 17, 2005; (3) the $2,760.52 in Westlaw and LEXIS charges incurred by Bondurant, Mixson & Elmore through February 6, 2006, which the State Defendants argue should be reduced by forty-three percent to reflect work likely done in connection with the appeal; (4) photocopying costs of $103.50 incurred by Attorney Hine's law firm, which the State Defendants argue should be reduced by fifty percent to take into account work done on appeal and excessive costs; and (5) photocopying costs of $809.40 incurred by Bondurant, Mixson & Elmore, which the State Defendants argue should be reduced by fifty percent to take into account work done on appeal and excessive charges. The Court considers those objections in turn.

First, the cost of meals is not recoverable under § 1988.

102

Brother v. Miami Hotel Invs., Ltd., 341 F. Supp. 2d 1230, 1240 (S.D. Fla. 2004) (stating that meals should be absorbed as general overhead). Plaintiffs consequently may not recover for $100.63 in meal charges incurred by Attorney Hine.

Second, the Eleventh Circuit has not issued an order authorizing or directing the Court to award attorneys' fees and expenses to Plaintiffs. Plaintiffs therefore may not recover at this point for the following expenses: (1) $80.00 in messenger charges for Eleventh Circuit filings incurred by Bondurant, Mixson & Elmore, LLP on November 30, 2005; (2) $40.00 in messenger charges for Eleventh Circuit filings incurred by Bondurant, Mixson & Elmore, LLP on January 31, 2006; (3) a $10.00 messenger charge incurred by Bondurant, Mixson & Elmore, LLP on November 30, 2005;

103

AO 72A

(Rev.8/82)

(4) a $63.60 messenger charge incurred by Bondurant, Mixson & Elmore, LLP for service between January 1 and 15, 2006; (5) a $11.85 charge incurred by Bondurant, Mixson & Elmore, LLP for obtaining a <u>New York Times</u> article on November 1, 2005; (6) a $66.57 Federal Express charge incurred by Bondurant, Mixson & Elmore, LLP on October 25, 2005; (7) a $14.63 Federal Express charge incurred by Bondurant, Mixson & Elmore, LLP on November 8, 2005; and (8) a $161.18 conference call charge incurred by Bondurant, Mixson & Elmore for a conference call that occurred on November 17, 2005.

Third, the Court cannot determine from the billing records produced by Plaintiffs which portion of the Westlaw and LEXIS charges incurred by Bondurant, Mixson & Elmore, LLP actually relates to the proceedings before this

104

Court.  Given that some of the Westlaw and LEXIS charges likely related to the proceedings on appeal, the Court finds that it is appropriate to reduce the compensable Westlaw and LEXIS charges by forty percent to take into account expenses that likely occurred on appeal.  After this forty percent reduction, Plaintiffs may recover $604.42 for Westlaw charges[16] incurred by Bondurant, Mixson & Elmore, LLP, and $1,051.90 in LEXIS charges[17] incurred by Bondurant, Mixson, & Elmore, LLP.

Fourth, the Court cannot determine from the records presented by Plaintiffs whether the $809.40 in copying charges incurred by Bondurant, Mixson & Elmore, LLP on

---

[16]The Court arrived at this figure by multiplying the $1,007.36 in Westlaw charges initially sought by 0.6.

[17]The Court calculated this figure by multiplying the $1,753.16 in LEXIS charges initially sought by 0.6.

AO 72A

(Rev.8/82)

February 10, 2006, and the $62.50 in copying charges incurred by Attorney Hine on October 31, 2005, all related to the proceedings before this Court. The Court agrees with the State Defendants that a portion of those charges likely related to the proceedings on appeal, and that the charges appear excessive. The Court therefore will reduce those copying charges by fifty percent to take into account charges relating to the appeal and excessive charges. Plaintiffs thus may recover only $404.70 for photocopying charges incurred by Bondurant, Mixson & Elmore, LLP on February 10, 2006, and only $31.25 in photocopying charges incurred by Attorney Hine on October 31, 2005.

The Court therefore finds that Plaintiffs may recover $1,115.20 in expenses incurred by Attorney Hine. This amount includes: (1) $2.50 in photocopying charges

AO 72A

(Rev.8/82)

incurred on September 13, 2005; (2) $5.15 in postage charges incurred on September 13, 2005; (3) $88.50 in photocopying charges incurred on September 19, 2005; (4) $12.50 in photocopying charges incurred on September 21, 2005; (5) a $16.00 courier fee incurred on September 21, 2005; (6) $250.00 in filing fees; (7) $698.00 in Westlaw charges[18] incurred on October 12, 2005; (8) $11.30[19] in postage charges incurred on October 31, 2005; and (9) $31.25 in photocopying charges incurred on October 31, 2005.

The Court further finds that Plaintiffs may recover

---

[18]The Court calculated this amount by adding the $458.50 and $239.50 in Westlaw charges incurred on October 12, 2005.

[19]The PDF copy of Attorney Hine's billing records filed with the Court "cut off" the last digit of the postage entry for October 31, 2005. (Hine Decl. Ex. A.) Because the Court cannot determine what the actual postage entry was, the Court will presume the entry was for $11.30.

AO 72A

(Rev.8/82)

$4,263.28 in expenses incurred by Bondurant, Mixson & Elmore, LLP.  This amount includes: (1) $45.00 in witness fees incurred on September 28, 2005; (2) $10.00 in messenger service fees incurred on September 30, 2005; (3) $16.35 in messenger service fees incurred on October 1, 2005;  (4) $755.00 in service of process fees incurred on October 1, 2005; (5) $0.24 in long distance charges incurred on October 4, 2005; (6) $412.63 in costs associated with Cathy Cox's videotaped deposition incurred on October 5, 2005; (7) $3.44 in PACER charges incurred on October 5, 2005; (8) $67.90 in mileage and parking charges incurred on October 6, 2005; (9) $306.39 in charges for Clara Williams' deposition transcript incurred on October 12, 2005; (10) $16.65 in messenger charges incurred on October 15, 2005; (11) $50.00 in court messenger charges

108

billed on October 31, 2005, for services provided on October 6, 2005; (12) $50.00 in court messenger charges billed on October 31, 2005, for services provided on October 11, 2005; (13) $186.74 in travel expenses for Attorney Bondurant paid on December 12, 2005; (14) $136.12 in transcript charges incurred on December 28, 2005; (15) $130.04 in travel expenses for Attorney Brackett paid on December 29, 2005; (16) $15.76 in PACER charges incurred on January 6, 2006; (16) $604.42 in Westlaw charges incurred on February 5, 2006; (17) $1,051.90 in LEXIS charges incurred on February 6, 2006; and (18) $404.70 in photocopying charges.

In sum, Plaintiffs may recover $5,378.48 in expenses. This amount includes $1,115.20 plus $4,263.28 in expenses incurred by Bondurant, Mixson & Elmore, LLP.

AO 72A

(Rev.8/82)

## III.  Conclusion

ACCORDINGLY, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Preliminary Motion for Attorney Fees and Expenses [234].  The Court **DENIES WITHOUT PREJUDICE** the portion of the Motion that seeks an award of attorneys' fees for work performed on appeal.  The Court **AWARDS** Plaintiffs $106,856.55 in attorneys' fees and $5,378.48 in expenses.

IT IS SO ORDERED, this the 17 day of December, 2007.

_____
UNITED STATES DISTRICT JUDGE

AO 72A

(Rev.8/82)