UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-21265-CIV-SEITZ/O'SULLIVAN

LEAGUE OF WOMEN VOTERS OF FLORIDA,
PEOPLE ACTING FOR COMMUNITY TOGETHER,
FLORIDA AFL-CIO, AMERICAN FEDERATION OF
STATE AND MUNICIPAL EMPLOYEES, COUNCIL
79 (AFSCME), SEIU FLORIDA HEALTHCARE
UNION, as organization and as representatives of their
members, and MARILYN WILLS,

                Plaintiff,

v.

KURT S. BROWNING, in his official capacity as
Secretary of State for the State of Florida; and
DONALD PALMER, in his official capacity as
Director of the Division of Elections

                Defendants.

_____/

## <u>REPORT AND RECOMMENDATION</u>

      **THIS MATTER** is before the Court upon Plaintiffs' Verified Motion for an Award of Attorneys' Fees and Costs (DE #86, 6/20/08). This matter was referred to the undersigned by the Honorable Patricia A. Seitz, United States District Court Judge for the Southern District of Florida pursuant to 28 U.S.C. § 636 (b). Having reviewed the applicable filings and law, the undersigned respectfully recommends that Plaintiffs' Verified Motion for an Award of Attorneys' Fees and Costs (DE #86, 6/20/08) be **GRANTED in part and DENIED in part** in accordance with this Report and Recommendation.

## INTRODUCTION

The plaintiffs commenced this lawsuit against Florida's Secretary of State and Director of the Division of Elections (hereinafter "defendants")[1] seeking, <u>inter alia</u>, declaratory and injunctive relief to prevent the enforcement of Sections 97.021 (36) and 97.0575, Florida Statutes (2005) (hereinafter "challenged law"). <u>See</u> Complaint (DE# 1, 5/18/06).[2] The challenged law regulated the handling of voter registration applications by third-party voter registration organizations and imposed fines on those organizations and the individuals collecting the applications for failing to submit completed voter registration forms within certain deadlines. Political parties were excluded from the challenged law.

On June 6, 2006, the plaintiffs moved for a preliminary injunction prohibiting the defendants from enforcing the challenged law. <u>See</u> Plaintiffs' Motion for a Preliminary Injunction and Incorporated Memorandum of Law (DE# 10 at Exhibit A, 6/8/06). On June 21, 2006, the defendants moved to dismiss the plaintiffs' complaint for failure to state a claim and for lack of standing with respect to Count IV. <u>See</u> Defendants' Motion to Dismiss and Memorandum of Law in Support Thereof (DE# 26, 6/28/06).  On August 28, 2006, the Court issued an order granting in part and denying in part the plaintiffs' motion for preliminary injunction and the defendants' motion to dismiss. <u>See</u> Order

---

[1] When the action was commenced, the defendants were Secretary of State Sue M. Cobb and Director of the Division of Elections Dawn K. Roberts. While the case was on appeal, Kurt S. Browning and Donald Palmer succeeded the original defendants and were automatically substituted as parties.

[2] The plaintiffs filed an Amended Complaint on October 2, 2006. <u>See</u> First Amended Complaint for Declaratory and Injunctive Relief (DE# 67, 10/2/06).

Granting in Part and Denying in Part Plaintiffs' Motion for Preliminary Injunction and

Granting in Part and Denying in Part Defendants' Motion to Dismiss (DE# 57, 8/28/06).

In the August 28, 2006 Order, the Court found that the challenged law:

"unconstitutionally discriminate[d] in favor of political parties by excluding them from the

definition of 'third party voter registration organization' . . . . [the law's] combination of

heavy, strict, joint and several liability fines [were] unconstitutional as it chill[ed]

Plaintiffs' First Amendment speech and association rights." Id. at 2 - 3. The Court also

granted the defendants' motion to dismiss to the extent that the plaintiffs did not have

standing to bring Count IV and could not sue the defendants in their individual

capacities. Id. at 3. The defendants appealed the Court's Order. See Notice of Appeal

(DE# 58, 8/28/06).

While the instant action was on appeal, Florida's governor signed into law

Chapter 2007-30, Laws of Florida (hereinafter "amended challenged law").[3] The

amended challenged law differed from the original challenged law in several respects

including: (1) significantly reducing the amount of fines; (2) implementing a $1,000

annual limit or cap on the amount of fines that could be levied against an organization;

(3) removing the exception for political parties and (4) adding a provision waiving the

applicable fine based on "force majeure or impossibility of performance." On July 11,

2007, the defendants filed a Suggestion of Impending Mootness with the Eleventh

_____

[3] On November 30, 2007, the parties entered into a stipulation indicating that the
defendants would not enforce the challenged law, as amended by Chap. 07-30, Laws
of Florida, unless otherwise ordered by the District Court. See Notice of Filing Joint
Stipulation (DE# 78 at 5, 11/30/07). The defendants filed a notice terminating this
stipulation on March 31, 2008. See Defendants' Notice of Termination of Stipulation
(DE# 80, 3/31/08).

Circuit. See Defendants' Response to Plaintiffs' Verified Motion for an Award of Attorneys' Fees and Costs (DE# 92 at Exhibit A, 7/25/08). On February 19, 2008, the Eleventh Circuit issued an Order dismissing the appeal as moot. The appellate court reasoned that: "[b]ecause the legislative amendments are now in effect, and the law preliminarily enjoined no longer exists in its challenged form, it is appropriate for us to dismiss this appeal as moot."  See Order of Dismissal by United States Court of Appeals (DE# 79 at 3, 2/22/08).

After their appeal was dismissed, the defendants filed a motion to dismiss the instant action in the District Court. See Defendants' Motion to Dismiss for Lack of Jurisdiction (DE# 81, 4/3/08). The plaintiffs did not object to the dismissal of their complaint as moot. See Plaintiffs' Response to Defendants' Motion to Dismiss for Lack of Jurisdiction (DE# 82, 4/21/08). The plaintiffs indicated that while the amended challenged law rendered their original complaint moot, they would be filing a second lawsuit seeking relief from the amended challenged law. "Rather than petitioning this Court for leave to amend the First Amended Complaint in the instant action, plaintiffs will challenge the amended law in a new complaint to be filed shortly." Id. at 5. On April 24, 2008, the District Court issued an Order (DE# 83) granting the defendants' motion and dismissing the case as moot.

On June 20, 2008, the plaintiffs filed the instant motion, Plaintiffs' Verified Motion for an Award of Attorneys' Fees and Costs (DE #86, 6/20/08). The defendants filed their response on July 25, 2008. See Defendants' Response to Plaintiffs' Verified Motion for an Award of Attorneys' Fees and Costs (DE# 92, 7/25/08). The plaintiffs filed their reply on August 22, 2008. See Plaintiffs' Reply Memorandum of Law in Support of Their

4

Verified Motion for an Award of Attorneys' Fees and Costs (DE# 94, 8/22/08). The

undersigned allowed the defendants to file a sur-reply. <u>See</u> Defendants' Sur-reply in

Opposition to Plaintiffs' Verified Motion for an Award of Attorneys' Fees and Costs (DE#

100, 10/3/08). This matter is ripe for review.

<u>ANALYSIS</u>

**A.      Attorney's Fees**

**1.      Timeliness and Special Circumstances**

The defendants argue that the instant motion should be denied because it was

not timely filed. <u>See</u> Defendants' Response to Plaintiffs' Verified Motion for an Award of

Attorneys' Fees and Costs (DE# 92 at 9, 7/25/08). According to the defendants, the

plaintiffs should have moved for interim attorney's fees and costs following the Court's

Order Granting in Part and Denying in Part Plaintiffs' Motion for Preliminary Injunction

and Granting in Part and Denying in Part Defendants' Motion to Dismiss (DE# 57,

8/28/06). <u>Id.</u> "Plaintiffs' delay of nearly two years is sufficient alone to support denial of

their Motion." <u>Id.</u> at 10.

The defendants point to Local Rule 7.3 (A) which states any motion for attorney's

fees and costs "shall be filed and served within thirty days of entry of a Final Judgment

or other appealable order that gives rise to a right to attorneys fees and/or costs." S.D.

Fla. L.R. 7.3 (A). The defendants argue that the plaintiffs should have moved for fees

and costs following the preliminary injunction order. Defendants' Response to Plaintiffs'

Verified Motion for an Award of Attorneys' Fees and Costs (DE# 92 at 9, 7/25/08). The

defendants reason that in this case there was no final judgment, thus "[t]o the extent

5

Plaintiffs' counsel would be entitled to fees, it is the August 28, 2006 [preliminary injunction] order that constituted the 'appealable order that gives rise to a right to attorneys' fees.'" Id. (citing S.D. Fla. L.R. 7.3 (A)).

The plaintiffs argue that the instant motion is not untimely because under Local Rule 7.3 (A), the relevant order was the Order (DE# 83, 4/24/08) dismissing the case. Plaintiffs' Reply Memorandum of Law in Support of Their Verified Motion for an Award of Attorneys' Fees and Costs (DE# 94 at 6-7, 8/22/08). Since the plaintiffs obtained an Order (DE# 85, 5/23/08) extending the time to file the instant motion within 30 days of the Order (DE# 83) dismissing the case, the instant motion is timely. Id.  The plaintiffs also argue that because a request for interim fees is not mandatory, they were not required to file the instant motion within 30 days of the order issuing the preliminary injunction. Id. at 7 n 7.

The plaintiffs' request for district court attorney's fees[4] is timely. The cases cited by the defendants, Hastings v. Maine-Endwell Cent. School Dist., 676 F. 2d 893, 895 (2d Cir. 1982) and Deerfield Med. Ctr. v. Deerfield Beach, 661 F. 2d 328, 339 (5th Cir. 1981), stand for the proposition that a party can move for interim attorney's fees after obtaining a preliminary injunction. However, the defendants' case law does not foreclose the possibility that the plaintiffs could move for attorney's fees and costs at the end of the case. Similarly, Local Rule 7.3 (A) does not preclude the plaintiffs from moving for attorney's fees and costs at this juncture. The defendants' interpretation of Local Rule 7.3 (A) would require a litigant to move for interim fees following the

---

[4]  The undersigned will address the plaintiffs' entitlement to appellate attorney's fees below.

issuance of an appealable order giving rise to a right to attorney's fees in every instance

in order to avoid forfeiting fees in the event the District Court does not ultimately enter a

final judgment in the case. Under the defendants' reasoning, a request for interim

attorney's fees would effectively become mandatory following the issuance of every

appealable order wherein attorney's fees are recoverable. Instead, the undersigned

reads Local Rule 7.3 (A) as permitting a prevailing party to move for interim attorney's

fees or attorney's fees at the conclusion of the litigation.

The defendants also argue that special circumstances render an award of

attorney's fees unjust in the instant case. See Defendants' Response to Plaintiffs'

Verified Motion for an Award of Attorneys' Fees and Costs (DE# 92 at 10, 7/25/08).

Specifically, the defendants argue that the Court should not award attorney's fees

because the challenged law has been amended and the plaintiffs have continued their

legal challenges in a separate lawsuit. "Rather than continuing their earlier litigation and

amending their Complaint – as they indicated they would do – Plaintiffs consented to

dismissal and promptly re-filed." Id.

The undersigned does not find that the circumstances in the instant case would

render an award of reasonable attorney's fees unjust. It is not unusual for a statute to

be amended following a legal challenge and the Federal Rules of Civil Procedure do not

prohibit the plaintiffs from commencing a new action to challenge an amended law. Of

note, the plaintiffs in responding to the defendants' motion to dismiss the instant action

for lack of jurisdiction indicated that they would do just that: "Plaintiffs do not dispute

that the claims in the First Amended Complaint, challenging the previous versions of

Fla. Stat. § § 97.021(36) and 97.0575, are, without further amendment of the complaint,

now moot. . . . Rather than petitioning this Court for leave to amend the First Amended

Complaint in the instant action, plaintiffs will challenge the amended law in a new

complaint, to be filed shortly." See Plaintiffs' Response to Defendants' Motion to

Dismiss for Lack of Jurisdiction (DE# 82 at 4 - 5, 4/21/08). The circumstances of the

instant case are not such that would render an award of reasonable attorney's fees

unjust.

### 2.    Entitlement

The plaintiffs seek attorney's fees against the defendants pursuant to 42 U.S.C.

§ 1988. See Plaintiffs' Verified Motion for an Award of Attorneys' Fees and Costs (DE#

86, 6/20/08). Section 1988 (b), states, in part, as follows:

> In any action or proceeding to enforce a provision of section[ ] . . . 1983 .
> . . the court, in its discretion, may allow the prevailing party, other than the
> United States, a reasonable attorney's fee as part of the costs, except that
> in any action brought against a judicial officer for an act or omission taken
> in such officer's judicial capacity such officer shall not be held liable for
> any costs, including attorney's fees, unless such action was clearly in
> excess of such officer's jurisdiction.

42 U.S.C. § 1988 (b). Under section 1988, "a prevailing plaintiff should recover

reasonable attorneys' fees unless special circumstances render an award unjust."

Gaines v. Dougherty County Bd. of Educ., 775 F.2d 1565, 1569 (11th Cir.1985). "To be

a 'prevailing party,' it is not necessary for a plaintiff ultimately to prevail on each and

every claim asserted or to receive all the relief requested;" he needs to prevail on some

of his claims. Doe v. Busbee, 684 F.2d 1375, 1379 (11th Cir.1982). See also Goldsmith

v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1292 (11th Cir. 2008). "The touchstone of

the prevailing party inquiry must be the material alteration of the legal relationship of the

parties in a manner which Congress sought to promote the fee statute." Texas State

Teachers Assn v. Garland Independent School Dist., 489 U.S. 782, 792-93 (1989).

### a.   District Court Fees

The plaintiffs claim that they are entitled to reasonable attorney's fees because they are the prevailing parties in the instant action. "Plaintiffs in this case have succeeded on their claims and won all of the relief they sought by winning a preliminary injunction on the merits barring defendants from enforcing the challenged law for approximately 22 months and winning dismissal of defendants' appeal to the Eleventh Circuit." Plaintiffs' Verified Motion for an Award of Attorneys' Fees and Costs and Incorporated Memorandum of Law and Request for Hearing (DE# 86 at 9, 6/20/08). "As a result [of the preliminary injunction], [the plaintiffs] were able to immediately resume registering voters free from the threat of potentially devastating government fines for approximately 22 months, until a revised law became effective and mooted plaintiffs' suit." Id. at 10.

The defendants dispute the plaintiffs' claim that they are the prevailing party. The defendants note that the plaintiffs have filed a new lawsuit challenging the amended law:

> [The plaintiffs] have flatly and consistently denied that the legislative amendment accomplished their objectives. They have told this Court that it leaves in place the essential features of the challenged law, that it is equally burdensome and is no more narrowly tailored than its predecessor, that it will compel [the plaintiffs] once again to refrain from their voter registration activities, that it returns them to the same position as before the first litigation, and that further judicial relief is necessary to secure their constitutional rights. . . . [The plaintiffs] brought the same case in the same court against the same defendants seeking the same redress for the same alleged injuries inflicted by the same statute (as amended).

Defendants' Response to Plaintiffs' Verified Motion for an Award of Attorney's Fees and

9

Costs (DE# 92 at 7-8, 7/25/08). The defendants further argue that the plaintiffs improperly challenged the amended law in a separate action instead of amending their complaint in the instant action thereby continuing the case. Id. at 8. "By bringing a second suit rather than amending their complaint, Plaintiffs here improperly seek to hew a foundation for the award of fees from a transient victory. To allow fees on a procedural contingency when Plaintiffs' constitutional challenge proceeds as before – though in a different courtroom – would exalt form over substance." Id.

The plaintiffs have established that they are the prevailing party in the instant action. The plaintiffs filed the instant action to "prevent the enforcement of [the challenged law], that severely burdens [plaintiffs'] efforts to encourage civic engagement by registering citizens to vote." Complaint for Declaratory and Injunctive Relief (DE# 1 at ¶ 1, 5/22/06). As stated in their complaint, the plaintiffs sought the following relief: "that the Court declare the challenged law unconstitutional under the First and Fourteenth Amendments, enjoin defendants from enforcing it, and award such other relief as the Court deems proper." Id. at ¶ 7. On August 28, 2006, the District Court issued a preliminary injunction on the merits. See Order Granting in Part and Denying in Part Plaintiffs' Motion for Preliminary Injunction and Granting in Part and Denying in Part Defendants' Motion to Dismiss (DE# 57, 8/28/06). The District Court specifically found that:

> As to Count I and II, . . . the [challenged law] unconstitutionally discriminates in favor of political parties by excluding them from the definition of 'third party voter registration organization.' As to Count III, the Court finds that the [challenged law's] combination of heavy, strict, joint and several liability fines is unconstitutional as it chills Plaintiffs' First Amendment speech and association rights. As to Count IV, the Court grants Defendants' Motion to Dismiss because, on the face of the

> Complain, Plaintiffs do not have standing to address the rights of Florida citizens generally. The Court also dismisses the claims against Defendants in their individual capacities.

Id. at 2-3. The plaintiffs obtained a preliminary injunction enjoining the defendants "from enforcing the provisions of [the challenged law] that subject third-party voter registration organizations to financial penalties for failing to submit voter registration applications in the manner prescribed by law" and "from excluding political parties from the definition of third party voter registration organization in [the challenged law]." Id. at 47.

The defendants argue that the plaintiffs are not the prevailing parties in the instant action because they are now challenging the new amended law on the same constitutional grounds. Defendants' Response to Plaintiffs' Verified Motion for an Award of Attorney's Fees and Costs (DE# 92 at 8, 7/25/08). The undersigned disagrees with the defendants. The fact that the plaintiffs have commenced a new lawsuit against the amended challenged law does not negate their prevailing party status with respect to the instant lawsuit.

The defendants further argue that the 22-month exemption from the challenged law during the pendency of the preliminary injunction is insufficient to establish an entitlement to fees. "[T]emporary relief, without more, is insufficient to establish an entitlement to fees." Defendants' Response to Plaintiffs' Verified Motion for an Award of Attorney's Fees and Costs (DE# 92 at 8, 7/25/08). The defendants rely on Doe v. Busbee, 684 F. 2d 1375 (11th Cir. 1982).

In Busbee, the plaintiffs "[sought a] declaratory judgment that the rules governing the administration of the Medicaid program in Georgia, which limited state funding of abortions[,] . . . were invalid under the Medicaid Act and the United States Constitution."

11

Id. at 1377. The District Court granted a preliminary injunction in favor of the plaintiffs and later "awarded summary judgment . . . and entered both declaratory relief and a permanent injunction requiring [the defendants] to provide Medicaid reimbursement for all medically necessary abortions for eligible women in Georgia." Id.  While the injunction was in effect, approximately 1,800 women had abortions funded by Medicare in Georgia. The District Court later vacated its final judgment in light of subsequent Supreme Court decisions.

In Busbee, the District Court had awarded the plaintiffs, as the prevailing parties, attorney's fees and declined to revisit the attorney's fee ruling after the final judgment in favor of the plaintiffs had been vacated. On appeal, the Eleventh Circuit reversed the district court's fee award reasoning that:

> [T]he plaintiff did achieve substantial victories in the district court; the plaintiffs were successful in obtaining a preliminary injunction, a permanent injunction, and declaratory relief. It is undisputed that over 1800 women, including the two named plaintiffs, received medicaid reimbursed abortions under these injunctions. **However, at the time that the district court awarded attorney's fees to plaintiffs, the Supreme Court had already handed down decisions that undercut the legal reasoning employed by the district court in issuing those injunctions.**

Id. at 1381 (emphasis added).

Busbee is distinguishable from the instant case because the final judgment for the plaintiffs issued in Busbee was later vacated. As such, the plaintiffs is Busbee were not the prevailing party. See Taylor v. City of Ft. Lauderdale, 810 F. 2d 1551, 1556 (11th Cir. 1987) (noting that the plaintiffs in Busbee were "never actually prevailing parties" because "the preliminary injunction [had been granted] through 'a mistake in

law' since Georgia had never actually violated the law, as evidenced by the two intervening Supreme Court decisions."). By contrast, the preliminary injunction issued in the instant case was not overturned on the merits, it was mooted following the enactment of the amended challenged law. Thus, the preliminary injunction remained in effect until it was mooted and was never overturned.[5]

In sum, the undersigned finds that there was a material change in the legal relationship between the plaintiffs and the defendants which benefitted the plaintiffs. The Court in the instant action issued a preliminary injunction on the merits, that injunction remained in place for approximately 22 months until it became moot by the amended challenged law. The amended challenged law addressed many of the legal flaws alleged by the plaintiffs in the instant action including the exclusion of political parties and the fee structure. The fact that the plaintiffs raise new legal challenges against the amended challenged law does not negate their real and substantial legal victory in the instant action against the challenged law. As such, the plaintiffs are the prevailing parties and are entitled to reasonable attorneys' fees.

### b. Appellate Fees

The plaintiffs also seek appellate attorney's fees. The defendants argue that the plaintiffs are not entitled to appellate attorney's fees because they did not request those fees from the Circuit Court. The defendants note that the Eleventh Circuit requires that attorney's fees be filed within 14 days of the issuance of the Eleventh Circuit's opinion.

---

[5] The defendants also rely on <u>Sole v. Wyner</u>, 127 S. Ct. 2188 (2007). However, <u>Sole</u> is distinguishable from the instant case because although the plaintiffs in <u>Sole</u> obtained a preliminary injunction, the court later issued an adverse ruling on the merits.

See Defendants' Response to Plaintiffs' Verified Motion for An Award of Attorneys'

Fees and Costs (DE# 92 at 11, 7/25/08) (citing Mills by Mills v. Freeman, 118 F. 3d 727,

734 (11th Cir. 1997)). Rule 39-2(a) states that:

> Time for Filing. Except as otherwise provided herein or by statute or court order, an application for attorney's fees must be filed with the clerk within 14 days after the time to file a petition for rehearing or rehearing en banc expires, or within 14 days after entry of an order disposing of a timely petition for rehearing or denying a timely petition for rehearing en banc, whichever is later. For purposes of this rule, the term "attorney's fees" includes fees and expenses authorized by statute, but excludes damages and costs sought pursuant to FRAP 38, costs taxed pursuant to FRAP 39, and sanctions sought pursuant to 11th Cir. R. 27-4.

11th Cir. R. 39-2(a).

The plaintiffs do not dispute that they did not seek appellate attorney's fees from

the Circuit Court. Instead, they argue that Rule 39-2 of the Eleventh Circuit Rules allows

them to seek appellate attorney's fees at this time. Rule 39-2(e) states as follows:

> Remand for Further Proceedings. When a reversal on appeal, in whole or in part, results in a remand to the district court for trial or other further proceedings (e.g., reversal of order granting summary judgment, or denying a new trial), a party who may be eligible for attorney's fees on appeal after prevailing on the merits upon remand may, in lieu of filing an application for attorney's fees in this court, request attorney's fees for the appeal in a timely application filed with the district court upon disposition of the matter on remand.

11th Cir. R. 39-2(e). The plaintiffs acknowledge that Rule 39-2(e) is not readily

applicable to the instant case, where the Circuit Court did not remand the case to the

District Court but dismissed the appeal as moot. Nonetheless, the plaintiffs argue that

the Court should still consider their request for appellate attorney's fees:

> Although the panel's order dismissing the appeal as moot did not formally result in a reversal and remand, the net effect was the same: the panel clearly rejected defendants' argument that it should vacate the preliminary injunction order "without the need for further proceedings" . . . and sent

14

the case back to the Court where the parties engaged in additional motion practice before the case was finally resolved.

See Plaintiffs' Reply Memorandum of Law in Support of Their Verified Motion for an Award of Attorneys' Fees and Costs (DE# 94 at 8, 8/22/08).

The undersigned finds that the plaintiffs are not entitled to appellate fees. The plaintiffs did not seek attorney's fees from the appellate court and do not fall under the exception provided in Rule 39-2(e). Generally, an application for appellate attorney's fees must be filed with the Circuit Court "within 14 days after the time to file a petition for rehearing or rehearing en banc expires, or within 14 days after entry of an order disposing of a timely petition for rehearing or denying a timely petition for rehearing en banc, whichever is later." See 11th Cir. R. 39-2(a). In the instant case, the plaintiffs did not move for appellate attorney's fees in the Circuit Court. Instead, the plaintiffs seek to apply 11th Cir. R. 39-2(e). In doing so, the plaintiffs ask this Court to ignore the plain language of Rule 39-2(e) which applies to situations where the appeal is remanded to the District Court for trial or other proceedings. Here, the appeal was not remanded but dismissed as moot. As such, Rule 39-2(e) is inapplicable and the plaintiffs' should have requested appellate attorney's fees from the Eleventh Circuit. The plaintiffs' request for appellate attorney's fees is untimely and should be denied.

### 3.    Amount of Fee Award

Having determined that the prevailing plaintiffs are entitled to an award of attorney's fees incurred in connection with this lawsuit, the undersigned next addresses the appropriate amount of that fee award. In calculating a reasonable attorney's fee award, the Court must consider the number of hours reasonably expended on this

litigation, together with the customary fee charged in this community for similar legal services. See Henesley v. Eckerhart, 461 U.S. 424 (1983). These two figures are then multiplied together, resulting in a sum commonly referred to as the "lodestar." Under certain circumstances, the lodestar may be adjusted in order to reach a more appropriate attorney's fee. See Blum v. Stenson, 465 U.S. 886, 888, 104 S.Ct. 1541, 1544 (1984).

### a.    Reasonable Hourly Rate

The Court must first evaluate the prevailing plaintiffs' requested fee in terms of the appropriate hourly rate. In order to determine a reasonable and proper fee award, the Court must consider the number of hours expended on the case together with the customary hourly fees charged in this community for similar services. See Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988). The Supreme Court has held that a reasonable hourly rate is to be measured by "prevailing market rates in the relevant community." Blum v. Stenson, 465 U.S. 886, 896 (1984). In determining the prevailing market rates the Court should consider several factors including "the attorney's customary fee, the skill required to perform the legal services, the attorney's experience, reputation and ability, the time constraints involved, preclusion from other employment, contingency, the undesirability of the case, the attorney's relationship to the client, and awards in similar cases." Mallory v. Harkness, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996) citing Dillard v. City of Elba, 863 F. Supp. 1550, 1552 (M.D. Ala. 1993).

Generally, acceptable proof of the market rate may be comprised of testimony and direct evidence from other legal practitioners in the relevant legal community who

16

are familiar with the type of legal service provided and the prevailing market rate for such work. <u>Norman</u>, 836 F.2d at 1299. Furthermore, the Court may make a fee award based on its own experience where documentation and testimony is inadequate or the fees claimed seem expanded. <u>Norman</u>, 836 F.2d at 1303 citing <u>Davis v. Board of School Commissioners of Mobile County</u>, 526 F.2d 865, 868 (5th Cir. 1976).

The prevailing plaintiffs request hourly rates of $550.00 for attorney Eric Tirschwell, $400.00 for attorneys Craig Seigel, Erin Walter, Wendy Weiser and Elizabeth Westfall and $300.00 for attorneys Renee Paradis and Amy Weiner. <u>See</u> Plaintiffs' Verified Motion for an Award of Attorneys' Fees and Costs (DE# 86 at 13, 6/20/08). The defendants claim the plaintiffs' hourly rates are unreasonable and ask the Court to reduce each of the hourly rates requested by not less than $100. <u>See</u> Defendants' Response to Plaintiffs' Verified Motion for an Award of Attorneys' Fees and Costs (DE# 92 at 17-19, 7/25/08).

The undersigned finds these rates excessive and recommends a twenty percent reduction in these rates as follows:

| Attorney | Requested Hourly Rate[6] | Awarded Hourly Rate |
|----------|--------------------------|---------------------|
| Eric Tirschwell | $550 | $440 |
| Craig Siegel | $400 | $320 |
| Erin Walter | $400 | $320 |
| Wendy Weiser | $400 | $320 |
| Elizabeth Westfall | $400 | $320 |

---

[6] The undersigned recognizes that the plaintiffs' counsel have already reduced the requested rates from their normal hourly rates but finds that a further reduction is necessary.

| | | |
|---|---|---|
| Renee Paradis | $300 | $240 |
| Amy Weiner | $300 | $240 |

In arriving at this reduction, the undersigned has considered and weighed the evidence, counsels' reputation and experience in the areas of the applicable law, the undersigned's familiarity with civil rights litigation and attorneys' fees in general and the affidavit of James K. Green, Esq. The undersigned recognizes that the plaintiffs' are represented by skilled attorneys with experience in the area of civil rights litigation but finds that the reduced rates ranging from $440 to $240 is more inline with the prevailing market rates in this community. The undersigned notes that this range is at or just below the plaintiffs' expert James Green's opinion of reasonable rates in the Southern District of Florida. See Affidavit of James K. Green, Esq (DE# 86-8 at 5, 6/20/08). The undersigned will make a 20 percent reduction after calculating the loadstar to account for these reduced rates.

### b. Hours Reasonably Expended

The Court must next evaluate the prevailing plaintiffs' requested fee for reasonableness in terms of the total hours expended by plaintiffs' counsel. The prevailing plaintiffs' motion requests reimbursement for 1,742.9 hours[7] allocated as follows:

| Activity | Hours |
|---|---|
| Fact Investigation | 132.4 |

---

[7] The plaintiffs arrived at this amount after undertaking a voluntary reduction of approximately 1,950 hours. See Plaintiffs' Verified Motion for an Award of Attorneys' Fees and Costs and Incorporated Memorandum of Law (DE# 86 at 17, 6/20/08).

18

| | |
|---|---|
| Research and Drafting Complaint | 133.2 |
| Preliminary Injunction and Motion to Dismiss | 1,130.4 |
| Appeal | 285.4 |
| Attorney's Fee Motion | 61.5 |

See Plaintiffs' Verified Motion for an Award of Attorneys' Fees and Costs (DE# 86 at 15 - 16, 6/20/08).

The defendant seeks to substantially reduce the amount of hours expended litigating the instant action. The defendants argues that because the plaintiffs did not enter into representation agreements until April 5, 2006, the Court should not award attorney's fees for the hours recorded prior to that date. See Defendants' Response to Plaintiffs' Verified Motion for an Award of Attorneys' Fees and Costs (DE# 92 at 12, 7/25/08). Thus, the defendants seek to eliminate 204.9 hours[8] incurred before counsel secured their clients. Id. The plaintiffs cite to Dowdell v. City of Apopka, Florida, 698 F. 2d 1181, 1188 (11th Cir. 1983) for support of their entitlement to the fees incurred prior to the representation agreements. See Plaintiffs' Reply Memorandum of Law in Support of Their Verified Motion for an Award of Attorneys' Fees and Costs (DE# 94 at 9, 8/22/08). In Dowdell, the successful plaintiffs were allowed to recover hours invested prior to the establishment of the attorney-client relationship:

The challenged hours concern conferences with the NAACP of Apopka,

---

[8] The undersigned notes that the 204.9 hours that the defendants seek to eliminate also include approximately 37.1 hours spent on preparing the complaint. Some of these hours are already included in the 92 hours the defendants challenge as excessive in preparing the complaint. See Defendants' Response to Plaintiffs' Verified Motion for an Award of Attorneys' Fees and Costs (DE# 92 at Exhibit F, 7/25/08).

and on-site review of the black community of Apopka prior to the selection of the named plaintiffs. This case is a . . . class action on behalf of the black residents of Apopka. The lawyer-client relationship may, therefore, be deemed to have been struck when negotiations were begun with the black community of Apopka of which the NAACP may appropriately be considered a part.

Dowdel, 698 F. 2d at 1188 (11th Cir. 1983). The undersigned agrees with the plaintiffs that they are entitled to recover for work performed prior to entering into the representation agreements. In the instant case, these hours represent fact gathering, witness interviewing and legal research. However, and as discussed in detail below, some reductions are warranted.

The defendants assert that the remaining hours are excessive, duplicative, lack specificity or represent clerical work and must be excluded. See Defendants' Response to Plaintiffs' Verified Motion for An Award of Attorneys' Fees and Costs (DE# 92 at 14-17). Specifically, the defendants challenge the 92 hours[9] spent on drafting, reviewing and discussing the complaint, 71.6 hours spent on conferencing, 6.9 hours spent on verifying citations and .7 hours arranging travel as clerical work, and 3.2 hours on pro hac vice issues. Id. The defendants argue that the plaintiffs' fee request is so unreasonable it should be denied in its entirety. Id. at 16.

The prevailing plaintiffs counter that their fees request is reasonable. They further argue that because the defendants made categorical objections and failed to object to each billing entry individually, the Court should award those hours that were not objected to by the defendants. See Plaintiffs' Reply Memorandum of Law in Support

_____

[9] As noted above, some of these hours are included in the 204.9 hours the defendants challenge as pre-representation work.

of Their Verified Motion for an Award of Attorneys' Fees and Costs (DE# 94 at 8-9, 8/22/08). The plaintiffs further argue that the Court should disregard the defendants' objections because the defendants failed to provide expert or lay witness evidence as to the unreasonableness of the plaintiffs' fee request. Id. at 9.

This Court must exercise independent judgment when reviewing a claim for hours reasonably expended. See Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292, 1301-02 (11th Cir. 1988). It is important to keep accurate and current records of work done and time spent on a case, especially when a third party, i.e., someone other than the client, may pay the bills. See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). If there is inadequate documentation or if the Court finds a claim for hours to be "excessive or unnecessary," the Court may reduce the number of hours for which fees will be awarded. "Attorneys who anticipate making a fee application must maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney." National Ass'n. of Concerned Veterans v. Secretary of Defense, 675 F.2d 1319, 1327 (D.C. Cir. 1982).

In the instant motion, the prevailing plaintiffs seek $708,725.00[10] in attorney's fees. At the outset, the undersigned will subtract appellate attorney's fees which the undersigned has already determined the plaintiffs are not entitled to. The plaintiffs indicate that the total amount of time spent on the appeal is 285.4. See Plaintiffs' Verified Motion for Attorney's Fees and Costs (DE# 86 at 15-16, 6/20/08).  The

---

[10] This amount is based on the original hourly rates requested by the plaintiffs. The undersigned will later reduce the loadstar by twenty percent to account for the reduced hourly rates awarded.

21

undersigned's independent calculations found 281.8 hours[11] spent on appellate work as follows: 10.9 hours for Eric Trischwell, 64.6 hours for Erin Walters, 119.9 hours for Wendy Weiser and 86.4 hours for Rene Paradis. At their respective hourly rates, the undersigned finds that $105,715.00 represents the amount of fees requested for appellate work. Thus, the undersigned will reduce the attorney's fee request to $603,010.00 ($708,725.00 minus $105,715.00).

With respect to the remaining time entries, an independent and careful review of the plaintiffs' billing records submitted to this Court, show that the time entries were contemporaneous, complete, standardized and accurately reflect the work done by each attorney. However, certain reductions in the prevailing plaintiffs' fee request are necessary.

As noted above, the defendants seek to eliminate 204.9 hours (or $82,620.00) of work performed prior to the representation agreements. The case law clearly allows for the recovery of pre-representation work in civil rights actions such as the instant case. See Dowdel, 698 F. 2d at 1188 (11th Cir. 1983), supra. Some of the time entries included in the 204.9 hours consist of work performed in preparing the complaint. In order to avoid duplicative reductions, the undersigned will remove the pre-

_____

[11] Although there is a slight variance of 3.6 hours  between the hours claims by the plaintiffs for appellate work and the hours the undersigned's independent review of the billings records yielded, the total hours calculated by the undersigned for the entire litigation add up to 1,743.4 hours, only .5 hours more than the amount requested by the plaintiffs. The difficulty with relying on the summaries provided by the plaintiffs is that the plaintiffs failed to breakup the hours by their corresponding hourly rate, making it impossible for the undersigned to calculate a total dollar amount. Thus, the undersigned undertook this task, resulting in a total variance of .5 hours.

representation hours expressly[12] devoted to preparing the complaint and add those hours to the next time period, April 5, 2006 to August 28, 2006. Based on the undersigned's independent calculations approximately 37.1 hours (or $15,095.00) were expressly spent on preparing the complaint prior to the representation agreements. Thus, the total pre-representation work, excluding complaint preparation hours, is approximately 167.8 hours (204.9 minus 37.1) or $67,525.00 ($82,620.00 minus $15,095.00). The undersigned finds that a reduction of this amount is proper.

The undersigned recognizes the importance of coordinating strategy, reviewing documents, conducting legal research and interviewing potential witnesses or plaintiffs in anticipation of a civil rights litigation. Nonetheless, 167.8 hours appears somewhat excessive in the instant case. For instance, plaintiffs' counsel spent approximately 58.2 in meetings or telephone conferences[13] and approximately 50.6 hours reviewing or preparing memos including emails and correspondence. Based on the undersigned's review of the record, a relatively small reduction of 15 percent or $10,128.75 is proper. Thus, with respect to pre-representation work (not including the complaint), the undersigned recommends that the plaintiffs recover $57,396.25 ($67,525.00 minus $10,128.75).

Next, the undersigned will address attorney's fees requested from the time of the

---

[12] The undersigned recognizes that there is some overlap between client interviews and preparing the complaint, thus only entries that explicitly referred to the complaint were removed from the total.

[13] The undersigned recognizes that multiple attorneys attended these meetings or telephone conferences but nonetheless finds 58.2 hours for the 176-day period between October 10, 2005 to April 4, 2006 excessive.

representation agreements to the filing of the notice of appeal, April 5, 2006 to August 28, 2006. This time period represents the bulk of the litigation. The plaintiffs are seeking attorney's fees in the amount of approximately $498,390 (or 1195.2 hours). Of this amount, the undersigned will add the approximate $15,095.00 (or 37.1 hours ) spent on preparing the complaint (during the pre-representation period) for a total of $513,485.00 (or 1232.3 hours), which were previously subtracted from the pre-representation work, see supra.

The undersigned notes that some of the time entries are vague. For instance: "TC w/ client" does not provide the Court with sufficient information to determine the reasonableness of the time entries. Similarly, entries like "review and edit affidavits" and "reviewing affidavits" do not provide the Court with sufficient information to determine whether such entries are duplicative or excessive. The amount of time devoted to some activities is excessive such as 133.2 for the complaint and 1,130.4 hours devoted to the preliminary injunction and motion to dismiss. See Plaintiffs' Verified Motion for an Award of Attorneys' Fees and Costs (DE# 86 at 15 - 16, 6/20/08) (representing the following time allocations: 133.2 hours for the complaint and 1,130.4 hours for the preliminary injunction and motion to dismiss). As such, a 30 percent reduction ($154,045.50) for the April 5, 2006 to August 28, 2006 time entries[14] is warranted. The undersigned recommends that the plaintiffs receive $359,439.50 ($513,485.00 minus $154,045.50) in attorney's fees for this time period.

The undersigned has reviewed the amount of time spent by the plaintiffs after

_____

[14] Of note, these time entries include approximately 37.1 hours spent on preparing the complaint during the pre-representation period.

the appeal. This post-appellate work consists of seeking attorney's fees and costs. The amount of time the plaintiffs seek to recover for post appellate work is 61.5 hours (or $22,110.00). The plaintiffs state that the amount sought is current up to May 31, 2008 and that the plaintiffs may seek to supplement their application to obtain reimbursement for their time and costs incurred after May 31, 2008. The undersigned notes that the plaintiffs' fee request was filed on June 20, 2008. To date, the plaintiffs have not sought to supplement their fee request and have provided no explanation for the 20-day gap between the time entries submitted to this Court, which end on May 31, 2008, and the date of the filing of the instant motion on June 20, 2008. The undersigned finds 61.5 hours for preparing the entire fee request is reasonable and does not recommend a reduction. However, because of the plaintiffs' failure to supplement their fee request to include additional time incurred after May 31, 2008, the undersigned recommends that any future request for supplemental fees be denied.

After careful review of the plaintiffs' billing records and supporting documentation, the total fee award should be reduced to $438,945.75 as follows: $57,396.25 for pre-representation work (excluding entries expressly related to the complaint), $359,439.50 for work performed during the litigation from April 5, 2006 to August 28, 2006 (including entries expressly related to the complaint during the pre-representation period) and $22,110.00 for time spent preparing the fees motion. An additional twenty percent reduction is necessary to account for the reduced hourly rate.[15]  Thus, the fees sought by the prevailing plaintiffs should be reduced to

---

[15] The defendants ask this Court to reduce the loadstar to account for the plaintiffs' lack of success. See Defendants' Response to Plaintiffs' Verified Motion for an

$351,156.60 ($438,945.75 minus 20%).

For the foregoing reasons, the undersigned **RECOMMENDS** awarding

**$351,156.60** in attorney's fees to the prevailing plaintiffs. In reaching this amount, the

undersigned is mindful of the well-established purpose of awarding attorney's fees in

civil rights cases. Reasonable attorney's fees are awarded to the prevailing plaintiffs in

civil rights actions so as to encourage plaintiffs to act as private attorneys general to

vindicate the liberty of all citizens. See Mallory v. Harkness, 923 F.Supp. 1546, 1551

(S.D. Fla. 1996) ((citing Hensley v. Eckerhart, 461 U.S. 424, 445, 103 S.Ct. 1933, 76

L.Ed.2d 40 (1983) (Brennan, J., concurring in part and dissenting in part)).

**B.     Costs**

In the instant case, the plaintiffs seek costs reimbursement in the amount of

$76,363.05 for travel expenses, conference calls, various filing fees, shipping and

courier charges, computerized legal research and printing services. See Declaration of

Craig L. Siegel in Support of Plaintiffs' Motion for an Award of Attorneys' Fees and

Costs (DE# 86 at Exhibit C, 6/20/08). Where as here, the plaintiff seeks costs in a civil

rights case, the traditional limits of Rule 54(d) of the Federal Rules of Civil Procedure

and 28 U.S.C. § 1920 do not apply. See Dowdell v. City of Apopka, Florida, 698 F. 2d

1181, 1188-89 (11th Cir. 1983). "[W]ith the exception of routine office overhead

normally absorbed by the practicing attorney, all reasonable expenses incurred in case

---

Award of Attorneys' Fees and Costs (DE# 92 at 19, 7/25/08). The undersigned finds no
merit in this argument. The plaintiffs successfully obtained a preliminary injunction on
the merits and the trial court's determination of the unconstitutionality of the challenged
law stood. It was not until the challenged law was amended (eliminating or modifying
some of the unconstitutional provisions), that the case became moot.

preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988." Id. at 1192.

The cost breakdown is as follows:

| Cost | Amount Requested | Amount Allowed |
|------|------------------|----------------|
| Litigation Conference Calls | $514.54 | $406.42 |
| Travel | $14,151.77 | $9,776.51 |
| Court-Related Costs | $4,984.76 | $4,556.62 |
| Computerized Legal Research | 45,458.41 | $12,068.78 |
| Document Reproduction and Shipping | $11,253.57 | $9,308.17 |
| Total: | $76,363.05 | $36,116.50 |

See Declaration of Craig L. Siegel in Support of Plaintiffs' Motion for an Award of Attorneys' Fees and Costs (DE# 86 at Exhibit C, 6/20/08). The defendants lodge specific objections to the following costs: computerized legal research, document reproduction and shipping and travel expenses. The undersigned finds that certain reductions are warranted and will address each category in turn.

**1.    Litigation Conference Calls**

The plaintiffs seek $514.54 for conference calls. The undersigned will disallow $108.12 in conference call costs between September 7, 2007 and October 23, 2007 which appear on Wendy Weiser's costs chart. The undersigned assumes, based on the dates of these conference calls, that they relate to the appeal and no alternative explanation has been provided by the plaintiffs to refute this assumption. As such, these costs should not be recovered. Accordingly, the undersigned recommends that

27

the plaintiffs recover $406.42 ($514.54 minus $108.12) for conference calls.

2.    **Travel Expenses**

The plaintiffs seek $14,151.77 for travel expenses. See Declaration of Craig L. Siegel in Support of Plaintiffs' Motion for an Award of Attorneys' Fees and Costs (DE# 86 at Exhibit C, 6/20/08). The defendants argue that these travel expenses are excessive. "Counsel's bringing of five attorneys to the hearing was unreasonable, so the travel costs associated with the unnecessary attorneys should be excluded." See Defendants' Response to Plaintiffs' Verified Motion for an Award of Attorneys' Fees and Costs (DE# 92 at 21, 7/25/08). The defendants further argue that travel expenses should be excluded altogether because the hiring of outside counsel was unnecessary. Id. Even if some travel expenses are allowed, the defendants argue that travel by Ms. Walter to Orlando, Florida for a September 14, 2007 presentation to the board of the League of Women Voters of Florida should be disallowed because there is no showing that the trip was reasonable or necessary and her time records do not indicate that she went. Id. With respect to Mr. Siegel's travel reimbursement requests, the defendants argue that his trip to Orlando with Ms. Walter for the board presentation was unreasonable and challenge certain travel expenses related to the preliminary injunction hearing. See Defendants' Sur-reply in Opposition to Plaintiffs' Verified Motion for an Award of Attorneys' Fees and Costs (DE#100 at 6 10/3/08).

The plaintiffs respond that "[i]n this case it was entirely reasonable for plaintiffs to hire [their] chosen counsel because (i) they have extensive, complementary expertise litigating First Amendment and election law cases; (ii) they were willing to represent

plaintiffs pro bono and (iii) defendants similarly found it reasonable to hire out-of-town counsel and to pay their travel expenses." Plaintiffs' Reply Memorandum of Law in Support of Their Verified Motion for an Award of Attorneys' Fees and Costs (DE# 94 at 11, 8/22/08) (internal citations omitted). With respect to the Orlando trip, the plaintiffs explain that the Orlando trip included a presentation by Ms. Walter and Mr. Siegel, and an in-depth discussion about how to proceed with this case. Id. The plaintiffs offer a minor reduction to their overall travel expenses of $320.98 ($83.60 for a portion of a meal on June 23, 2006 and $237.38 for a meal on August 2, 2006). Id. at 11, n 19-20.

The undersigned finds that the plaintiffs have provided sufficient reasons for hiring out-of-town counsel. Thus, reasonable travel expenses should be allowed. However, certain reductions are appropriate. The plaintiffs have not shown that the September 2007 Orlando trip by Mr. Siegel and Ms. Walter was necessary, particularly at that juncture in the litigation, when the case was pending on appeal. Thus, the undersigned will disallow $1,547.35 in travel expenses for Mr. Siegel and Ms. Walter for the Orlando trip. With respect to the travel expenses for Ms. Paradis and Ms. Weiser, the undersigned will disallow identical entries for $119.80 in airfare between New York City and Miami, Florida for October 2 - 3, 2007 for a total of 239.60 ($119.80 times 2). The plaintiffs provide no support for the purpose or reasonableness of this trip.

A reduction in hotel rates and meals is warranted. The plaintiffs' counsel charged the following in lodging and meals:

| Attorney | Hotel | Meals |
|---|---|---|
| Eric Tirschwell | $0 | $0 |
| Craig Siegel | $2,274.64 | $94.79 |
| Erin Walter | $1,864.67 | $250.81 |
| Wendy Weiser | $1,035.08 | $31.12 |
| Elizabeth Westfall | $302.31 | $35.03 |
| Renee Paradis | $1,035.08 | $101.23 |
| Amy Weiner | $0 | $0 |
| Total: | $6511.78 | $512.98 |

The undersigned finds that the hotel and meal costs are unreasonable. With respect to the hotel charges, the plaintiffs do not explain why some of the attorneys stayed at the Mandarin Oriental Hotel at a rate of $229.00 per night while others stayed at the Marriot Courtyard-Miami Downtown Hotel or the Miami Hyatt at a more reasonable rate of $119.00 per night ($134.47 including taxes).

In addition to the excessive hotel rate, the undersigned finds other hotel charges should be excluded in their entirety. For instance, the plaintiffs seek reimbursement for Mr. Siegel in the amounts of $34.79 for "private bar" and $53.60 for "Martini Bar" and $1.50 for "gift shop." The undersigned finds no basis for the defendants to pay for these charges. Also included in this hotel bill are telephone call charges totaling approximately $246.07. These telephone charges are unreasonable since counsel could have used a calling card or a mobile phone for substantially less cost.  The undersigned notes that some of the hotel bills include charges for nondescript business center expenses and internet charges. These expenses will be disallowed and counsel

will be limited to a reasonable hotel rate of $135 per night. Accordingly, the hotel

charges for the plaintiffs are reduced as follows:

| Attorney | Number of Nights | Rate | Amount Awarded |
|---|---|---|---|
| Eric Tirschwell | 0 | $135 | $0.00 |
| Craig Siegel | 6 | $135 | $810.00 |
| Erin Walter | 4 | $135 | $540.00 |
| Wendy Weiser | 4 | $135 | $540.00 |
| Elizabeth Westfall[16] | 2 | $135 | $270.00 |
| Renee Paradis | 4 | $135 | $540.00 |
| Amy Weiner | 0 | $135 | $0.00 |
| | | Total: | $2,700.00 |

The undersigned also finds that the costs of some of the meals charged by

plaintiffs' counsel to be excessive and finds a more appropriate per diem rate for meals

to be $65.00. Although in some instances the per diem rate exceeds the amount

charged for that day, the undersigned finds that the per diem calculation is a fair

method of determining allowable meal costs in the instant case since some meals were

included in the hotel charges that were limited to $135 per day. Accordingly, the

plaintiffs should recover the following in meal expenses:

---

[16] Ms. Westfall's costs chart lists $302.31 for hotel charges and in a separate entry lists $26.17 for meals. The undersigned notes that Ms. Westfall's $302.31 hotel bill already includes $26.17 for meals. The undersigned does not need to address any duplicative costs because the undersigned will limit counsel to a $65 per diem allowance for meals.

| Attorney | Number of Days | Rate | Amount Awarded |
|---|---|---|---|
| Eric Tirschwell | 0 | $65 | $0.00 |
| Craig Siegel | 9 | $65 | $585.00 |
| Erin Walter | 6 | $65 | $390.00 |
| Wendy Weiser | 5 | $65 | $325.00 |
| Elizabeth Westfall[17] | 3 | $65 | $195.00 |
| Renee Paradis | 6 | $65 | $390.00 |
| Amy Weiner | 0 | $65 | $0.00 |
| | | Total: | $1,885.00 |

With respect to the remaining travel expenses, the undersigned finds that the plaintiffs' airfare and ground transportation expenses were reasonable and will allow them in their entirety for a total of $5,191.51.

Accordingly, the undersigned recommends that the plaintiffs recover $2,700.00 in hotel accommodations, $1,885.00 for meals and $5,191.51 in transportation costs for a total of $9,776.51 in travel expenses.

### 3.      Court-Related Costs

The plaintiffs seek $4,984.76 in court related costs. This amount includes transcript fees, court filing fees and document retrieval. The defendants do not specifically object to the transcripts requested. As such, the undersigned will allow transcript costs.  With respect to the filing fees, the undersigned will allow those filings fees related to litigation in the District Court. However, the undersigned will disallow

---

[17] Ms. Westfall's costs chart lists $302.31for hotel charges and in a separate entry lists $26.17 for meals. The undersigned notes that Ms. Westfall's hotel bill already includes $26.17 for meals.

filing fees in the amount of $340.00 related to the admission of Mr. Siegel and Ms. Walter to the Eleventh Circuit. <u>See</u> DE# 86-9 at 47. Although the summary chart provided by the plaintiffs states "Other Fees - Vendor -SDFL Clerk" the receipts attached are clearly from the Eleventh Circuit Court of Appeals. <u>Id.</u> at 51-52. The undersigned will also remove a $71.26 document retrieval charge dated December 20, 2006 that is related to the appeal and $16.88 which appear on Ms. Paradis' costs chart as "sending reply brief to 11th Circuit." <u>See</u> DE# 86-9 at 55. Accordingly, the plaintiffs should be permitted to recover $4,556.62 in court related costs.

### 4.    Computerized Legal Research

The plaintiffs seek reimbursement for computerized legal research totaling $45,458.41. The defendants argue that costs for computerized legal research should be denied. "Counsel offer no documentation to demonstrate what the research was, why it was necessary, or whether it was duplicative." <u>See</u> Defendants' Response to Plaintiffs' Verified Motion for an Award of Attorneys' Fees and Costs (DE# 92 at 20, 7/25/08). The defendants further note that computer research for the appeal should not be recovered and that Lexis and Westlaw generally charge a flat fee to large firms instead of an hourly rate. <u>Id.</u> The plaintiffs respond that computerized legal research costs are normally reimbursed under section 1988. Plaintiffs' Reply Memorandum of Law in Support of Their Verified Motion for an Award of Attorneys' Fees and Costs (DE# 94 at 10, 8/22/08). "The various researchers include associates, summer associates, paralegals and library staff who conducted reasonable and non-duplicative research generally directed by Mr. Siegel and Ms. Walter. Kramer Levin . . . seeks

33

reimbursement of its out-of-pocket research expenditures for all time keepers." Id.

The undersigned agrees with the plaintiffs that they are entitled to recover reasonable computerized legal research costs, Terry Properties, Inc. v. Standard Oil Co., 799 F. 2d 1523, 1540 (11th Cir. 1986), however other than the plaintiffs' blanket representations that the research performed was reasonable and non-duplicative, the undersigned has no way of determining whether the amount sought for legal research is excessive. The undersigned recommends that the plaintiffs' computerized legal research costs be limited to those attorneys who are seeking fees.[18] Accordingly, the plaintiffs should be permitted to recover $12,068.78 in computerized legal research costs. See Defendants' Response to Plaintiffs' Verified Motion for an Award of Attorneys' Fees and Costs (DE# 92 at Exhibit I, 7/25/08).

### 5.    Document Reproduction and Shipping

The plaintiffs seek $11,253.57 in document reproduction and shipping costs. Of this amount, the defendants object to $10,913.67.[19] See Defendants' Response to Plaintiffs' Verified Motion for an Award of Attorneys' Fees and Costs (DE# 92 at 20, 7/25/08). The defendants argue that "there is no indication as to what the copies were used for, and so their reasonableness cannot be determined." Id. The defendants further challenge the $1,516.06 FedEx bill (included in the $10,913.67 contested sum)

---

[18] The undersigned notes that the plaintiffs did not include any computerized legal research for Wendy Weiser, Elizabeth Westfall or Renee Paradis. The undersigned finds that $12,068.78 in computerized legal research is reasonable, notwithstanding the exclusion of these three attorneys, in order to account for the nondescript records and noncompensable research related to the appeal.

[19] The defendants do not appear to object to $123.55 and $216.35 charged by the Brennan Center for outside duplicating and shipping charges, respectively.

and $1,883.07[20] for the printing and binding of the appellate brief which they argue

should be disallowed because it relates to the appeal. With respect to these objections,

the plaintiffs respond that the FedEx charges were reasonable and customary

shipments of legal documents to the Court, local counsel and counsels' Miami hotel

during hearings and that the printing/copying charges are supported by detailed

invoices. Plaintiffs' Reply Memorandum of Law in Support of Their Verified Motion for

an Award of Attorneys' Fees and Costs (DE# 94 at 10, 8/22/08).

The undersigned will disallow $1,917.60 ($1,093.79 plus $823.81) in printing and

binding costs related to the appeal. With respect to the FedEx charges, the

undersigned will remove $27.80 in charges for shipping documents to the Eleventh

Circuit. In sum, the undersigned recommends reducing the amount requested for

document reproduction and shipping by $1,945.40 to account for charges related to the

appeal. The remaining costs appear reasonable. The plaintiffs should be allowed

$9,308.17 for document reproduction and shipping.

Based on the foregoing, a reduction of total costs in the amount of $40,246.55 is

appropriate. Therefore, the plaintiffs' counsel shall be reimbursed for their reasonable

expenses incurred during this litigation in the amount of **$36,116.50** ($76,363.05 minus

$40,246.55). The undersigned finds that such costs were legitimately incurred by the

plaintiffs' counsel during the course of this litigation and that the plaintiffs' counsel have

submitted valid documentation sufficient to itemize the costs incurred.

---

[20] The defendants do not explain how they arrived at this sum. The undersigned added the two invoices provided by the plaintiffs for appellate printing and binding costs and they add up to $1,917.60 ($1,093.79 plus $823.81).

**RECOMMENDATION**

For all the foregoing reasons, the undersigned recommends that the plaintiffs' Verified Motion for Attorney's Fees and Costs (DE # 78, 4/20/07) be **GRANTED in part and DENIED in part** and that the plaintiffs be awarded $351,156.60 in attorney's fees and $36,116.50 in costs for a total award of **$387,273.10**.

The parties have ten (10) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Patricia A. Seitz, United States District Court Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. See LoConte v. Dugger, 847 F. 2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958, 109 S.Ct. 397 (1988).

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this **4th** day of December, 2008.

JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:

United States District Judge Seitz
All Counsel of Record

36